## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CRAIG BREWER, individually and on behalf of all similarly situated persons, <br><br>     Plaintiff, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br>     Defendant. | **CLASS ACTION COMPLAINT** <br><br><br>  Case No. <br><br><br><br> Jury Trial Demanded |

Plaintiff, Craig Brewer, individually and on behalf of a class of similarly situated persons, entities, and businesses ("Plaintiff"), through undersigned counsel, files this Class Action Complaint against the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") and alleges as follows:

### INTRODUCTION

1.     Plaintiff files this class action requesting relief for himself and all other similarly situated North Carolina automobile insurance customers or former customers of State Farm, whose vehicle total loss claims were paid by State Farm using a CCC One Market Valuation Report ("CCC One Report").

2.     Plaintiff seeks declaratory relief, as well as compensatory damages and other appropriate remedies, resulting from State Farm's systematic and uniform practice of reducing the retail cost of comparable vehicles used in the calculation of total loss claim payments in violation of North Carolina's motor vehicle total loss regulation, 11 N.C.

1

Admin. Code 4.0418 (2020), which resulted in State Farm avoiding paying the full and correct amount for vehicle total loss claims.

3. When valuing vehicle total loss claims, it is improper for insurance companies to undervalue and underpay the claims by manipulating the data used to value the vehicles. Yet, using software designed and licensed by CCC Information Services, Inc.,[1] manipulating data to underpay total loss claims is precisely what State Farm has been doing for years.

4. The purpose of State Farm's systematic vehicle total loss claim business practice is clear, as State Farm is now the largest motor vehicle insurance carrier in the United States, and the financial benefit of the company's systematic reduction in payment of all total loss claims is staggering.

5. Plaintiff, Craig Brewer, files this class action on behalf of himself and all other similarly situated persons, businesses, or entities insured under a North Carolina State Farm automobile policy who were subjected to this total loss underpayment scheme against the Defendant for violations of North Carolina's Unfair Trade Practices Act, and declaratory relief. Plaintiff also asserts an individual claim for breach of contract.

## PARTIES

6. Plaintiff, Craig Brewer, is a citizen and resident of Mecklenburg County, North Carolina and at all relevant times herein was insured under a policy of insurance issued by the Defendant, State Farm Mutual Automobile Insurance Company. He brings

---

[1] The CCC One Market Valuation Report presented to Plaintiff, Craig Brewer, by State Farm for the total loss of his 2021 Genesis is attached here as Exhibit A.

this action individually and on behalf of other similarly situated persons and businesses as defined herein who are citizens and residents of the State of North Carolina or were citizens and residents at the time they made a vehicle total loss claim with State Farm.

7.     Defendant, State Farm Mutual Automobile Insurance Company, is a foreign corporation doing business in the State of North Carolina and licensed with the North Carolina Department of Insurance. Defendant, State Farm Mutual Automobile Insurance Company, is domiciled in Illinois with its principal statutory and administrative office located at One State Farm Plaza, Bloomington, IL 61710.

## JURISDICTION AND VENUE

8.     This Court has personal jurisdiction over State Farm because State Farm is an insurance company authorized to do business in the State of North Carolina, and, at all relevant times hereto, was engaged in the marketing, sale, and issuance of automobile insurance policies to consumers in the State of North Carolina.  Further, this Court has personal jurisdiction over State Farm because Defendant's conduct upon which the claims are based occurred in substantial part within this District and because Defendant committed the same wrongful acts to other class members in this judicial District.

9.     This Court has jurisdiction over the subject matter of this class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because at least one member of the putative class, including the Plaintiff, is a citizen of North Carolina and the Defendant is a citizen of Illinois, thus meeting CAFA's minimal diversity requirement. Additionally, the proposed Class consists of 100 or more members and the amount in controversy, when aggregated among a proposed class of thousands, exceeds

3

$5,000,000.00, exclusive of costs, interest and fees that might be awarded. Additionally, the Court has supplemental jurisdiction over the Plaintiff's individual breach of contract claim pursuant to 28 U.S.C. § 1367 (a) as the claim is part of the same case and controversy as the claim over which this Court has original jurisdiction.

10.     Venue in this case is proper in this District pursuant to 28 U.S.C. § 1391(b), (c ) and (d) because the Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. State Farm has sufficient business and contacts for jurisdiction in this District.

## FACTUAL ALLEGATIONS

11.     State Farm is the largest automobile insurance carrier in the United States and in North Carolina. Upon information and belief, State Farm insures approximately 94 million customers nationwide.

12.     Upon information and belief, approximately 1.2 million of those customers reside in North Carolina. Upon information and belief, State Farm pays more than ten thousand vehicle total loss claims per year in North Carolina.

13.     For more than 25 years, State Farm has partnered with CCC Information Services, Inc.[2] ("CCC") to process automobile damage, repair and total loss claims.   CCC is a technology company that provides software, data, and claims handling services to the automotive, insurance, and collision repair industries. Their flagship platform is CCC One,

---

[2] Also known as CCC Intelligent Solutions Inc.

4

a cloud-based software suite used by State Farm in processing automotive damage, repair and total loss claims.

14.     In 2020, State Farm announced it would begin using CCC One Market Value Reports exclusively to value vehicle total loss claims.

15.     State Farm uses the CCC One platform to create its CCC One Market Valuation Reports when presenting customers with the valuation of a total loss vehicle.

16.     The CCC One platform is customizable, allowing State Farm to choose the methodology and parameters to arrive at a valuation for a total loss vehicle.

17.     The CCC One reports indicate the value stated is "based on information provided to CCC by STATE FARM INSURANCE COMPANIES." *E.g.*, Ex. A at 11.

18.     Under its uniform automobile insurance policy terms, once a customer's vehicle is declared a total loss, State Farm is required to pay the customer the pre-accident value of the loss.

19.     As this is a ubiquitous industry standard, it's no surprise that North Carolina's total loss statute requires the same. 11 N.C. Admin. Code 4.0418 (2020).

20.     State Farm recognizes its duty to comply with North Carolina's vehicle total loss regulation, 11 N.C. Admin. Code 4.0418 (2020). *E.g.*, Ex. A at 14.

**Plaintiff's Total Loss Claim**

21.     On April 24, 2023, while driving his 2021 Genesis GV80 AWD motor vehicle, Plaintiff, Craig Brewer, was involved in a traffic accident in Charlotte, North Carolina.

