# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRAIG BREWER, individually and on
behalf of all similarly situated persons,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

Case No. 1:25-cv-00904-CCE-JLW

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY THE ACTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 3

    **A.**      **The Relevant Policy Provisions.** ................................................ 3

    **B.**      **Plaintiff's Accident and the Total Loss Settlement.** ................ 4

    **C.**      **Plaintiff Files This Suit.** ............................................................. 5

ISSUES PRESENTED ......................................................................................... 5

ARGUMENT ......................................................................................................... 6

    **A.**      **Plaintiff Lacks Standing Given His Refusal to Participate in Appraisal.** ................................................................................... 6

    **B.**      **Plaintiff Fails to Allege a Valid Claim for Breach of Contract—Count III.** ................................................................... 9

    **C.**      **Plaintiff Fails to State a Valid UDTPA Claim—Count I.** ...... 11

             **1.**      **Plaintiff's UDTPA Claim Is Nothing More Than a Disguised Breach of Contract Claim.** ............................ 12

             **2.**      **Plaintiff Does Not Plausibly Allege an Independent UDTPA Violation.** ........................................................ 13

             **3.**      **Plaintiff's UDTPA Claim Does Not Satisfy Rule 9(b)'s Heightened Pleading Standard.** ................................... 15

    **D.**      **Plaintiff Does Not State a Valid Per Se UDTPA Claim Under the UCSPA—Count Two.** ................................................ 16

    **E.**      **Plaintiff Has Not Adequately Pleaded a Claim for Declaratory Relief and the Claims are Duplicative.** ................ 19

    **F.**      **The Court Should Strike Plaintiff's Class Allegations in Light of the Fourth Circuit's Recent Decision in *Freeman*.** ..... 19

    **G.**      **Alternatively, the Court Should Compel Appraisal and Stay this Action Pending Appraisal.** .................................................. 21

CONCLUSION ................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affinity Living Grp., LLC v. Starstone Specialty Ins. Co.*,
2020 U.S. Dist. LEXIS 223446 (M.D.N.C. Nov. 12, 2020) ........................................ 13

*Ambrosio v. Progressive Preferred Ins. Co.*,
154 F.4th 1107 (9th Cir. 2025) ................................................................... 21

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020) ..................................................................... 8

*Bettor v. Esurance Prop. & Cas. Ins. Co.*,
2019 U.S. Dist. LEXIS 54391 (S.D. Fla. Mar. 28, 2019) ........................................ 7

*Bibbs v. Allstate Ins. Co.*,
2024 U.S. Dist. LEXIS 161137 (N.D. Ohio Sep. 9, 2024) ........................................ 22

*Birtha v. Stonemor, N.C., LLC*,
220 N.C. App. 286 (2012) ...................................................................... 12

*Bourque v. State Farm Mut. Auto. Ins. Co.*,
89 F.4th 525 (5th Cir. 2023) ................................................................... 21

*Broussard v. Meineke Disc. Muffler Shops*,
155 F.3d 331 (4th Cir. 1998) ................................................................... 13

*Brown Goldstein Levy LLP v. Fed. Ins. Co.*,
68 F.4th 169 (4th Cir. 2023) .................................................................... 3

*Bryant v. State Farm Mut. Auto. Ins. Co.*,
2021 U.S. Dist. LEXIS 36036 (N.D. Cal. Jan. 13, 2021) ...................................... 7, 8

*Challenge Printing Co. of the Carolinas, Inc. v. Tesla, Inc.*,
2024 U.S. App. LEXIS 13115 (4th Cir. May 31, 2024) ...................................... 15, 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................. 9

*Clinton v. Jones*,
520 U.S. 681 (1997) ............................................................................ 21

ii

*Clippinger v. State Farm Auto. Ins. Co.*,
  2025 U.S. App. LEXIS 26347 (6th Cir. Oct. 9, 2025) ................................................ 21

*Cole v. N.C. Dep't of Pub. Safety*,
  253 N.C. App. 270 (2017).............................................................................................. 14

*Dinerstein v. Google, LLC*,
  73 F.4th 502 (7th Cir. 2023) ........................................................................................... 7

*Divine Hosp., LLC v. Owners Ins. Co.*,
  2025 U.S. Dist. LEXIS 38629 (E.D.N.C. Mar. 3, 2025) ............................................... 6

*Drummond v. Progressive Specialty Ins. Co.*,
  142 F.4th 149 (3d Cir. 2025) ........................................................................................ 21

*Elliott v. Am. States Ins. Co.*,
  883 F.3d 384 (4th Cir. 2018) ................................................................................. 17, 19

*Elmore v. Auto Owners Ins. Co.*,
  2012 U.S. Dist. LEXIS 151371 (W.D.N.C. Oct. 19, 2012)........................................... 22

*Falasco v. USAA Cas. Ins. Co.*,
  2025 U.S. Dist. LEXIS 83734 (E.D. Ark. May 2, 2025)............................................... 18

*Fortson v. Garrison Prop. & Cas. Co.*,
  2022 U.S. Dist. LEXIS 15478 (M.D.N.C. Jan. 21, 2022) ....................................... 9, 11

*Fortson v. Garrison Prop. & Cas. Ins. Co.*,
  2019 U.S. Dist. LEXIS 187036 (M.D.N.C. Oct. 29, 2019)................................. 2, 7, 22

*Fortson v. Garrison Prop. & Cas. Ins. Co.*,
  2022 U.S. Dist. LEXIS 14520 (M.D.N.C. Jan. 13, 2022) .............................. 15, 17, 18

*Franco v. Progressive Cas. Ins. Co.*,
  2025 U.S. Dist. LEXIS 92796 (M.D.N.C. May 14, 2025) ........................................... 20

*Freeman v. Progressive Direct Ins. Co.*,
  149 F.4th 461 (4th Cir. 2025) ............................................................................... passim

*Golla v. Allstate Ins. Co.*,
  2025 U.S. Dist. LEXIS 191202 (N.D. Ohio Sep. 29, 2025)........................................ 22