5

22.     At the time of the accident, the Plaintiff and the 2021 Genesis were insured under an auto policy underwritten by State Farm (Policy # 4737-883-33).

23.     On May 8, 2023, Plaintiff filed a claim with State Farm for damage to the 2021 Genesis resulting from the April 24, 2023, accident.

24.     Subsequently, State Farm determined the 2021 Genesis was a total loss and used its customized CCC One platform to calculate the pre-accident value of Mr. Brewer's 2021 Genesis.

25.     State Farm presented Mr. Brewer with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. A.

26.     The report stated the pre-accident "Base Vehicle Value" was $56,772.00 and State Farm paid Mr. Brewer's claim based on the CCC One Market Valuation Report.

27.     Unbeknownst to Mr. Brewer, in calculating the amount it was required to pay, in violation of North Carolina's total loss regulation, State Farm wrongfully reduced the retail cost of comparable vehicles used in the calculation in violation of regulations in the State of North Carolina, which resulted in an impermissible reduction of the total loss claim payment in the amount of $3,328.00.

### Violation of North Carolina's Motor Vehicle Total Loss Regulation
### 11 N.C. Admin. Code 4.0418 (2020)

28.     When a North Carolina insured experiences an event resulting in damage to a covered vehicle of at least 75% of the pre-accident cash value, North Carolina regulations require the insurer to "designate the motor vehicle as a 'total loss' and pay the claimant the *pre-accident value*." 11 N.C. Admin. Code 4.0418(c). (emphasis added)

6

29.     Under paragraph (c) of the regulation, the pre-accident value must be "determined in accordance with [p]aragraph (d) of this Rule." *Id.*

30.     Paragraph (d), requires the pre-accident value "shall be based on the following values: (1) [t]he published regional average values of substantially similar motor vehicles; and (2) [t]he *retail cost* of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area." 11 N.C. Admin. Code 4.0418(d) (emphasis added).

31.     Sections (b)(1) and (b)(2) both require State Farm to use the "retail cost" of comparable vehicles, as State Farm is required to use "published regional average values" of substantially similar motor vehicles under (b)(1), "to reach an average *retail value* of the motor vehicle." 11 N.C. Admin. Code 4.0418(b)(3) (emphasis added).

32.     State Farm does not comply with either section.

33.     After calculating the pre-accident value under paragraph (d), the pre-accident value of the total loss vehicle "may be adjusted for condition, options, equipment, and mileage, less the cost of unrepaired damage that pre-existed the accident." 11 N.C. Admin. Code 4.0418(e).

34.     The regulation does not authorize other adjustments or mention reducing the value of comparable vehicles for "condition."

35.     If an insurer attempts to pay its customer for the total loss "on a basis that deviates from this Rule, the deviation must be supported by documentation within the claim file detailing the total loss motor vehicle's condition and the reason for the deviation[,] ...

7

[and] [t]he documentation ... shall be shared with the claimant." 11 N.C. Admin. Code 4.0418(h).

36.     Simply stated, under North Carolina's total loss regulation, State Farm is permitted to apply an adjustment for the condition of the total loss vehicle, but is not permitted to adjust the retail price of the comparable vehicles in calculating the value of the total loss claim.

37.     Here, State Farm made no adjustment for the condition of Plaintiff, Craig Brewer's total loss vehicle. Ex. A at 1, 7-8.

38.     But, despite the clear language of North Carolina's total loss regulation, rather than using the "retail cost" of comparable vehicles as required, State Farm reduced the retail price of the comparable vehicles by setting each comparable vehicle to "Average Private condition." Ex. A at 10.

39.     This function of State Farm's total loss valuation methodology using its customized CCC One platform is automated and results in a blanket reduction of the retail price of each comparable vehicle by the same amount.

40.     Here, State Farm reduced each comparable vehicle used to value Plaintiff, Craig Brewer's claim by $3,328.00, ostensibly calling it a "condition adjustment." Ex. A at 10-11.

41.     Although only three of the nine comparable vehicles are itemized (Ex. A at 10-11), State Farm explains the "[a]dditional [c]omparable [v]ehicles are in summary format, but are adjusted the same as those on the previous page." Ex. A at 12.

8

42.     State Farm deducted $3,328.00 from the value of Plaintiff Craig Brewer's total loss claim, which it apparently claimed was for "[c]ondition" despite determining there were no appropriate condition deductions for his 2021 Genesis. *See* Ex. A at 1, 7-8.

43.     Although State Farm calls the reduction a "condition adjustment," it is not tied to the condition of the comparable vehicles or the total loss vehicle.

44.     Before arriving at a "Base Vehicle Valuation"[3] for Plaintiff, Craig Brewer's claim, State Farm systematically and uniformly reduced the retail cost of each comparable vehicle by $3,328.00. Ex. A at 11.

45.     By reducing the amount of the comparable vehicles by deducting an amount for an unexplained "[c]ondition," State Farm started with an incorrect "Base Vehicle Value" amount and as a result, Plaintiff, Craig Brewer's total loss claim was illegally reduced by $3,328.00 regardless of any other adjustments.

46.     Applying this mislabeled deduction to total loss claims is State Farm's routine business practice, and Plaintiff contests this illegal deduction on behalf of himself and the class members.

47.     Regardless of whether State Farm makes any adjustments to a claimant's total loss vehicle for condition, the Defendant still wrongfully and in violation of state regulation reduces the retail cost of the comparable vehicles used in calculating total loss claims.

---

[3] Ex. A at 1.

48.     State Farm, as an insurer doing business in this state, has a recognized legal duty to comply with North Carolina's total loss regulation, 11 N.C. Admin. Code 4.0418. Ex. A at 14.

49.     However, the result of State Farm's systematic and uniform business practice of reducing the retail cost of each comparable vehicle and the resulting reduction of Plaintiff Craig Brewer's total loss claim in the amount of $3,328.00 is in direct violation of North Carolina's total loss regulation. The same is true for all the class members, regardless of the amount of the reduction.

50.     Reducing the retail cost of the comparable vehicles to "Average Private" cost violates North Carolina's total loss regulation and, under paragraph (h), is therefore a "deviation" from the required method of calculation.

51.     Accordingly, in addition to violating paragraph (d), State Farm further violates the total loss regulation by failing to state "the reason for the deviation" as required under paragraph (h).

52.     Upon information and belief, State Farm does not comply with paragraph (h), which requires documentation of the basis for the reduction or the data used to arrive at an "Average Private" cost of comparable vehicles to be maintained "within the claim file."