*Hanback v. DRHI, Inc.*,
  647 F. App'x 207 (4th Cir. 2016) ................................................................................. 19

iii

*Harleysville Mut. Ins. Co. v. Narron*,
    155 N.C. App. 362 (2002)...................................................................................... 9

*Hatchett v. Fin. Bus. & Consumer Sols., Inc.*,
    2022 U.S. Dist. LEXIS 22530 (M.D.N.C. Feb. 8, 2022)................................. 9

*Jama v. State Farm Mut. Auto. Ins. Co.*,
    113 F.4th 924 (9th Cir. 2024) ....................................................................... 21

*Jumas Food Mart v. Chubb Ins.*,
    2023 U.S. Dist. LEXIS 112351 (M.D.N.C. June 28, 2023) ................... 15, 16

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)....................................................................................... 21

*Lara v. First Nat'l Ins. Co. of Am.*,
    25 F.4th 1134 (9th Cir. 2022) ....................................................................... 21

*Lemons v. Old Hickory Council*,
    322 N.C. 271 (1988) ...................................................................................... 14

*Long v. State Dep't of Human Res., Div. of Child Dev.*,
    145 N.C. App. 186 (2001).............................................................................. 14

*Moreno v. Universal Prop. Ins. Co.*,
    2022 U.S. Dist. LEXIS 144881 (W.D.N.C. July 11, 2022)......................... 10

*Murray v. Nationwide Mut. Ins. Co.*,
    123 N.C. App. 1 (1996).................................................................................. 10

*Neshat v. Nationwide Mut. Fire Ins. Co.*,
    2021 U.S. Dist. LEXIS 100154 (E.D.N.C. May 27, 2021) ......................... 18

*Niloy, Inc. v. Lowe's Cos.*,
    2017 U.S. Dist. LEXIS 314 (W.D.N.C. Jan. 3, 2017) ................................. 10

*Norman v. Standard Fire Ins. Co.*,
    2023 U.S. Dist. LEXIS 165387 (C.D. Ill. May 15, 2023) ............................ 7

*Patel v. Scottsdale Ins. Co.*,
    728 S.E.2d 394 (N.C. Ct. App. 2012) ........................................................... 6

*Phillips v. Garrison Prop. & Cas.*,
    2020 U.S. Dist. LEXIS 104094 (N.D. Ala. May 12, 2020)......................... 22

iv

*Pierce v. Am. Strategies Ins. Corp.*,
2016 U.S. Dist. LEXIS 71426 (W.D.N.C. June 1, 2016) ........................................... 22

*Prynne v. Settle*,
848 F. App'x 93 (4th Cir. 2021) ................................................................................ 9

*Sampson v. United Servs. Auto Ass'n*,
83 F.4th 414 (5th Cir. 2023) ................................................................................... 21

*Schroeder v. Progressive Paloverde Ins. Co.*,
146 F.4th 567 (7th Cir. 2025) .............................................................................. 9, 21

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) .................................................................................. 16

*Value Health Sols., Inc. v. Pharm. Rsch. Assocs.*,
385 N.C. 250 (2023) ............................................................................................... 11

*Waters v. Electrolux Home Prods.*,
2016 U.S. Dist. LEXIS 92862 (N.D.W. Va. July 18, 2016) ..................................... 20

*Wiggins v. State Farm Mut. Auto. Ins. Co.*,
2022 U.S. Dist. LEXIS 112081 (D.S.C. June 23, 2022) .......................................... 22

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ................................................................................................ 19

**RULES**

Fed. R. Civ. P. 9 ...................................................................................................... 16

Fed. R. Civ. P. 12 ............................................................................................... 16, 20

**STATUTES**

N.C. Gen. Stat. § 58-63-15 ........................................................................... 16, 17, 18

N.C. Gen. Stat. § 75-1.1, *et seq.* ............................................................................ 11

**OTHER AUTHORITIES**

11 N.C. Admin. Code 4.0418 .......................................................................... 11,13, 14

# INTRODUCTION

This is a putative class action challenging the actual cash value ("ACV") paid by State Farm Mutual Automobile Insurance Company on total loss claims in North Carolina. The named plaintiff is Craig Brewer ("Plaintiff"), who insured his vehicle with State Farm and who challenges the amount State Farm paid as ACV on his total loss claim in 2023. After Plaintiff filed suit, State Farm demanded appraisal pursuant to the terms of the Policy, but Plaintiff refused to participate in appraisal. The Complaint contains one count for breach of contract (asserted on an individual basis only) and two purported statutory-based claims, which are nothing more than disguised contract claims disputing part of State Farm's ACV methodology. For several reasons, the Court should dismiss the Complaint for failure to state a claim and, at a minimum, should strike the class allegations based on recent controlling Fourth Circuit precedent. In the alternative, the Court should compel appraisal and stay the case pending appraisal.

***First***, without participating in appraisal, Plaintiff lacks standing to assert any of his claims against State Farm because ACV, as determined by appraisal, might be equal to or even less than what State Farm already paid Plaintiff. Under the Policy, appraisal—and not a claim for breach of contract or any other cause of action—necessarily determines ACV of Plaintiff's vehicle. Other federal courts have held in similar cases that, without participating in appraisal, a plaintiff lacks standing.

1

**Second**, Plaintiff cannot state a claim for breach of contract based on State Farm's use of the CCC condition adjustment because the Policy does not impose a methodological duty on State Farm. Rather, the Policy requires only that State Farm pay ACV.

**Third**, Plaintiff's claims under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") and Unfair Claims Settlement Practices Act ("UCSPA") are simply contract claims in the clothing of statutory claims. Further, Plaintiff has not plausibly alleged any violation under these statutory provisions. His references to the total loss regulation, which permits a condition adjustment like State Farm applied here, and "industry standards" do not save his statutory claims.

**Fourth**, Plaintiff's request for declaratory relief fails to state a claim and is duplicative of his other claims.

**Fifth**, based on the Fourth Circuit's recent decision in *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461 (4th Cir. 2025), *en banc reh'g denied*, 2025 U.S. App. LEXIS 29651 (4th Cir. Nov. 12, 2025), the Court should strike Plaintiff's class allegations because determining ACV of a total loss vehicle is highly individualized, which defeats predominance.