53.     Upon information and belief, the data used to calculate the comparable vehicle deduction is sourced from a third-party or proprietary data collected by CCC Intelligent Solutions Inc. itself. Neither the source of the data nor its parameters is disclosed

10

to State Farm's total loss claimants. The data is unverifiable by a total loss claimant and upon information and belief, is not even maintained in State Farm's claim files.

54. State Farm's impermissible total loss valuation methodology of reducing the retail cost of comparable vehicles is unsupported and arbitrary as it applies the same amount to each comparable[4] vehicle regardless of the differences in mileage, options, or equipment among the comparable vehicles. *E.g.*, Ex. A at 11.

55. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina is uniform and common business practice across all of the class members' total loss claims.

56. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina also contravenes automobile appraisal industry standards, in addition to violating total loss regulations of this state.

57. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina is a common and general business practice.

58. Upon information and belief, State Farm applies the same impermissible valuation methodology to all of the more than ten thousand vehicle total loss claims per year in North Carolina.

59. Although the class members are likely to be owed different amounts for the impermissible comparable vehicle retail cost reduction, those amounts can be easily and

---

[4] In Plaintiff, Craig Brewer's case, State Fram applied a $3,328.00 reduction in the retail cost of each of the comparable vehicles used in calculating the toal loss claim value. Ex. A at 11.

precisely determined from the CCC One Reports maintained in State Farm's business records. *E.g.*, Ex. A at 11.

60.     In Plaintiff Craig Brewer's case, the impermissible reduction of the retail cost of comparable vehicles reduced the amount paid by State Farm to the Plaintiff by 5.5% of the correct pre-accident value of his 2021 Genesis.  Upon information and belief, the class-wide amounts owed equal 4% to 9% of each class member's total loss claim.

61.     On behalf of himself and on behalf of the proposed class, Plaintiff does not contest State Farm's representations of the original stated retail price of comparable vehicles before the impermissible reductions.

62.      The Plaintiff also does not contest the value assigned for options, mileage, equipment, or preexisting damages for his vehicle or the comparable vehicles stated in the CCC One Reports provided to him and the proposed class.  Rather, the Plaintiff only contests State Farm's blanket reduction of the retail cost of comparable vehicles on behalf of himself and the class in the manner aforementioned.  Therefore, none of the total loss vehicles have to be revalued.  The Plaintiff is only seeking on behalf of himself and others the return of the line item impermissible deduction, which violates North Carolina law.

63.     Plaintiff requests that State Farm be required to pay the amount of the illegal reduction of the retail price of comparable vehicles stated in the CCC One Reports provided to him and the class members.

64.     In short, by reducing the retail cost of the comparable vehicles used to arrive at a pre-accident value of total loss vehicles, State Farm determines the pre-accident value not by actual verifiable information in compliance with North Carolina's total loss

12

regulation and industry standards, but by an artificial, downwardly skewed, and deflated market of its own invention.

## CLASS ACTION ALLEGATIONS

65.     The causes of action for unfair claims practices and unfair trade practices asserted herein are brought as a class action under the Federal Rules of Civil Procedure, Rules 23(a)(1)-(4) and Rules 23(b)(3) as more specifically set forth below. State Farm's conduct has been systemic and continuous and has affected a large number of State Farm automobile policyholders in North Carolina.

66.     Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because State Farm has acted on grounds that apply generally to the class, so that the final declaratory relief Plaintiff seeks herein is appropriate with respect to the class as a whole.

67.     This action seeks to recover damages suffered by the Plaintiff, and the members of the proposed class (collectively "class members"), all insureds of State Farm whose vehicle total loss claims were calculated and paid by State Farm using a CCC One Report, where the retail cost of comparable vehicles was reduced to arrive at a pre-accident value.

68.     All proposed class members have fully complied with all pertinent policy provisions to receive payment under their uniform insurance policies with State Farm, and State Farm determined that coverage existed for the loss and determined the claim to be a total loss. No further performance is required by any proposed class members to secure all available benefits provided by State Farm's policies.

13

<u>Class Certification Definition</u>

69.     Plaintiff seeks certification of the following class:

All persons, businesses, and entities insured by State Farm Mutual Automobile Insurance Company on an automobile policy issued in the State of North Carolina who received compensation on a claim for the total loss of their vehicles from the Defendant based on a total loss valuation generated using a CCC One Market Valuation Report, wherein the retail cost of comparable vehicles was reduced.

70.     Excluded from the Class are (a) the assigned Judge, the Judge's staff and family, and State Farm's employees, (b) claims where the insured submitted written evidence supporting a different valuation and the amount of that different valuation submitted by the insured was paid by State Farm to settle the total loss, and (c) claims where the insured executed a settlement agreement for a value agreed on between the insured and State Farm.

71.     Plaintiff reserves the right to amend the class definition as necessitated by subsequent discovery or evidence in this matter or as ordered or recommended by the Court.

<u>Numerosity</u>

72.     Pursuant to Rule 23(a)(1), membership in the class is so numerous as to make it impractical to bring all class members before the Court. Upon information and belief, State Farm pays more than ten thousand vehicle total loss claims to its insureds annually. Therefore, the proposed class consists of 100 or more members. The exact number of class members is unknown, but can be determined from the records maintained by the Defendant, which will allow the members of the proposed class, as well as those who are then excluded, to be easily identified.

14

## Typicality

73. Plaintiff, Craig Brewer, is typical of a member of the proposed class pursuant to Rule 23(a)(3). Plaintiff purchased a State Farm automobile policy, paid premiums, and made a claim for loss when his insured automobile was damaged. He filed a claim with State Farm and made his vehicle available for a valuation and payment of the loss. State Farm then elected to declare the vehicle a total loss, but underpaid the loss based upon a valuation State Farm generated using the CCC One Market Valuation Report program by reducing the retail cost of comparable vehicles in violation of North Carolina law and in breach of State Farm's contractual obligations. Plaintiff's interest in obtaining compensation for his loss (the underpayment of his claim compared to the amount he would have received, but for the illegal reduction of the retail cost of comparable vehicles) is identical to those of other unnamed members of the class.