**Finally**, in the alternative, this Court, like other federal courts (including this one in *Fortson v. Garrison Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 187036 (M.D.N.C. Oct. 29, 2019)), should compel appraisal and stay the case pending appraisal.

2

## FACTUAL BACKGROUND

**A.    The Relevant Policy Provisions.**

Plaintiff insured his vehicle with State Farm under Policy Form 9833P.8. ECF 1, Complaint ("Compl.") ¶ 22; *see* Diffley Decl, ¶ 4 & Ex. 1.[1] Under the Policy's "Coverage for Damage to Your Auto" section, State Farm's liability is limited to "the lesser of" either "[a]ctual cash value of the [] damaged property; or [the] [a]mount necessary to repair or replace the property with other property of like kind and quality." Ex. 1, Policy Booklet, at 15–16. The Policy also contemplates "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss." *Id*. at 16.

The Policy indicates that "if [State Farm and Plaintiff] do not agree on the amount of loss, either [State Farm or Plaintiff] may ***demand*** an appraisal of the loss." *Id*. (emphasis added). The procedures for appraisal are further specified in the Policy: (1) both parties select an appraiser; (2) those two appraisers then select a third appraiser ("the umpire"); (3) each appraiser determines the amount of the loss (here, ACV of the covered vehicle); (4) if the parties' appraisers cannot agree on the amount of loss (ACV), they submit their differences to the umpire; and (5) "[a] decision agreed to by any two [State Farm's appraiser, Plaintiff's appraiser, and the umpire] will be binding." *Id*. The Policy further

---

[1] Plaintiff did not attach the Policy to the Complaint. The Court may nonetheless consider Plaintiff's Policy on a motion to dismiss without converting the motion to one for summary judgment. *Brown Goldstein Levy LLP v. Fed. Ins. Co*., 68 F.4th 169, 174 (4th Cir. 2023).

provides that "[n]o legal action may be brought against us until there has been full compliance with all the terms of this [P]olicy." *Id*. at 18.

**B.     Plaintiff's Accident and the Total Loss Settlement.**

Plaintiff insured his 2021 Genesis with State Farm under the Policy.  On April 24, 2023 the 2021 Genesis was damaged and later declared a total loss (i.e., the cost of repairs exceeded the pre-loss ACV of the vehicle). Compl. ¶¶ 21–24. State Farm valued Plaintiff's vehicle at $56,772, and paid Plaintiff that amount. *Id*. ¶ 26. To help determine ACV of Plaintiff's vehicle, State Farm used CCC One ("CCC"), a leading independent vehicle valuation company, to prepare a comprehensive valuation report. *Id*. ¶ 24 & Compl. Ex. A. State Farm provided CCC with information about Plaintiff's vehicle, including its location and pre-loss condition, and CCC used this information to review its "extensive database of vehicles" to identify comparable vehicles. Compl. Ex. A, at 2. These comparable vehicles were "similar to the loss vehicle based on the relevant factors." *Id*. The resulting CCC report reflects a detailed description of each comparable vehicle, the location of the dealership, and the advertised price of the vehicle. *Id*. at 9–11. CCC used these features to adjust the comparable vehicles in connection with State Farm's determination of ACV of the vehicle. *Id*.

One specific adjustment made during the process was the condition adjustment. The CCC report explains that the condition adjustment "sets th[e] comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section." *Id*. at 10. CCC applied the weighted average of the adjusted

comparable vehicles as part of the larger valuation process. *Id*. at 2 The CCC report for Plaintiff's vehicle describes the condition of both the covered vehicle and several comparable vehicles.[2] *Id*. at 9–11. State Farm provided a copy of the CCC report to Plaintiff, in conjunction with his loss settlement letter and payment. Compl. ¶¶ 25–26.

**C.      Plaintiff Files This Suit.**

On October 3, 2025, Plaintiff filed this suit, asserting three causes of action: (1) a UDTPA claim; (2) a UCSPA claim; and (3) breach of contract (on an individual basis only).[3] Compl. ¶¶ 81–106. Plaintiff seeks to represent a class of North Carolina State Farm insureds who received compensation for a total loss claim where the CCC condition adjustment was used. *Id*. ¶ 69. Plaintiff asserts that State Farm undervalued comparable vehicles through its use of the condition adjustment. *Id*. ¶¶ 45–46.

After Plaintiff filed suit, on November 10, 2025, State Farm demanded appraisal pursuant to the terms of the Policy. *See* Diffley Decl, ¶ 5, Ex. 2. Plaintiff responded on November 18, 2025, and refused to participate in the contractually mandated appraisal. Diffley Decl. ¶ 6, Ex. 3.

## ISSUES PRESENTED

I.      Does Plaintiff have standing given his refusal to participate in appraisal?

---

[2] The CCC report noted nine comparable vehicles in its valuation of Plaintiff's vehicle, however, only three had their condition assessed in detail. The CCC report discussed the remaining six only "in summary format." Compl. Ex. A, at 9–13.

[3] Plaintiff also makes various unspecified references to declaratory relief, but does not set that out as a separate count. Compl. ¶¶ 2, 5, 66, 74(i) & p. 24, ¶ 6; *see* Section E.

5

II.    Has Plaintiff stated valid claims for relief for breach of contract, violations of the UDTPA and UCSPA, or for declaratory relief?

III.    Should the Court strike Plaintiff's class allegations following the Fourth Circuit's recent ruling in *Freeman*?

IV.    In the alternative, should the Court compel appraisal based on the Policy's appraisal language and stay this case pending appraisal?