## Commonality

74. Pursuant to Rule 23(a)(2), there are questions of law and fact common to all members of the proposed class which predominate over any individual issues. Common questions of law and fact include, but are not limited to:

a.    Whether State Farm's business practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violated North Carolina's total loss regulation, 11 N.C. Admin. Code 4.0418.

b.    If State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violated North Carolina's total loss

regulation, 11 N.C. Admin. Code 4.0418, whether this violation is a *per se* violation of the North Carolina Unfair Trade Practices Act (Chapter 75).

c.     Whether paying an amount for total loss claims after calculating the amount by reducing the retail cost of comparable vehicles is a violation of the North Carolina Unfair Claim Settlement Practices Act, N.C. Gen. Stat. § 58-63-15 (11).

d.     Whether State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina contravenes automobile appraisal industry standards.

e.     Whether by violating the North Carolina Unfair Claim Settlement Practices Act, State Farm violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

f.     Whether State Farm's business practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is an unfair practice under the North Carolina Unfair Trade Practices Act, N.C.Gen. Stat. § 75-1.1, *et seq*.

g.     Whether Plaintiff and the class are entitled to an award of damages, including treble damages.

h.     The amount by which State Farm underpaid the total loss claims of the members of the class by reducing the retail cost of comparable vehicles in calculating the pre-accident value of the total loss vehicle.

i.     Whether the Plaintiff and the class are entitled to declaratory relief.

16

j.      Whether the Plaintiff and the class are entitled to an award of attorney fees and costs.

Adequacy Of Representation

75.     Plaintiff has no interest adverse to the interests of other members of the proposed class and will fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4).

76.     Plaintiff has retained the undersigned counsel, who have been appointed as class counsel in other class actions by other federal district courts, including in the State of North Carolina, and are experienced and competent in the prosecution of class actions and complex litigation, and have the experience necessary to prosecute this case and adequate resources to prosecute this claim.

Superiority

77.     Pursuant to Rule 23(b)(3), the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Absent a class action, State Farm's practice of paying vehicle total loss claims in North Carolina after calculating the amount by reducing the retail cost of comparable vehicles will continue, and the class members will continue to suffer damage and State Farm's conduct will proceed without an effective remedy.

78.     Individual class members of the proposed class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed class and not knowing that State Farm's practices in paying their

17

total loss claims did not comply with regulations and as such, that they were underpaid for their total loss claims.

79.     This action will allow for the orderly, fair, and expeditious administration of class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.   A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

80.     This action will present no difficulties which would impede its management by this Court as a class action, and a class action is the best available means by which Plaintiff and the members of the proposed class can seek redress for the harm caused to them by State Farm. An exact list of members of the proposed class can be generated from the business records of State Farm. State Farm's business records will show the amounts its insureds were underpaid for their total loss claims, including the line item reduction of the retail cost of comparable vehicles.   Accordingly, both liability and damages can be presented and proven on a class-wide basis with common evidence, and then allow a recovery to be efficiently distributed to the members of the class.

**FIRST CAUSE OF ACTION**
**Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.***
**(Plaintiff and Class)**

81.     Plaintiff and the proposed class members bring this cause of action against the Defendant and reallege the allegations contained in the previous paragraphs as if fully set forth herein.

82.     State Farm's actions in marketing insurance, the sale of insurance, adjusting insurance claims in North Carolina, and the violation of state insurance regulations as

18

described herein constitute business activities in and affecting commerce as defined by Chapter 75 of the North Carolina General Statutes.

83.  State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is unfair as it violates North Carolina's total loss regulation, 11 N.C. Admin. Code 04.0418 and therefore violates established public policy, is unethical, unscrupulous, and oppressive.

84.  State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is unfair as it is arbitrary, self-serving and contravenes automobile appraisal industry standards and therefore violates established public policy, is unethical, unscrupulous, and oppressive.

85.  State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is unfair, as it is substantially injurious to the proposed class of North Carolina insurance consumers who received less than they would have from their total loss claim if State Farm had followed the total loss regulations of this State and followed appraisal industry standards by using the retail cost of comparable vehicles in calculating the total loss claims of the Plaintiff and class members.

86.  As a direct and proximate result of State Farm's calculation of vehicle total loss claim by reducing the retail cost of comparable vehicles used in calculating the pre-accident value of total loss vehicles, the Plaintiff, and the members of the proposed class have been damaged because they received less than they would have if State Farm had followed the law and/or industry standards.

19

87.     By virtue of its unlawful acts and/or omissions, State Farm is liable to and owes Plaintiff and the class members the amount their vehicle total loss was reduced by the Defendant's reduction of the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles, treble damages, attorney fees and costs, together with all other damages Plaintiff may prove as allowed by law.

## SECOND CAUSE OF ACTION
### Unfair Claims Settlement Practices, N.C. Gen. Stat. § 58-63-15 (11) and N.C. Gen. Stat. 75-1.1, *et seq.* (Plaintiff and Class)

88.     Plaintiff and the proposed class members bring this cause of action against the Defendant and reallege the allegations contained in the previous paragraphs as if fully set forth herein.

89.     State Farm's actions in marketing insurance, the sale of insurance, adjusting insurance claims in North Carolina, and the violation of state insurance regulations as described herein constitute business activities in and affecting commerce as defined by Chapter 75 of the North Carolina General Statutes.

90.     State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violates North Carolina's Unfair Claims Practices Act and North Carolina's Total Loss Regulation on Motor Vehicles, including, N.C. Gen. Stat. § 58-63-15(11)(d)(f)(g) and (h).  Under North Carolina law, these violations constitute a *per se* violation of the Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*

20

91.     As a direct and proximate result of State Farm's calculation of vehicle total loss claims by reducing the retail cost of comparable vehicles used in calculating the pre-accident value of total loss vehicles, the Plaintiff, and the members of the proposed class have been damaged because they received less than they would have if State Farm had followed the law and industry standards.

92.     By virtue of its unlawful acts and/or omissions, State Farm is liable to and owes Plaintiff and the class members the amount their vehicle total loss was reduced by the Defendant's reduction of the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles, treble damages, attorney fees and costs, together with all other damages Plaintiff may prove as allowed by law.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiff)

93.     Plaintiff brings this third cause of action in his individual capacity only against the Defendant and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

94.     Plaintiff entered into a contract for automobile insurance with State Farm. He paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.

95.     State Farm's policy, at all relevant times herein, provided insurance coverage to Plaintiff for physical damage and the total loss of his motor vehicle and provided for the payment of the pre-accident value of his vehicle in the event of a total loss.

21

96.     The insurance contract also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in fulfilling the contract.

97.     Further, State Farm was required to follow North Carolina law for the adjustment of a total loss claim of the Plaintiff's vehicle pursuant to 11 N.C. Admin. Code 04.0418, which was an implicit term of the contract and expressly recognized by State Farm. *E.g.*, Ex. A at 11.