## ARGUMENT

**A.    Plaintiff Lacks Standing Given His Refusal to Participate in Appraisal.**

Despite Plaintiff's attempts to mask his contract dispute as statutory claims, this suit is about whether State Farm paid Plaintiff ACV for his vehicle. Compl. ¶¶ 2, 4, 27, 42, 49, 60, 86, 91, 105(a), 106. Because the filing of this suit indicated that Plaintiff disputed ACV, State Farm demanded appraisal to resolve the dispute under the terms of the Policy, and Plaintiff refused to participate. Exs. 2, 3. Under the Policy, however, once one party has demanded appraisal, the process is mandatory and the outcome is binding.[4] Ex. 1, Policy

---

[4] The appraisal provision is enforceable under North Carolina law. *Divine Hosp., LLC v. Owners Ins. Co.*, 2025 U.S. Dist. LEXIS 38629, at *4 (E.D.N.C. Mar. 3, 2025) ("As a general matter, North Carolina law enforces insurance policies as contracts, including appraisal clauses therein.") (collecting North Carolina cases). Appraisal is a condition precedent to suit. *See* Ex. 1, Policy Booklet, at 18 ("No legal action may be brought against us until there has been full compliance with all the terms of this [P]olicy."). And North Carolina courts have held that when there is such an appraisal provision that appraisal is a condition precedent to filing suit. *See Patel v. Scottsdale Ins. Co.*, 728 S.E.2d 394, 399 (N.C. Ct. App. 2012) ("As a result, we conclude that Plaintiff was required to participate in and complete the appraisal process prior to filing his complaint in this case and that he appears not to have done so.").

6

Booklet, at 16 ("If we and you do not agree on the amount of loss, either may ***demand*** an appraisal of the loss.") (emphasis added).

Plaintiff might argue that he does not challenge ACV but instead challenges State Farm's use of the condition adjustment with respect to comparable vehicles. This argument does not rescue his claims. First, if Plaintiff is not challenging ACV, then his alleged injury-in-fact is "divorced from any concrete harm" and he thus lacks standing. *Freeman*, 149 F.4th at 467 (quoting *Dinerstein v. Google, LLC*, 73 F.4th 502, 519 (7th Cir. 2023)). And, regardless of the labels used in the Complaint, Plaintiff repeatedly alleges that State Farm is "avoiding paying the full and correct amount for vehicle total loss claims." Compl. ¶ 2; *see also id*. ¶¶ 4, 27, 42, 49, 60, 86, 91, 105(a), 106. Accordingly, this lawsuit—like others before it—is "at its core, about the valuation of Plaintiff 's automobile." *Norman v. Standard Fire Ins. Co.,* 2023 U.S. Dist. LEXIS 165387, at *29–30 (C.D. Ill. May 15, 2023); s*ee also Fortson*, 2019 U.S. Dist. LEXIS 187036, at *7 (dispute that an insurer made improper deductions as to a total loss payment was "properly characterized as one regarding the value of the loss vehicle and the payment owed to [p]laintiff"); *Bettor v. Esurance Prop. & Cas. Ins. Co*., 2019 U.S. Dist. LEXIS 54391, at *8 (S.D. Fla. Mar. 28, 2019) (dispute as to whether insurer improperly applied a deduction was "undeniably, about the actual cash value assigned to the vehicle" and therefore "subject to appraisal"), *adopted* 2019 U.S. Dist. LEXIS 133556 (S.D. Fla., June 17, 2019).

In another federal case involving the determination of ACV, *Bryant v. State Farm Mut. Auto. Ins. Co.*, 2021 U.S. Dist. LEXIS 36036 (N.D. Cal. Jan. 13, 2021), the plaintiff

7

alleged that State Farm had improperly determined ACV of her vehicle. Just like here, State Farm in *Bryant* "requested an appraisal in writing" after the suit was filed. *Id.* at *5. The district court granted State Farm's motion to dismiss based on the plaintiff's lack of standing, holding that "unless and until the appraisal process is completed, ***it is not clear whether or not [Plaintiff] has been injured or incurred any damages*.**" *Id.* at *18 (emphasis added); *see also id.* at 19 ("Once State Farm requested an appraisal [], Plaintiff cannot demonstrate an element essential to [his] claims—any injury or damages.").

The *Bryant* court further reasoned that, absent the determination of ACV through appraisal, "it is impossible to know whether State Farm undervalued Plaintiff['s] vehicle." *Id*. The *Bryant* court's analysis applies here because the amount of loss (i.e., ACV) as determined by appraisal could be equal to or even *less than* what State Farm has already paid Plaintiff. And under the terms of the Policy, State Farm will pay Plaintiff the difference if appraisal results in a higher ACV than what State Farm has already paid. *See* Ex. 1, Policy Booklet, at 16. In short, appraisal will necessarily resolve any dispute over ACV. By refusing to participate in appraisal, Plaintiff cannot plausibly allege any injury.

Once appraisal has been completed and State Farm has made any additional payment (if dictated by appraisal), even if Plaintiff's statutory claims could be decoupled from his contract claim (which they cannot), Plaintiff would be left with only "a bare procedural violation, divorced from any concrete harm," which is insufficient to satisfy the injury-in-fact requirement. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020); *cf. also Hatchett v. Fin. Bus. & Consumer Sols., Inc.*, 2022 U.S. Dist.

8

LEXIS 22530, at *8 (M.D.N.C. Feb. 8, 2022) (remanding a case with UDTPA claim for lack of standing because "a statutory violation alone is not sufficient to confer standing").

Plaintiff therefore lacks standing under Article III. *See Prynne v. Settle*, 848 F. App'x 93, 105 (4th Cir. 2021) (affirming dismissal where plaintiff pleaded only a "hypothetical" injury); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) ("[R]espondents cannot manufacture standing . . . based on hypothetical future harm that is not certainly impending.").

## B.    Plaintiff Fails to Allege a Valid Claim for Breach of Contract—Count III.

Plaintiff's breach of contract claim fails for multiple reasons. First, because State Farm has demanded appraisal, ACV will (and must) be determined through appraisal, per the express language of the Policy. Second, because the Policy does not require State Farm to use any particular methodology in determining ACV, the use of the condition adjustment cannot provide a basis for a breach of contract claim.

*Fortson* is instructive. Following the parties' completion of appraisal, the Court determined that because "[t]he appraisal provision stated that it was binding[] and such provisions are generally enforceable," there had been no "fail[ure] or refus[al] to pay [ACV]." *Fortson v. Garrison Prop. & Cas. Co.*, 2022 U.S. Dist. LEXIS 15478, at *3 (M.D.N.C. Jan. 21, 2022) (citing *Harleysville Mut. Ins. Co. v. Narron*, 155 N.C. App. 362, 367 (2002)). As discussed above, the same logic applies here. *See* Section A.