98.     On April 24, 2023, while driving his 2021 Genesis motor vehicle, Plaintiff was involved in a traffic accident in Charlotte, North Carolina.

99.     At the time of the accident, the Plaintiff and the 2021 Genesis were insured under an auto policy underwritten by Defendant, State Farm (Policy # 4737-883-33).

100.    On May 8, 2023, Plaintiff filed a claim with State Farm for damage to the 2021 Genesis resulting from the April 24, 2023, accident.

101.    Subsequently, State Farm determined the 2021 Genesis was a total loss and used its customized CCC One platform to calculate the pre-accident value of Mr. Brewer's 2021 Genesis.

102.    State Farm presented Mr. Brewer with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. A.

103.    The report stated the "Base Vehicle Value" was $56,772.00 and State Farm paid Mr. Brewer's claim based on the CCC One Market Valuation Report.

104.    Unbeknownst to Mr. Brewer, in calculating the amount it was required to pay, in violation of North Carolina's total loss regulation, State Farm reduced the retail cost of comparable vehicles used in the calculation, which resulted in an impermissible reduction of the claim payment in the amount of $3,328.00.

105.    Despite having received a claim in compliance with the insurance policy terms, State Farm materially breached its contract with the Plaintiff in the adjustment of his vehicle total loss claim, in the following respects:

a.     State Farm failed or refused to pay the pre-accident value of the Plaintiff's vehicle and underpaid the claim;

b.     State Farm failed to follow the required valuation criteria set forth in 11 N.C. Admin. Code 04.0418 when adjusting the claim, including but not limited to reducing the retail cost of comparable vehicles in the calculation of the total loss claim valuation; and

c.     In other respects, to be discovered at trial.

106.    As the direct and proximate result of the foregoing material breaches by State Farm, the Plaintiff has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $3,328.00.

**WHEREFORE**, Plaintiff and the proposed class members respectfully pray that the Court:

1.     Enter an order certifying this action as a class action as to the first and second cause of action made herein, including certifying the causes of action under the appropriate subsection of Fed.R.Civ.P.23;

23

2.     Enter an order appointing Plaintiff, Craig Brewer, as class representative and appointing the undersigned counsel to represent the class;

3.     Enter judgment in favor of Plaintiff and the class members against State Farm for unfair trade practices in an amount to be determined at trial, including treble damages;

4.     Enter judgment in favor of Plaintiff individually for compensatory damages resulting from State Farm's breach of contract in the amount of underpayment to Plaintiff as measured by the amount the payment was reduced by the impermissible reduction of the retail cost of comparable vehicles in calculating the value of his total loss claim;

5.     Enter an award of attorney's fees and costs, as provided by law and/or as would be reasonable from a recovery of monies recovered for or benefits to the Plaintiff and class;

6.     Enter an order declaring State Farm violated North Carolina law by reducing the retail cost of comparable vehicles in the calculation of the total loss claims of the Plaintiff and proposed class;

7.     Tax the cost of this action against State Farm;

8.     Grant such other and further relief as the Court may deem just and proper; and

9.     Grant the Plaintiff and class members a jury trial.

October 3, 2025.

HEMMINGS & STEVENS, PLLC

*/s/ Aaron C. Hemmings*

Aaron C. Hemmings, NC Bar No.: 29810
Kelly A. Stevens, NC Bar No.: 27066
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone:  (919) 277-0161
Fax:      (919) 277-0162
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com

*Attorneys for the Plaintiff*

 **MARKET VALUATION REPORT**

*Prepared for STATE FARM INSURANCE COMPANIES*

 REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Brewer, Craig |
| | 5188 Waldron Meadow Dr |
| | Charlotte, NC 28226-8801 |
| Loss Vehicle | 2021 Genesis GV80 AWD |
| Loss Incident Date | 04/24/2023 |
| Claim Reported | 05/08/2023 |

## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 112950842 |
| Claim Reference | 33-49C2-65Q01 |
| Claim Rep | Rodriguez, Pedro |
| Appraiser | Fowler, Nathan |
| Odometer | 18,094 |
| Last Updated | 05/08/2023 08:48 AM |

## VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 56,772.00** |
| **Adjusted Vehicle Value** | **$ 56,772.00** |
| Vehicular Tax (3%) | + $ 1,703.16 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Value before Deductible** | **$ 58,475.16** |
| Deductible* | - $ 500.00 |
| **Total** | **$ 57,975.16** |

Adjustments indicated with an Asterisk (*) have been determined by STATE FARM INSURANCE COMPANIES and have been added here for convenience.

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

The CCC ONE® Market Valuation Report reflects CCC Intelligent Solutions Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by STATE FARM INSURANCE COMPANIES.

Loss vehicle has 44% fewer than average mileage of 32,500.



EXHIBIT

A

Bloomberg No. 5208

### BASE VEHICLE VALUE

This is derived per our Valuation methodology described on the next page.

### ADJUSTED VEHICLE VALUE

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

| | |
|---|---|
| Valuation Methodology | 2 |
| Vehicle Information | 3 |
| Vehicle Condition | 7 |
| Comparable Vehicles | 9 |
| Valuation Notes | 14 |
| Supplemental Information | 15 |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# VALUATION METHODOLOGY

### How was the valuation determined?



**CLAIM INSPECTION**

STATE FARM INSURANCE COMPANIES has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 VEHICLE INFORMATION

## VEHICLE DETAILS

| Location | CHARLOTTE, NC 28226-8801 |
|---|---|
| VIN | KMUHCESC1MU062453 |
| Year | 2021 |
| Make | Genesis |
| Model | GV80 |
| Body Style | AWD |
| Body Type | Sports Utility |
| Engine - | |
| Cylinders | 6 |
| Displacement | 3.5L |
| Induction | Turbocharged |
| Fuel Type | Gasoline |
| Carburation | Port/Direct Injection |
| Transmission | Automatic Transmission 4 Wheel Drive |
| Curb Weight | 5038 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

CCC VINguard®

| | | |
|---|---|---|
| | 1 Vehicle Market History Information | 10/26/2021 |
| Experian AutoCheck | No Title Problem Found | |
| National Highway Traffic Safety Administration | 3 Recalls | |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