Nor does the Policy require State Farm to use any particular methodology to determine ACV. *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567, 579 (7th Cir.

9

2025) (no methodological duty exists if "the policy does not preclude [the adjustment] in calculating its settlement offers [and] [the insurer] ultimately pays its insureds the actual cash value of their totaled cars"). While Plaintiff makes conclusory allegations that "State Farm materially breached its contract with [him]" (Compl. ¶ 105), Plaintiff fails to identify any specific provisions in the Policy that State Farm allegedly breached. That failure too warrants dismissal. *Moreno v. Universal Prop. Ins. Co.*, 2022 U.S. Dist. LEXIS 144881, at *9 (W.D.N.C. July 11, 2022) (dismissing a breach of contract claim based on "[a mere] recitation of the elements of a breach of contract claim coupled with [a] conclusory statement").

Plaintiff's mere disagreement with State Farm's use of the condition adjustment does not give rise to any cause of action. As explained above, nothing in the Policy prohibits the use of the condition adjustment. In fact, the Policy expressly provides that State Farm may make "[a]n *adjustment* for [] physical condition [] in determining actual cash value at the time of loss." Ex. 1, Policy Booklet, at 16 (emphasis added). Plaintiff's allegations that the ACV payment included an "artificial, downwardly skewed, and deflated" adjustment (Compl. ¶ 64) are belied by the unambiguous language of the Policy, which does not obligate State Farm to use any specific valuation methodology.[5] *See* Ex. 1,

---

[5] Plaintiff's passing reference to the implied covenant of good faith and fair dealing is insufficient to state a claim. Compl. ¶ 96. And any such claim would otherwise be barred as duplicative of his contract claim. *Niloy, Inc. v. Lowe's Cos.*, 2017 U.S. Dist. LEXIS 314, at *22 (W.D.N.C. Jan. 3, 2017) (dismissing implied covenant claim "based on the same set of facts" as the breach of contract claim) (citing *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1 (1996)).

Policy Booklet, at 15–16 (providing that State Farm will pay "the lesser of" the "[a]ctual cash value" or "[the] amount necessary to repair or replace the property with other property of like kind and quality.").

Again, *Fortson* is on all fours. Having compelled appraisal, the Court concluded that the breach of contract claim "based on the CCC valuation report" "fail[ed] because the insurance policy does not address, limit, or define what sources of information are an appropriate basis for an offer of actual cash value." 2022 U.S. Dist. LEXIS 15478, at *2–3. Because the plaintiff in *Fortson* did not "identif[y] any contract provision [the insurer] breached by using CCC, much less one that imposes any obligation to make an offer based only on certain kinds of information," there was no breach. *Id.* at *3. The same analysis and holding apply here and the Court should dismiss Plaintiff's breach of contract claim.

## C. Plaintiff Fails to State a Valid UDTPA Claim—Count I.

To state a valid claim under the UDTPA, N.C. Gen. Stat. § 75-1.1, *et seq.*, Plaintiff must allege facts showing: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs.*, 385 N.C. 250, 277 (2023). Plaintiff asserts that, by using a condition adjustment, State Farm violated the total loss regulation, 11 N.C. Admin. Code 4.0418 (Compl. ¶ 83), and undefined "automobile appraisal industry standards" (*id.* ¶ 84). These assertions fail as a matter of law.

11

### 1. Plaintiff's UDTPA Claim Is Nothing More Than a Disguised Breach of Contract Claim.

As explained above, this suit is about ACV. Tellingly, Plaintiff has tried to plead around this fact by asserting a UDTPA claim. But North Carolina courts have emphasized that unfair and deceptive acts "are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain a [UDTPA] action." *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 298 (2012).

Here, Plaintiff unsuccessfully tries to recast his claims as non-contractual—that is, based on the total loss regulations and unspecified industry standards (Compl. ¶ 85)—but "North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a [UDTPA claim] out of facts that are properly alleged as breach of contract claim." *Birtha*, 220 N.C. App. at 298; *Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, *11 ("[T]he North Carolina Court of Appeals has repeatedly stressed that a section 75-1.1 violation is unlikely to occur during the course of contractual performance." (internal quotations omitted)). Unsurprisingly, Plaintiff's UDTPA allegations mirror those of his contract claim—both are based on the same alleged conduct of failing to pay ACV. *Compare* Compl. ¶¶ 83, 85 (alleging State Farm violated UDTPA by failing to comply with the total loss regulation) *with id*. ¶¶ 97, 104, 105 (alleging State Farm breached the Policy by failing to comply with the total loss regulation). Plaintiff's entire suit hinges on ACV of his total loss ***under his Policy*** with State Farm. As "[t]he crux of this matter is and always [will] [be] a contract dispute," there is no justification for "transforming what [is] essentially a breach of contract

12

action" into a UDTPA case. *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 346 (4th Cir. 1998).

Because this is, at bottom, a breach of contract suit, the only way that a UDTPA claim could go forward is if Plaintiff had plausibly alleged the required aggravating circumstances—"such as fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." *Affinity Living Grp., LLC v. Starstone Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 223446, at *4 (M.D.N.C. Nov. 12, 2020) (internal quotations omitted); *see also Post*, 2017 NCBC LEXIS 95, *11–12 (listing examples of "sufficiently egregious" circumstances to be forging or destroying documents or concealing a breach and deterring investigation). Here, Plaintiff has failed to allege any aggravating circumstances, nor could he. As set forth in the Complaint, the CCC report State Farm provided at the time of Plaintiff's total loss settlement clearly stated the terms under which Plaintiff's total loss was valued. Compl. ¶ 25. Plaintiff alleges no misrepresentations, concealments, or any equivalent acts taken by State Farm in paying ACV under the terms of the Policy, which forecloses any UDTPA claim.