#  VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Package 1:** | Advanced | |
| **Odometer** | 18,094 | |
| **Transmission** | Automatic Transmission | ✓ |
| | 4 Wheel Drive | ✓ |
| **Power** | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Driver Seat | ✓ |
| | Power Passenger Seat | ✓ |
| | Power Trunk/Liftgate | ✓ |
| **Decor/Convenience** | Air Conditioning | ✓ |
| | Climate Control | ✓ |
| | Dual Air Conditioning | ✓ |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Intermittent Wipers | ✓ |
| | Console/Storage | ✓ |
| | Overhead Console | ✓ |
| | Memory Package | ✓ |
| | Navigation System | ✓ |
| | Keyless Entry | ✓ |
| | Telescopic Wheel | ✓ |
| | Heated Steering Wheel | ✓ |
| | Message Center | ✓ |
| | Home Link | ✓ |
| | Remote Starter | ✓ |
| | Wood Interior Trim | ✓ |
| **Seating** | Bucket Seats | ✓ |
| | Leather Seats | ✓ |

To the left is the equipment of the loss vehicle that STATE FARM INSURANCE COMPANIES provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

▤ **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Heated Seats | ✓ |
| | Rear Heated Seats | 🔲 |
| | Ventilated Seats | ✓ |
| **Radio** | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |
| | Search/Seek | ✓ |
| | Steering Wheel Touch Controls | ✓ |
| | Auxiliary Audio Connection | ✓ |
| | Premium Radio | 🔲 |
| | Satellite Radio | ✓ |
| **Wheels** | 20" Or Larger Wheels | ✓ |
| **Roof** | Electric Glass Roof | ✓ |
| | Skyview Roof | ✓ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✓ |
| | Passenger Air Bag | ✓ |
| | Anti-lock Brakes (4) | ✓ |
| | 4-wheel Disc Brakes | ✓ |
| | Front Side Impact Air Bags | ✓ |
| | Head/Curtain Air Bags | ✓ |
| | Backup Camera | ✓ |
| | Surround View Camera | 🔲 |
| | Parking Sensors | ✓ |
| | Rear Side Impact Air Bags | ✓ |
| | Hands Free | ✓ |
| | Heads Up Display | 🔲 |
| | Xenon Or L.E.D. Headlamps | ✓ |
| | Alarm | ✓ |
| | Traction Control | ✓ |
| | Stability Control | ✓ |
| | Intelligent Cruise | ✓ |
| | Lane Departure Warning | ✓ |
| | Blind Spot Detection | ✓ |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.


#  VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| Exterior/Paint/Glass | Dual Mirrors | ✓ |
|---|---|---|
| | Heated Mirrors | ✓ |
| | Privacy Glass | ✓ |
| | Luggage/Roof Rack | ✓ |
| | Rear Spoiler | ✓ |
| | Rear Window Wiper | ✓ |
| | Signal Integrated Mirrors | ✓ |
| | Clearcoat Paint | ✓ |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

#  VEHICLE CONDITION

## COMPONENT CONDITION

|  | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | AVERAGE PRIVATE | **Guideline:** Clean. No significant tears, holes and/ or burn marks. No significant wear. No bare spots. Lightly worn primarily in driver's area. | $0 |
| Carpets | AVERAGE PRIVATE | **Guideline:** Clean. No significant tears, holes and/ or burn marks. No significant wear. No bare spots. Lightly worn primarily in driver's area. | $0 |
| Dashboard | AVERAGE PRIVATE | **Guideline:** Few small scratches and/or gouges. Minimal damage to components. Light wear. | $0 |
| Headliner | AVERAGE PRIVATE | **Guideline:** Clean. No significant holes and/or burn marks. No significant scuffing. | $0 |
| **EXTERIOR** | | | |
| Sheet Metal | AVERAGE PRIVATE | **Guideline:** Few dings. No rust. All panels intact and properly aligned. | $0 |
| Trim | AVERAGE PRIVATE | **Guideline:** No broken and/or missing components. No dents. Few dings. | $0 |
| Paint | AVERAGE PRIVATE | **Guideline:** Few small chips and/or scratches. No peeling and/or flaking. Minor swirl marks. Slight Fading. | $0 |
| Glass | AVERAGE PRIVATE | **Guideline:** Light surface scratches and/or pitting. | $0 |
| **MECHANICAL** | | | |
| Engine | AVERAGE PRIVATE | **Guideline:** Minor seepage. Belts and hoses firm, show minimal wear. Minimal dirt and grease in engine compartment. | $0 |
| Transmission | AVERAGE PRIVATE | **Guideline:** Fluid slightly discolored. A few areas of seepage. | $0 |

STATE FARM INSURANCE COMPANIES uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

Case 1:25-cv-00904-CCE-JLW    Document 1    Filed 10/03/25    Page 32 of 44


# VEHICLE CONDITION

## COMPONENT CONDITION



| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| **TIRES** | | | |
| Front Tires | AVERAGE PRIVATE | **Guideline:** 41% to 68% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11) | $ 0 |
| Rear Tires | AVERAGE PRIVATE | **Guideline:** 41% to 68% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11) | $ 0 |
| **Total Condition Adjustments** | | | **$ 0** |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Advanced | ✓ | ✓ | ✓ | ✗ |
| Odometer | 18,094 | 31,222 | 10,919 | 24,637 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| 4 Wheel Drive | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Liftgate | ✓ | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Dual Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Heated Steering Wheel | ✓ | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✓ | ✓ | ✓ |
| Remote Starter | ✓ | ✓ | ✓ | ✓ |
| Wood Interior Trim | ✓ | ✓ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✗ | ✓ | ✓ | ✗ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Rear Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Ventilated Seats | ✓ | ✓ | ✓ | ✓ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |

**Comp 1**   Updated Date: 04/02/2023
**2021 Genesis Gv80 Awd 6 3.5l**
**Gasoline Turbocharged Port/direct Injection**
**VIN** KMUHCESC3MU056878
**Dealership** South Charlotte Hyundai
**Telephone** (980) 224-5870
**Source** Autotrader
**Stock #** CL56878
**Distance from Charlotte, NC**
4 Miles - Pineville, NC
**Comp 2**   Updated Date: 02/19/2023
**2021 Genesis Gv80 Awd 6 3.5l**
**Gasoline Turbocharged Port/direct Injection**
**VIN** KMUHCESC9MU066332
**Dealership** Paramount Hyundai Of Hickory
**Telephone** (828) 214-5595
**Source** Autotrader
**Stock #** H9257A1
**Distance from Charlotte, NC**
51 Miles - Hickory, NC
**Comp 3**   Updated Date: 02/22/2023
**2021 Genesis Gv80 Awd 6 3.5l**
**Gasoline Turbocharged Port/direct Injection**
**VIN** KMUHCESC6MU037273
**Dealership** Alfa Romeo Fiat At Benson
**Telephone** (864) 662-6046
**Source** Dealer Ad
**Distance from Charlotte, NC**
82 Miles - Greer, SC