### 2. Plaintiff Does Not Plausibly Allege an Independent UDTPA Violation.

Even if the Court were to consider the merits of Plaintiff's allegations that State Farm violated the total loss regulation or breached industry standards, the UDTPA claim still fails. Plaintiff does not have a private right of action to assert an alleged violation of the total loss regulation. On that point, there is no mention of a private right of action in 11 N.C. Admin. Code 4.0418(a), which expressly contemplates only the Commissioner of the

13

North Carolina Department of Insurance as an enforcer. "[I]mplied rights of action are disfavored and will not be found in the absence of clear legislative intent." *Long v. State Dep't of Human Res., Div. of Child Dev.*, 145 N.C. App. 186, 188 (2001). Accordingly, Plaintiff cannot assert any claim directly under the total loss regulation.

Moreover, the Complaint demonstrates that State Farm complied with the actual text of the total loss regulation. The regulation requires that claimants be paid the "pre-accident value" for the vehicle and provides that "[t]he settlement offer may be adjusted *for condition*, options, equipment, and mileage, less the cost of unrepaired damage that pre-existed the accident." 11 N.C. Admin. Code 4.0418(c), (e) (emphasis added). "[B]egin[ning] with an examination of the plain words" of the total loss regulation, and contrary to Plaintiff's conclusory allegations (Compl. ¶¶ 32, 34, 36), it says nothing about prohibiting a condition adjustment for comparable vehicles. *Cole v. N.C. Dep't of Pub. Safety*, 253 N.C. App. 270, 278 (2017). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning."[6] *Id.* (quoting *Lemons v. Old Hickory Council*, 322 N.C. 271, 276 (1988)). Moreover, the facts in the CCC report itself, again contrary to Plaintiff's allegations (Compl. ¶ 52), fully documented the adjustments made, and State Farm

---

[6] *Cole* itself interprets an administrative regulation, and the North Carolina Supreme Court "has applied the rules of statutory construction to administrative regulations as well as statutes." 253 N.C. App. at 278.

provided the CCC report to Plaintiff at the time of payment. Compl. ¶ 25; *See generally* Compl. Ex. A. The UDPTA claim fails.

Nor has Plaintiff plausibly alleged a UDTPA violation based on purported "automobile appraisal standards" or other amorphous "industry standards." Compl. ¶¶ 56, 64, 84–86; *Jumas Food Mart v. Chubb Ins.*, 2023 U.S. Dist. LEXIS 112351, at *22 (M.D.N.C. June 28, 2023) (dismissing claim when plaintiff "fail[s] to elevate [his] conclusory claims from conceivable to plausible") (internal quotations omitted). To the extent that Plaintiff contends the relevant industry standard involves "pre-accident value of the [total] loss" (Compl. ¶¶ 18–19), State Farm has complied with this standard.[7] *See* Compl. Ex. A.

### 3. Plaintiff's UDTPA Claim Does Not Satisfy Rule 9(b)'s Heightened Pleading Standard.

UDTPA claims must satisfy the heightened pleading standards under Rule 9(b). *Challenge Printing Co. of the Carolinas, Inc. v. Tesla, Inc.*, 2024 U.S. App. LEXIS 13115, at *5 (4th Cir. May 31, 2024). Plaintiff's allegations do not come close to clearing that high hurdle, asserting only that State Farm somehow acted *unfairly*—as opposed to *deceptively*—in a futile attempt to survive 9(b) scrutiny. Plaintiff further alleges that State Farm "***purportedly*** stat[ed] the correct amount it was required to pay for the total loss" but "wrongfully reduced the retail cost of comparable vehicles," and "reduced each

---

[7] This Court has recognized that use of CCC reports in total loss settlements is consistent with North Carolina law (and regulators of several other states have concluded that the use of CCC reports is permissible under those states' insurance laws). *Fortson*, 2022 U.S. Dist. LEXIS 14520, *14–15.

comparable vehicle used to value [Plaintiff's] claim [] ***ostensibly*** calling it a 'condition adjustment.'" Compl. ¶¶ 25, 27, 40 (emphasis added). *See also id*. ¶ 42 (alleging State Farm's deduction was "apparently claimed" to be for condition). These allegations do not "state ***with particularity*** the circumstances constituting fraud or mistake" as required. Fed. R. Civ. P. 9(b) (emphasis added); *Challenge Printing*, 2024 U.S. App. LEXIS 13115, at *4 (dismissing UDTPA claims for failing to allege misrepresentations with particularity, *i.e.*, to describe "time, place, and contents of false representations") (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc*., 525 F.3d 370, 379 (4th Cir. 2008)). Plaintiff's failure to satisfy Rule 9(b) is yet another basis to dismiss the UDTPA claim.

### D. Plaintiff Does Not State a Valid Per Se UDTPA Claim Under the UCSPA— Count Two.

Plaintiff's second purported cause of action under the UDTPA fares no better. Plaintiff alleges a per se violation of the UDTPA based on alleged violations of the UCSPA. Compl. ¶ 90. Like the UDTPA claim, however, this cause of action is nothing more than a disguised breach of contract claim and is subject to dismissal for the same reasons as the contract claim. *See* Section B.

Further, the Complaint does not contain any specific allegations concerning any purported violations of the UCSPA. Plaintiff makes a passing reference to four subsections of the UCSPA, N.C. Gen. Stat. § 58-63-15(11)(d), (f), (g), and (h), without ever bothering to allege specifically how State Farm somehow violated any of them. Compl. ¶ 90. Again, Plaintiff "fail[s] to elevate [his] conclusory claims from conceivable to plausible as required by Rule 12(b)(6)." *Jumas*, 2023 U.S. Dist. LEXIS 112351, at *22 (internal

16

quotations omitted).[8] Nevertheless, *Fortson* addressed and dismissed alleged UCSPA violations under these subsections, and Plaintiff's UCSPA claim should be dismissed for the same reasons.

First, under N.C. Gen. Stat. § 58-63-15(11)(d), Plaintiff must allege facts that State Farm "[r]efus[ed] to pay claims without conducting a reasonable investigation based upon all available information." Plaintiff admits, however, that State Farm investigated and paid his claim, and that he accepted this payment. Compl. ¶ 26. As was true in *Fortson*, and by Plaintiff's own admissions, "[t]his does not constitute a refusal to pay" under Section 58-63-15(11)(d). *Fortson v. Garrison Prop. & Cas. Ins. Co.*, 2022 U.S. Dist. LEXIS 14520, at \*23 (M.D.N.C. Jan. 13, 2022).