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ | ✓ |
| Premium Radio | ✓ | ✓ | ✓ | ✓ |
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| Aluminum/Alloy Wheels | ✗ | ✓ | ✓ | ✗ |
| 20" Or Larger Wheels | ✓ | ✗ | ✗ | ✓ |
| Locking Wheels | ✗ | ✗ | ✓ | ✗ |
| Electric Glass Roof | ✓ | ✓ | ✓ | ✓ |
| Skyview Roof | ✓ | ✓ | ✓ | ✓ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ | ✓ |
| Backup Camera | ✓ | ✓ | ✓ | ✓ |
| Surround View Camera | ✓ | ✓ | ✓ | ✗ |
| Parking Sensors | ✓ | ✓ | ✓ | ✓ |
| Rear Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Communications System | ✗ | ✓ | ✗ | ✗ |
| Hands Free | ✓ | ✓ | ✓ | ✓ |
| Heads Up Display | ✓ | ✓ | ✓ | ✓ |
| Xenon Or L.E.D. Headlamps | ✓ | ✓ | ✓ | ✓ |
| Alarm | ✓ | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Intelligent Cruise | ✓ | ✓ | ✓ | ✓ |
| Lane Departure Warning | ✓ | ✓ | ✓ | ✓ |
| Blind Spot Detection | ✓ | ✓ | ✓ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Privacy Glass | ✓ | ✓ | ✓ | ✓ |
| Luggage/Roof Rack | ✓ | ✓ | ✓ | ✓ |
| Rear Spoiler | ✓ | ✓ | ✓ | ✓ |
| Rear Window Wiper | ✓ | ✓ | ✓ | ✓ |
| Signal Integrated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✓ | ✓ | ✓ |
| | | | | |
| **List Price** | | $ 56,299 | $ 61,900 | $ 58,250 |
| **Adjustments:** | | | | |

[1]The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 COMPARABLE VEHICLES

| | | | |
|---|---|---|---|
| Package | | | + $ 1,075 |
| Options | + $ 100 | + $ 200 | + $ 200 |
| Mileage | + $ 2,134 | - $ 877 | + $ 961 |
| Condition[1] | - $ 3,328 | - $ 3,328 | - $ 3,328 |
| **Adjusted Comparable Value** | **$ 55,205** | **$ 57,895** | **$ 57,158** |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

Additional Comparable Vehicles are in summary format, but are adjusted the same as those on the previous page.

| Source | Vehicle | Price | Adjusted Comparable Value |
|--------|---------|-------|---------------------------|
| **Comp 4** | | | |
| Source: Inspected Inventory Paramount Hyundai Hickory, NC (828) 449-1122 51 Miles From Charlotte, NC | **2021 Genesis Gv80 Awd 6 3.5l Gasoline Turbocharged Port/direct Injection** Odometer: 13,949 VIN: KMUHCESC9MU063981 Stock #: VIN3981 Updated Date: 02/14/2023 | $ 65,900 (Take) | $ 58,776 |
| **Comp 5** | | | |
| Source: Autotrader Lexus Of Greenville Greenville, SC (864) 754-7106 88 Miles From Charlotte, NC | **2021 Genesis Gv80 Awd 6 3.5l Gasoline Turbocharged Port/direct Injection** Odometer: 25,537 VIN: KMUHCESC4MU049891 Stock #: TMU049891 Updated Date: 03/19/2023 | $ 53,750 (List) | $ 51,530 |
| **Comp 6** | | | |
| Source: Autotrader Parks Buick Gmc Greenville Greenville, SC (864) 990-4569 88 Miles From Charlotte, NC | **2021 Genesis Gv80 Awd 6 3.5l Gasoline Turbocharged Port/direct Injection** Odometer: 10,938 VIN: KMUHCESC5MU062150 Stock #: 3G4081 Updated Date: 04/30/2023 | $ 60,997 (List) | $ 58,419 |
| **Comp 7** | | | |
| Source: Autotrader Genesis Of Greer Greer, SC (864) 297-7022 80 Miles From Charlotte, NC | **2021 Genesis Gv80 Awd 6 3.5l Gasoline Turbocharged Port/direct Injection** Odometer: 19,063 VIN: KMUHCESC6MU064263 Stock #: Z2177A Updated Date: 05/02/2023 | $ 64,995 (List) | $ 58,523 |

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Take Price is the amount that the dealership will accept to sell the inspected vehicle, though a lower price may be obtainable through negotiation.

Distance is based upon a straight line between loss and comparable vehicle locations.

**Comp 8**

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

 COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| Source: Truecar | **2021 Genesis Gv80 Awd 6** | $ 55,398 | $ 51,450 |
|---|---|---|---|
| Century Bmw Mini | **3.5l Gasoline Turbocharged** | (List) | |
| Greenville, SC | **Port/direct Injection** | | |
| (833) 620-3604 | Odometer: 32,831 | | |
| 88 Miles From Charlotte, NC | VIN: | | |
| | KMUHCESC6MU070709 | | |
| | Stock #: TMU070709 | | |
| | Updated Date: 02/24/2023 | | |

**Comp 9**

| Source: Autotrader | **2021 Genesis Gv80 Awd 6** | $ 67,995 | $ 60,421 |
|---|---|---|---|
| Rideshift Greenville | **3.5l Gasoline Turbocharged** | (List) | |
| Greenville, SC | **Port/direct Injection** | | |
| (855) 411-6005 | Odometer: 8,428 | | |
| 88 Miles From Charlotte, NC | VIN: | | |
| | KMUHCESC3MU031270 | | |
| | Stock #: 8PK1629 | | |
| | Updated Date: 04/30/2023 | | |

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

Case 1:25-cv-00904-CCE-JLW    Document 1    Filed 10/03/25    Page 38 of 44


# VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by STATE FARM INSURANCE COMPANIES, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include North Carolina Administrative Code Section 11-04.0418.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