Next, under N.C. Gen. Stat. § 58-63-15(11)(f), Plaintiff must allege facts that State Farm was "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Again, Plaintiff alleges that State Farm accepted his claim and used a CCC report as part of the process of settling his claim. Compl. ¶¶ 25–26. Federal courts have observed that CCC is widely recognized as a lawful valuation vendor to help insurers to assess claims. *Fortson*, 2022 U.S. Dist. LEXIS 14520, at \*15 ("There is no evidence that any state regulator or court has ever found CCC's evaluations to be improper, illegal, unethical, unfair, or otherwise

---

[8] The UCSPA does not itself contain a private right of action. *Elliott v. Am. States Ins. Co.,* 883 F.3d 384, 396 (4th Cir. 2018) ("[T]he remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim.'").

inappropriate. In recent years, regulators in a number of other states have explicitly approved or endorsed the use of CCC Information Services to value total loss claims." (collecting authorities from New Jersey, New Hampshire, Pennsylvania, West Virginia, Missouri, Wisconsin, Indiana, New York, and Wyoming)); *Falasco v. USAA Cas. Ins. Co.*, 2025 U.S. Dist. LEXIS 83734, at *12 (E.D. Ark. May 2, 2025) (similar). "[O]ffering an amount of money based on a report prepared by an independent third party approved by regulators and used by many other insurers in many states" —which is exactly what State Farm did here—"is not a bad faith refusal to settle." *Fortson*, 2022 U.S. Dist. LEXIS 14520, at *19–20.

Third, N.C. Gen. Stat. § 58-63-15(11)(g) prohibits only "[c]ompelling [the] insured to institute litigation to recover amounts due under an insurance policy." Like the insured in *Fortson*, Plaintiff filed suit to dispute ACV, an action that he "did not have to resort to" because he "could have invoked [the] [P]olicy's appraisal provision,[] rather than filing this suit." *Fortson*, 2022 U.S. Dist. LEXIS 14520, at *22.

Finally, N.C. Gen. Stat. § 58-63-15(11)(h) prohibits insurers from "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled." Under subsection (h), there must be "reasonably clear liability." *Neshat v. Nationwide Mut. Fire Ins. Co.*, 2021 U.S. Dist. LEXIS 100154, at *9 (E.D.N.C. May 27, 2021). As discussed above, the Policy does not require State Farm to use any particular methodology for calculating ACV and, without appraisal, there is no plausible allegation that State Farm has somehow underpaid or undervalued Plaintiff's total loss claim. *See*

18

Section B. And even if Plaintiff were to prevail in this case, State Farm does not "per se engage[] in an unfair or deceptive trade practice simply because the settlement offers made are less than the final judgment rendered." *Elliott*, 883 F.3d at 399. Plaintiff has failed to state a per se violation of the UDTPA under the UCSPA.

**E.     Plaintiff Has Not Adequately Pleaded a Claim for Declaratory Relief and the Claims are Duplicative.**

Plaintiff makes scattered references to declaratory relief. *See, e.g.,* Compl. ¶¶ 2, 5. First, these barebones references are insufficient to put State Farm on notice of the relief being sought and the alleged basis for that relief, so any declaratory relief claims should be dismissed for this reason. Second, even if Plaintiff had adequately pleaded a cause of action for declaratory relief, it would be duplicative of his other claims and thus subject to dismissal. Accordingly, the Court should exercise its "unique and substantial discretion" to dismiss any request for declaratory relief because "serve[s] no useful purpose in clarifying and settling the legal relations in issue" as duplicative of another cause of action. *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995) (first quote); *Hanback v. DRHI, Inc*., 647 F. App'x 207, 209–10 (4th Cir. 2016) (second quote) (internal quotations omitted).

**F.     The Court Should Strike Plaintiff's Class Allegations in Light of the Fourth Circuit's Recent Decision in *Freeman*.**

The Court should, at a minimum, strike the class allegations based on controlling Fourth Circuit precedent, which is aligned with the majority of circuit courts that have considered class certification in similar total loss class actions.

"[A] court may grant a motion to strike class allegations where the pleadings make clear that the proposed class cannot be certified and no amount of discovery would change that determination." *Waters v. Electrolux Home Prods.*, 2016 U.S. Dist. LEXIS 92862, at *10–11 (N.D.W. Va. July 18, 2016); Fed. R. Civ. P. 12(f). As explained above, the gist of Plaintiff's UDTPA and UCSPA claims—the only class claims asserted in the Complaint— is that State Farm did not pay ACV because of its use of the condition adjustment. Compl. ¶¶ 2, 4, 27, 42, 49, 60, 86, 91. But the Fourth Circuit recently held that "the claims of class members who did not [] voluntarily resolve their losses by acceptance of [an insurer's] offer, negotiation, or the appraisal process would depend on a showing that the market value of the members' vehicles was greater than what [the insurer] paid" and that this "value would depend on the unique characteristics of each vehicle [and] the public demand for that type and condition of vehicle in the immediate market where the insured lived." *Freeman*, 149 F.4th at 469. These "highly individualized assessment[s] of the actual cash value of a vehicle would be essential to determining whether [the insurer's] payment amounted to the actual cash value" and "preclude[d] finding commonality and necessarily predominance." *Id.*

The holding in *Freeman* applies here. Indeed, nearly all circuit courts that have considered ACV issues in total loss class actions have held that whether an insurer paid ACV is necessarily a highly individualized assessment precluding class certification.[9] *See*

---

[9] Before the Fourth Circuit's decision in *Freeman*, this Court did certify a class in *Franco v. Progressive Cas. Ins. Co.*, 2025 U.S. Dist. LEXIS 92796 (M.D.N.C. May 14,

*Freeman*, 149 F.4th at 469; *Schroeder*, 146 F.4th at 577–78; *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149, 159 (3d Cir. 2025); *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1109 (9th Cir. 2025), *en banc reh'g denied*, 2025 U.S. App. LEXIS 27552 (9th Cir. Oct. 21, 2025); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022); *Sampson v. United Servs. Auto Ass'n*, 83 F.4th 414, 420 (5th Cir. 2023); *Bourque v. State Farm Mut. Auto. Ins. Co.*, 89 F.4th 525, 529 (5th Cir. 2023).[10]

## G.     Alternatively, the Court Should Compel Appraisal and Stay this Action Pending Appraisal.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). Courts have "broad discretion" as to the question of whether a stay should be granted. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

---

2025). The Fourth Circuit granted Progressive's Rule 23(f) petition, and as of this filing that appeal remains stayed. *Franco v. Progressive Cas. Ins. Co*., No. 25-1703 (4th Cir. June 23, 2025).