Case 1:25-cv-00904-CCE-JLW    Document 1    Filed 10/03/25    Page 39 of 44

# SUPPLEMENTAL INFORMATION

 **VEHICLE HISTORY INFORMATION**

### VINguard®

VINguard® Message: VINguard has decoded this VIN without any errors

### Vehicle Market History Information:

This vehicle was reported to CCC on 10/26/2021     Mileage: 0

Location:  in GREER, SC

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

## SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

CCC provides STATE FARM INSURANCE COMPANIES information reported by Experian regarding the **2021 Genesis GV80 (KMUHCESC1MU062453)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | ✓ No Abandoned Record Found |
| Damaged | ✓ No Damaged Record Found |
| Fire Damage | ✓ No Fire Damage Record Found |
| Grey Market | ✓ No Grey Market Record Found |
| Hail Damage | ✓ No Hail Damage Record Found |
| Insurance Loss | ✓ No Insurance Loss Record Found |
| Junk | ✓ No Junk Record Found |
| Rebuilt | ✓ No Rebuilt Record Found |
| Salvage | ✓ No Salvage Record Found |

**LEGEND :**

✓ No Event Found

◯ Event Found

▤ Information Needed

**TITLE CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | ✓ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ No Frame Damage Record Found |
| Major Damage Incident | ✓ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ No Odometer Problem Record Found |
| Recycled | ✓ No Recycled Record Found |
| Water Damage | ✓ No Water Damage Record Found |
| Salvage Auction | ✓ No Salvage Auction Record Found |

**EVENT CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | ▤ Accident Record Found |
| Corrected Title | ✓ No Corrected Title Record Found |
| Driver Education | ✓ No Driver Education Record Found |
| Fire Damage Incident | ✓ No Fire Damage Incident Record Found |
| Lease | ✓ No Lease Record Found |
| Lien | ✓ No Lien Record Found |
| Livery Use | ✓ No Livery Use Record Found |
| Government Use | ✓ No Government Use Record Found |
| Police Use | ✓ No Police Use Record Found |
| Fleet | ✓ No Fleet Record Found |
| Rental | ✓ No Rental Record Found |
| Fleet and/or Rental | ✓ No Fleet and/or Rental Record Found |
| Repossessed | ✓ No Repossessed Record Found |
| Taxi use | ✓ No Taxi use Record Found |
| Theft | ✓ No Theft Record Found |
| Fleet and/or Lease | ✓ No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ No Duplicate Title Record Found |

**VEHICLE INFORMATION**

INFORMATION FOUND

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 05/08/2023**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 03/07/2022 | NC | 5475 | Motor Vehicle Dept. | Title (Lien Reported) (Lease Reported) |
| 03/07/2022 | HUNTERSVILLE, NC | | Motor Vehicle Dept. | Registration Event/ Renewal (Lease Reported) |
| 10/23/2022 | BERKELEY COUNTY, SC | | State Agency | Front Impact with Another Vehicle |
| 10/23/2022 | BERKELEY COUNTY, SC | | State Agency | Vehicle Damage Reported as Disabling |
| 10/23/2022 | BERKELEY COUNTY, SC | | State Agency | Vehicle Was Towed |
| 04/24/2023 | CHARLOTTE, NC | | Police Report | Accident Reported |
| 04/24/2023 | NC | | Police Report | Air Bag Deployed |
| 04/24/2023 | NC | | Police Report | Vehicle Was Towed |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 3 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 21V208000

**Mfg's Report Date :** MAR 23, 2021

**Component :** FUEL SYSTEM, GASOLINE:DELIVERY:HOSES, LINES/PIPING, AND FITTINGS

**Potential Number Of Units Affected :** 147

**Summary :** Hyundai Motor America (Hyundai) is recalling certain 2021 Genesis G80 and GV80 vehicles equipped with 2.5-litre turbo engines. The fuel tube connecting the high pressure fuel pump to the fuel rail may not seal properly, which could allow fuel to leak.

**Consequence :** A fuel leak in the presence of an ignition source can increase the risk of a fire.

**Remedy :** Hyundai will notify owners, and dealers will replace the high pressure fuel tube, free of charge. Owner notification letters were mailed on May 24, 2021. Owners may contact Hyundai customer service at 1-855-371-9460. Hyundai's number for this recall is 008G.

**Manufacturer Recall No. :** 008G

---

**NHTSA Campaign ID :** 21V796000

**Mfg's Report Date :** OCT 12, 2021

**Component :** SEAT BELTS:FRONT

**Potential Number Of Units Affected :** 978

**Summary :** Hyundai Motor America (Hyundai) is recalling certain 2021 Elantra, Elantra HEV, Venue, Genesis GV80 and 2022 Genesis GV70 vehicles. In the event of a crash, the front driver-side and/or passenger-side seat belt pretensioner(s) may explode upon deployment.

**Consequence :** An exploding seat belt pretensioner could project metal fragments into the vehicle, striking vehicle occupants and resulting in injury.

**Remedy :** Dealers will replace the seat belt pretensioners, free of charge. Owner notification letters were mailed February 10, 2022. Owners may contact Hyundai customer service at 1-855-371-9460. Hyundai's numbers for this recall are 211 and 009G. This recall is replaced by NHTSA recall numbers 22V-354 for Elantra and Elantra HEV vehicles, 22V-458 for Venue vehicles, and 23V-094 for Genesis vehicles. Elantra, Elantra HEV, Venue, and Genesis vehicles already repaired under this recall will need to have the new remedies completed.

**Manufacturer Recall No. :** 211/009G

---

**NHTSA Campaign ID :** 23V094000

**Mfg's Report Date :** FEB 15, 2023

**Potential Number Of Units Affected :** 65517

© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

**Summary :** Hyundai Motor America (Hyundai) is recalling certain 2020-2023 Genesis GV80, 2021-2023 Genesis G80, 2022-2023 Genesis GV70, and 2023 Genesis GV60 vehicles. In the event of a crash, the front driver-side and/or passenger-side seat belt pretensioners may explode upon deployment.

**Consequence :** An exploding seat belt pretensioner can project metal fragments into the vehicle, strike vehicle occupants, and result in injury.

**Remedy :** Dealers will secure the seat belt pretensioners with a cap, free of charge. Owner notification letters are expected to be mailed April 17, 2023. Owners may contact Hyundai customer service at 1-855-371-9460. Hyundai's number for this recall is 012G. This recall supersedes and expands recall number 21V-796. Vehicles previously repaired under recall 21V-796 will need to have the new remedy completed.

**Manufacturer Recall No. :** 012G



© Copyright 2021 CCC Intelligent Solutions Inc. All Rights Reserved.