[10] There are two circuit cases that have gone the other way, but both are distinguishable. One is *Jama v. State Farm Mut. Auto. Ins. Co.*, 113 F.4th 924 (9th Cir. 2024). But *Jama*'s result stemmed from the Ninth Circuit majority's conclusion that the adjustment was "facially unlawful" under Washington insurance law. And the Ninth Circuit in *Ambrosio* later limited *Jama*'s application. *See Ambrosio*, 154 F.4th at 1111. The other is *Clippinger v. State Farm Auto. Ins. Co.*, 2025 U.S. App. LEXIS 26347 (6th Cir. Oct. 9, 2025). State Farm has filed a petition for rehearing and/or rehearing en banc in *Clippinger* because, among other flaws, the panel majority disregarded the weight of authority, adopted *Jama*'s reasoning (despite *Ambrosio*'s subsequent statement regarding the limited effect of *Jama*), and minimized the individualized inquiries inherent in determining ACV as mere damages issues.

As noted above, the appraisal provision in the Policy is mandatory once invoked by either the insured or State Farm. *See* Section A. In *Fortson,* where an insured and her insurer contracted for appraisal and to resolve disagreements that were, at their core, about the value of a covered vehicle, this Court compelled appraisal and stayed the litigation. 2019 U.S. Dist. LEXIS 187036, at *7 (finding "[a]ppraisal [to be] appropriate" when plaintiff's claims contested "the right of Defendant to deduct a condition adjustment from the payment to Plaintiff," which was a "this dispute [] properly characterized as one regarding the value of the loss vehicle and the payment owed to Plaintiff."). Other federal courts in cases involving CCC and condition adjustments have compelled appraisal and stayed the suits. *See e.g., Bibbs v. Allstate Ins. Co*., 2024 U.S. Dist. LEXIS 161137, at *35–36 (N.D. Ohio Sep. 9, 2024); *Golla v. Allstate Ins. Co.*, 2025 U.S. Dist. LEXIS 191202, at *4-5 (N.D. Ohio Sep. 29, 2025). The same is true with regard to cases involving other third-party valuation reports and adjustments.[11] *See, e.g.*, *Wiggins v. State Farm Mut. Auto. Ins. Co.*, 2022 U.S. Dist. LEXIS 112081, at *10–11 (D.S.C. June 23, 2022) (collecting cases).

Thus, if the Court does not dismiss all claims against State Farm, it should follow *Fortson*, compel appraisal, and stay this case pending appraisal.

---

[11] *See also Pierce v. Am. Strategies Ins. Corp.*, 2016 U.S. Dist. LEXIS 71426, at *2–3 (W.D.N.C. June 1, 2016); *Elmore v. Auto Owners Ins. Co*., 2012 U.S. Dist. LEXIS 151371, at *2 (W.D.N.C. Oct. 19, 2012); *Phillips v. Garrison Prop. & Cas.*, 2020 U.S. Dist. LEXIS 104094, at *61 (N.D. Ala. May 12, 2020).

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss this case with prejudice and/or, at a minimum, strike the class allegations, or, in the alternative, the Court should compel appraisal and stay this action pending appraisal.

23

Date: November 25, 2025

Respectfully submitted,

**ALSTON & BIRD LLP**

<u>*/s/ Matthew P. McGuire*</u>
Matthew P. McGuire
N.C. State Bar No. 20048

555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862 2279
matt.mcguire@alston.com

Daniel F. Diffley (*notice of special appearance forthcoming*)
Blake M. Simon (*notice of special appearance forthcoming*)
Melissa G. Quintana (*notice of special appearance forthcoming*)

1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
dan.diffley@alston.com
blake.simon@alston.com
melissa.quintana@alston.com

***Counsel for State Farm Mutual Automobile Insurance Company***

## CERTIFICATE OF COMPLIANCE: MEET AND CONFER

I hereby certify that on November 24, 2025, in accordance with the Court's order on November 1, 2025, counsel for State Farm and Plaintiff discussed this motion in a meet and confer. Plaintiff, by and through his counsel, indicated his intent to oppose this motion.

Date: November 25, 2025

Respectfully submitted,

/s/ *Matthew P. McGuire*
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2279
matt.mcguire@alston.com

***Counsel for State Farm Mutual Automobile Insurance Company***

## CERTIFICATE OF COMPLIANCE: WORD COUNT

I hereby certify, pursuant to Local Rule 7.3(d)(1), as counsel for State Farm Mutual Automobile Insurance Company, that the foregoing brief, does not contain more than 6,250 words. The word count feature of word processing software was relied on to make this certification.

Date: November 25, 2025

Respectfully submitted,

/s/ *Matthew P. McGuire*
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2279
matt.mcguire@alston.com

*Counsel for State Farm Mutual*
*Automobile Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2025, a true and correct copy of the foregoing

was filed with the Clerk of the Court by using the CM/ECF system, which will send a copy

to all counsel of record, and was sent via email to the following:

Kelly Ann Stevens
kstevens@hemmingsandstevens.com

Aaron C. Hemmings
ahemmings@hemmingsandstevens.com

Date: November 25, 2025

Respectfully submitted,

<u>/s/ *Matthew P. McGuire*</u>
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2279
matt.mcguire@alston.com

***Counsel for State Farm Mutual
Automobile Insurance Company***