# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRAIG BREWER, individually and on
behalf of all similarly situated persons,

     Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

     Defendant.

Case No. 1:25-cv-904 -CCE-JLW

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS OR,
IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................ 1

ARGUMENT ...................................................................................................... 3

    I.   Plaintiff Has Standing ............................................................................ 3

        A.   Appraisal Not Required Under the Insurance Contract ........................ 4

        B.   Appraisal Cannot Address the Questions Presented ............................. 7

    II.   Plaintiff Stated a Claim for Breach of Contract ................................... 9

    III.  Plaintiff Stated Valid Chapter 75 Claims ............................................ 11

        A.   Plaintiff's Chapter 75 Claim is Not a Breach of Contract Claim in Disguise .... 11

        B.   Plaintiff has Stated an Independent Chapter 75 Claim ....................... 13

        C.   Rule 9(b) Does Not Apply to Plaintiff's Chapter 75 Claims ............. 14

    IV.  Plaintiff Stated a Valid UDTPA Claim Under the UCSPA ................. 15

        A.   Plaintiff alleges sufficient facts to state a claim under section (d) .... 16

        B.   Plaintiff alleges sufficient facts to state a claim under section (f) ..... 16

        C.   Plaintiff alleges sufficient facts to state a claim under section (g) .... 17

        D.   Plaintiff alleges sufficient facts to state a claim under section (h) .... 17

        E.   Defendant's argument that "other states have endorsed" CCC One Reports is Inapposite ............................................................................................ 18

    V.   Plaintiff Adequately Pleads a Claim for Declaratory Relief ............... 19

    VI.  *Freeman* Does Not Apply and Plaintiff's Class Claims Should Not Be Stricken . 19

    VII. A Stay is Not Appropriate; Appraisal is Not Required and Will Not Resolve Claims .................................................................................................... 22

    CONCLUSION ......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Accardi v. Hartford Underwriters Ins. Co.*,
373 N.C. 292, 295, 838 S.E.2d 454 (2020) ..................................................... 6

*Bald Head Island Ltd., LLC v. Vill. of Bald Head Island*,
918 S.E.2d 241 (N.C. Ct. App. 2025) ............................................................. 5

*Birara v. Kelel*,
No. TDC-17-3241, 2019 WL 3208685 (D.Md. July 16, 2019) ...................... 19

*Birtha v. Stonemor, North Carolina, LLC*,
727 S.E.2d 1 (N.C. Ct. App. 2012) ................................................................ 12

*Brookline Residential, LLC v. City of Charlotte*,
251 N.C.App. 537, 548 n. 4 (2017) ................................................................. 6

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) .................................................................... 12, 13

*CBP Res., Inc. v. SGS Control Servs.*,
394 F. Supp. 2d 733, 739 (M.D.N.C. 2005) .................................................. 15

*Construction Co. v. Crain and Denbo, Inc.*,
256 N.C. 110, 118, 123 S.E.2d 590, 596 (1962) ............................................ 5

*Elliott v. American States Insurance Company*,
883 F.3d 384, 396-397 (2018) ....................................................................... 15

*Fortson v. Garrison Property & Casualty*,
No. 1:19-cv-294, 2019 WL 5575582, (M.D.N.C. Oct. 29, 2019) .............. 9, 10

*Franco v. Progressive Cas. Ins. Co.*,
No. 24-225, 2025 WL 1400324, at *9 (M.D.N.C. May 14, 2025) .......... passim

*Freeman v. Progressive Direct Insurance Company*,
149 F.4th 461, 468 (2025) .............................................................. 20, 21, 22

*Goforth Props.*,
334 N.C. at 375–76, 432 S.E.2d at 859 .......................................................... 5

*High Country Arts & Crafts Guild v. Hartford Fire Ins. Co.*,
126 F.3d 629, 634 (4th Cir. 1997) ................................................................... 7

*In re Mills International, Inc.*,
570 B.R. 169 (2017) ......................................................................................... 4

*Johnson v. D & D Home Loans Corp.*,
No. 2:07-cv-204, 2007 WL 4355278, (E.D.Va., December 6, 2007) ............ 19

*Jama v. State Farm Mutual Automobile Insurance Co.*,
113 F.4th 924 (9th Cir. 2024), *cert. denied*, ⸺ U.S. ⸺, 145 S.Ct. 2793,

ii

—— L.Ed.2d —— (June 16, 2025) ................................................................ 21

*Liberty Mutual Ins. Co. v. Wetzel*,
    424 U.S. 737, 742-743 (1976) .......................................................... 19

*Marshall v. Miller*,
    302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) ................................ 14

*Matter of Foreclosure of Deed of Tr. by Goforth Props., Inc.*,
    334 N.C. 369, 375–76, 432 S.E.2d 855, 859 (1993) ......................... 5

*Med. Staffing Network, Inc. v. Ridgway*,
    194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009) ...................... 14

*Mosely v. WAM, Inc.*,
    167 N.C.App. 594, 606 S.E.2d 140, 144 (2004) ................................. 4

*Nelson v. Hartford Underwriters Ins.*,
    177 N.C. App. 595, 608, (2006) ........................................................ 12

*New Bern Golf & Country Club, Inc. v. Underwriters at Lloyd's London*,
    No. 4:19-CV-151-BR, 2020 WL 1958631, at *3-4 (E.D.N.C. Apr. 23, 2020) ............... 8

*Nichols v. State Farm Mutual Automobile Insurance Company*,
    634 F.Supp.3d 426 (2022) ............................................................ 5, 6

*North State Deli, LLC v. Cincinnati Insurance Company*,
    386 N.C. 733, 808 (2024) .................................................................. 6

*Odell v. Legal Bucks, LLC*,
    192 N.C. App. 298, 318, 665 S.E.2d 767, 780 (2008) ..................... 14

*Otto Indus. N. Am. v. Phx. Ins. Co.*,
    No. 3:12-CV-717-FDW-DCK, 2013 WL 2124163 (W.D.N.C. May 15, 2013) ............. 8

*Poor v. Hill*,
    138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) ........................... 9

*Shardamaya Inc. v. Owners Ins. Co.*,
    No. 7:21-CV-00154-M, 2022 WL 673709, at *2 (E.D.N.C. Mar. 7, 2022) ................. 7

*Sparks v. Oxy-Health, LLC*,
    134 F.Supp.3d 961, 997 (2015) ....................................................... 13

*Vanguard Pai Lung, LLC v. Moody*,
    2019 NCBC 38, ¶ 21, 2019 WL 2526461, at *4 (N.C. Super. June 19, 2019) ............... 9

*Walker v. Fleetwood Homes of N.C., Inc.*,
    362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007) .................................. 14

*Warren v. Cielo Ventures, Inc.*,
    293 N.C.App. 784, 789 (2024) ......................................................... 12

*White v. National Union Fire Ins. Co. of Pittsburgh, PA.*,
    913 F.2d 165 (1990) ........................................................................ 19

iii

*Wiggins v. State Farm Mutual Automobile Insurance Company*,
  684 F.Supp.3d 452 (2023) ........................................................................ 8, 22

**Statutes**

N.C. Gen. Stat. § 58-63-15(11) ................................................................... 3, 15, 22

N.C. Gen. Stat. § 58-63-65 ................................................................................... 22

N.C. Gen. Stat. § 75-1.1 ............................................................................. 3, 13, 14

**Rules**

N.C. R. Civ. P. 8(a) ............................................................................................... 9

**Regulations**

11 N.C. Admin. Code 4.018 ................................................................................... 2

11 N.C. Admin. Code 4.0418 .......................................................................... passim

Plaintiff, individually and on behalf of a proposed class of similarly situated persons, entities, and businesses ("Plaintiff"), files this Response in Opposition to State Farm's Motion to Dismiss and Strike Class Allegations or, to Compel Appraisal and Stay the Action and Memorandum in Support. Docs. 10, 11.

## INTRODUCTION

In an effort to avoid the Plaintiff's claims of insurance regulation violations and violations of North Carolina's consumer protection laws, State Farm incorrectly contends that without completing an appraisal, it's "impossible to know" whether Mr. Brewer suffered any injury. Doc. 11 at 14. Although State Farm leaves open the correct standard to start the vehicle total loss valuation process at any amount it chooses in its insurance contract, the fair standard is important in North Carolina, and this state has enacted a motor vehicle total loss regulation that mandates the methodology under which insurance companies value vehicle total loss claims. State Farm should be required to comply with North Carolina law. Further, accepting State Farm's arguments that every insured must go through the appraisal process to challenge the company's unfair and illegal business practice would render our consumer protection laws useless.

## STATEMENT OF FACTS

In 2023, Mr. Brewer was in a car accident that resulted in the total loss of his 2021 Genesis. Doc. 1 at 26. At the time, he had an insurance policy with State Farm, and he submitted a claim. Doc. 11-2; *see* Doc. 1 at 26. State Farm's policy provides it "will pay for direct and accidental loss to your covered auto." Doc. 11-2 at 15. It limits its liability to the lesser of the actual cash value or the amount necessary to repair or replace the

1

property. *Id.* at 15. The policy does not include a method for determining actual cash value. Doc. 11 at 15. However, North Carolina has enacted a motor vehicle total loss regulation that mandates the methodology under which insurance companies value vehicle total loss claims. 11 N.C. Admin. Code 4.018 (2020).

To calculate the actual cash value of Mr. Brewer's vehicle, State Farm generated a CCC One Market Valuation Report ("CCC One Report") which expressly acknowledges the regulation and purports to incorporate the methodology for determining actual cash value set out in North Carolina's Total Losses on Motor Vehicles regulation, 11 N.C. Admin. Code 4.0418 (2020). *See* Doc. 1 at 39. However, the Plaintiff alleges State Farm doesn't comply with the regulation. State Farm used nine comparable vehicles to calculate the value of Mr. Brewer's claim, but rather than using the retail cost of those vehicles required under 11 N.C. Admin. Code 4.0418, State Farm reduced the retail price of each comparable vehicle used in the report by $3,328.00. Doc. 1 at 35-38. By reducing the retail cost of the comparable vehicles in this manner, State Farm started with a lower, manipulated "Base Vehicle Value" amount of $56,772.00, and as a result, Mr. Brewer's claim payment was reduced by $3,328.00 regardless of any other adjustments. *Id.* at 26. Mr. Brewer's claim was paid based on this impermissable valuation method. *See* Doc. 11 at 10.

On October 3, 2025, Plaintiff filed this class action alleging claims under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* (Chapter 75), against State Farm on behalf of a putative class and an individual claim for breach of contract. Doc. 1 at ¶¶ 81–106. The Plaintiff's class claims are based on State

Farm's systemic reduction of the retail cost of comparable vehicles when calculating the actual cash value of totaled vehicles; Mr. Brewer alleges that by reducing the retail cost of comparable vehicles, State Farm violates 11 N.C. Admin. Code 4.0418 (2020) causing damages to the claimants by withholding from them the amount of the illegal deduction. Further, the Plaintiff alleges State Farm violated Chapter 75 because the business practice violates the North Carolina Unfair Claims Practices Act, N.C. Gen. Stat. § 58-63-15(11) ("UCPA"). For all claims, the Plaintiff challenges only the retail cost reduction and specifically pleads that vehicles do not need to be revalued. Doc. 1 at ¶ 62.

On November 10, 2025, after the Complaint was filed, State Farm sent a written request for appraisal of Plaintiff's total loss vehicle. Doc. 11-3. That same day, the Plaintiff requested a certified copy of his policy. Doc. 11-4 at 3. After receiving and reviewing the policy, the Plaintiff responded that "given the claims and circumstances, we do not agree the appraisal provision in Mr. Brewer's policy is applicable." Doc. 11-4 at 2.

## ARGUMENT

### I.     Plaintiff Has Standing

State Farm argues Mr. Brewer, lacks standing to assert any claims because he refused to participate in the appraisal requested after he filed this lawsuit. However, the Plaintiff did not refuse to participate in the appraisal process but rather asserted that the appraisal provision is not applicable to this dispute and rightly so. This dispute cannot be resolved by the appraisal process and requires judicial resolution. The Defendant ignores the Plaintiff's claim that it violated North Carolina's vehicle total loss regulation and attempts to recast the Plaintiff's claims as merely a breach of contract claim. In an effort

3

to avoid the Plaintiff's claims of insurance regulation violations and violations of North Carolina's consumer protection laws, State Farm contends that without completing an appraisal, it's "impossible to know" whether Mr. Brewer suffered any injury. Doc. 11 at 14.

### A.    Appraisal Not Required Under the Insurance Contract

State Farm argues that once it "demanded appraisal, the process is mandatory." Doc. 11 at 12.   The Defendant further asserts "[a]ppraisal is a condition precedent to suit. Doc. 11 at 12, FN 4.   However, the insurance contract does not state that appraisal is mandatory or that appraisal is required before filing suit. State Farm's argument is unsupported by its insurance contract, contrary to North Carolina law, and this argument has been consistently overruled by other courts.

In North Carolina, "[c]onditions precedent are not favored by the law. Thus, the provisions of a contract will not be construed as conditions precedent in the absence of language clearly requiring such construction." *In re Mills International, Inc*., 570 B.R. 169 (2017) (quoting *Mosely v. WAM, Inc*., 167 N.C.App. 594, 606 S.E.2d 140, 144 (2004)).

In North Carolina, "provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction." *Matter of Foreclosure of Deed of Tr. by Goforth Props., Inc*., 334 N.C. 369, 375–76, 432 S.E.2d 855, 859 (1993) (quoting *Construction Co. v. Crain and Denbo, Inc*., 256 N.C. 110, 118, 123 S.E.2d 590, 596 (1962).  The North Carolina Supreme Court has made it clear that "we will not construe a term to be a 'condition precedent in the absence of language plainly requiring such construction.' " *Bald Head Island Ltd., LLC v. Vill. of Bald Head Island*,

4

918 S.E.2d 241 (N.C. Ct. App. 2025) (quoting *Goforth Props.*, 334 N.C. at 375–76, 432 S.E.2d at 859). Here, the insurance contract indicates that either party "***may*** demand an appraisal" and that State Farm does "not waive any of [its] rights under this policy by agreeing to an appraisal." Doc. 11-2 at 15.

In a similar case, with nearly identical policy language, the Southern District of Ohio in *Nichols v. State Farm Mutual Automobile Insurance Company*, 634 F.Supp.3d 426 (2022), denied State Farm's motion to dismiss a class action challenging the practice of applying undisclosed "typical negotiation" deductions when calculating actual cash value for total loss vehicles. The court held that the term "actual cash value" was ambiguous in the insurance policy and must be construed against the insurer, allowing the plaintiff's breach of contract and unjust enrichment claims to proceed. The court held:

> Finally, to the extent State Farm argues that the appraisal was necessary to establish Article III standing, that argument also fails. While an appraisal may have highlighted a weakness in the merits of her claim, State Farm's argument conflates the Article III standing requirement of injury-in-fact with an issue on the merits. Within the meaning of Article III, Nichols suffered a legal injury when she was denied the benefit of the bargain due to State Farm's alleged breach, which she has properly alleged without an appraisal. State Farm's final argument on the motion to dismiss fails. (internal citations omitted).

*Nichols* at 433.

Accordingly, the court denied State Farm's motion to compel appraisal, ruling that the interpretation of policy terms is a question of law, not subject to appraisal procedures.

> The issue in this case is what the term "actual cash value" means under the policy. Determining the meaning of insurance policy terms is a question of law that cannot be resolved by submitting the dispute to an appraisal.

*Id*.

5

State Farm admits its policy doesn't define actual cash value or include a method for determining actual cash value. Doc. 11 at 15. Therefore, the term actual cash value in the policy is ambiguous. As for Mr. Brewer's breach of contract claim, in North Carolina, "[t]he interpretation of insurance policy language is a question of law for the court." *North State Deli, LLC v. Cincinnati Insurance Company*, 386 N.C. 733, 808 (2024) (citing *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454 (2020)). Further, Mr. Brewer's Chapter 75 claims are based on State Farm's systemic reduction of the retail cost of comparable vehicles when calculating the actual cash value of a totaled vehicle. Mr. Brewer alleges that by reducing the retail cost of comparable vehicles, State Farm violates 11 N.C. Admin. Code 4.0418 (2020) as well as the UCPA, causing claimants to receive less for the payment of their claims. The Plaintiff alleges the practice violates Chapter 75.

There is ample support under North Carolina law for the application of the *Nichols* ruling in this case.[1] In a case where similar facts were presented to allege the same theory of claims under Chapter 75, this Court found the insurer's "standing argument [] unpersuasive" because:

> All class members have been injured under [the plaintiff's] theory of the case because they were subject to an allegedly unfair practice that resulted in each putative class member receiving less money than they otherwise would have and should have received for their total-loss claim.

---

[1] North Carolina courts may consider decisions from other jurisdictions as persuasive authority when addressing legal questions. *Brookline Residential, LLC v. City of Charlotte*, 251 N.C.App. 537, 548 n. 4 (2017).

6

*Franco v. Progressive Cas. Ins. Co.*, No. 24-225, 2025 WL 1400324, at *9 (M.D.N.C. May 14, 2025).

### B. Appraisal Cannot Address the Questions Presented

The Plaintiff's claims are based on a violation of North Carolina's vehicle total loss regulation, and Chapter 75, and not a mere disagreement over the value of the total loss vehicle as State Farm suggests. While the policy states that either party may request appraisal if there is disagreement "over the amount of loss", this dispute instead concerns the systemic use of a reduction in retail cost of comparable vehicles that violates North Carolina's total loss regulation. Therefore, State Farm's argument that "appraisal will necessarily resolve *any* dispute over ACV" is without merit. Doc. 11 at 14. (emphasis added). This argument is also unsupported by North Carolina law and has been consistently overruled in similar cases.

"[J]ust because an insurance policy contains an appraisal clause does not mean that all disputes over that policy are subject to appraisal. Where, as here, the parties have only agreed to have the appraisers determine the amount of the loss, the appraisers may do no more than that." *Shardamaya Inc. v. Owners Ins. Co.*, No. 7:21-CV-00154-M, 2022 WL 673709, at *2 (E.D.N.C. Mar. 7, 2022) (citing *High Country Arts & Crafts Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 634 (4th Cir. 1997*));  see also Otto Indus. N. Am. v. Phx. Ins. Co.*, No. 3:12-CV-717-FDW-DCK, 2013 WL 2124163 (W.D.N.C. May 15, 2013) (allegations concerning the insurer's bad faith conduct are not subject to appraisal); *New Bern Golf & Country Club, Inc. v. Underwriters at Lloyd's London*, No. 4:19-CV-151-BR, 2020 WL 1958631, at *3-4 (E.D.N.C. Apr. 23, 2020) (citing *Otto* accepting that disputed

7

issues of coverage cannot be resolved by appraisal under settled North Carolina law and highlighting the limitation of appraisal to valuation disputes rather than challenges to methodology).

This case presents a legal challenge to State Farm's valuation methodology; the reduction of the retail cost of comparable vehicles in valuing total loss claims in violation of North Carolina's total loss regulation. Challenges to insurers' valuation methodologies fall outside the scope of appraisal and require judicial resolution. The District of South Carolina in *Wiggins v. State Farm Mutual Automobile Insurance Company*, 684 F.Supp.3d 452 (2023) held that challenges to State Farm's use of "Typical Negotiation Adjustments" constitute breach claims that survive completion of the appraisal process. After a stay pending appraisal, the court found that "the appraisal process did not answer the question of breach with respect to the propriety of Defendants' use of the adjustment in the process of settling total loss claims under the insurance policies." *Wiggins v. State Farm Mutual Automobile Insurance Company*, 684 F.Supp.3d 452 (2023). Likewise, satisfying the actual cash value amount with appraisal is not the extent of damages according to the *Wiggins* court, as "there are ostensible damages which flow from Defendant's alleged breach of contract, such as the expenses Plaintiffs incurred by not having use of their vehicles and those incurred by being forced to hire an appraiser to show their vehicles were undervalued". *Id*. at 458. The same is true in this case. In summary, Mr. Brewer requests that this Court declare State Farm's practice of reducing the retail cost of comparable vehicles violates North Carolina law. The appraisal process cannot resolve the Plaintiff's legal claim on behalf of a proposed class under Chapter 75, nor can appraisers resolve Mr.

8

Brewer's individual claim for breach of contract and address all damages to the Plaintiff by this wrongful business practice.

## II. Plaintiff Stated a Claim for Breach of Contract

First, State Farm's assertion that Mr. Brewer failed to "identify any specific provisions of the Policy that State Farm allegedly breached"[2] simply ignores the plain language of the Complaint. Doc. 1 ¶¶ 105 a-b. The Complaint is hardly a mere recitation of the elements of breach of contract. Second, State Farm seeks to impose a higher pleading burden than is required under North Carolina law. Under Rule 8, the Plaintiff need only make a "short and plain statement of the claim," N.C. R. Civ. P. 8(a), and North Carolina courts have held that "stating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC 38, ¶ 21, 2019 WL 2526461, at *4 (N.C. Super. June 19, 2019); *see, e.g.*, *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).

Third, this Court's ruling in *Fortson* doesn't apply to this case. In *Fortson*, the Plaintiff made no allegations of violations of North Carolina's total loss regulation and alleged the Defendant breached the contract "by not settling claims based on the appropriate value of loss vehicles." *Fortson v. Garrison Property & Casualty*, No. 1:19-cv-294, 2019 WL 5575582, (M.D.N.C. Oct. 29, 2019)(Am. Compl. ¶¶ 61, 66). This Court in *Fortson* stated that an appraisal was appropriate because the Plaintiff's claim concerns "only vehicle valuation." *Fortson v. Garrison Property & Casualty*, No. 1:19-cv-294, 2019 WL 5575582, *3 (M.D.N.C. Oct. 29, 2019). That is not the case here. Mr. Brewer alleges

---

[2] Doc. 11 at 10.

9

violations of state regulations, which State Farm acknowledges must be followed. Doc 1 at 39. Further, Mr. Brewer alleges State Farm failed to comply with 11 N.C. Admin. Code 4.018(h) (2020)[3] a new addition to the regulation, which was not in effect when the plaintiff in *Fortson* received her total loss payment from the insurer. Also, importantly, Mr. Brewer specifically alleges in this case that motor vehicles do not need to be revalued. Doc. 1 at 62. The plaintiff made no such allegations in *Fortson*. Therefore, this case is distinguishable, and this Court is not bound by the *Fortson* ruling.

<u>Fourth</u>, in support of its arbitrary and illegal methodology, State Farm argues "[t]he Policy also contemplates '[a]n adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.' " Doc. 11 at 9. However, while the policy expressly permits condition adjustments for the insured's vehicle, the policy language does not authorize State Farm to apply condition adjustments to comparable vehicles used in the valuation process. Likewise, North Carolina's total loss regulation allows insurers to "make adjustments 'for condition, options, equipment, and mileage, less the cost of unrepaired damage that pre-existed the accident,' to the loss vehicle, 11 N.C. Admin. Code 4.0418(e). The regulation does not authorize other adjustments or mention reducing the value of comparable vehicles that are available for sale." *Franco v. Progressive Cas. Ins. Co*., No. 24-225, 2025 WL 1400324, at *3 (M.D.N.C. May 14, 2025).

This distinction is critical because applying condition adjustments to comparable vehicles artificially deflates their values, resulting in a systematically undervalued starting baseline for determining the insured's vehicle's ACV. The policy's provision allowing for

---

[3] Doc. 1 ¶¶ 50-52.

condition adjustments refers to the insured's vehicle's condition, not to hypothetical adjustments to comparable vehicles that weren't inspected by State Farm. State Farm's practice effectively double-counts condition adjustments and violates the reasonable expectations of the insured under the policy terms.

The truth is, State Farm's deduction from the retail cost of comparable vehicles is not a "condition adjustment" at all. It has nothing to do with the total loss vehicle. State Farm takes the arbitrary deduction from the retail cost of comparable vehicles regardless of the actual condition of the total loss vehicle. Compl. Doc. 1 ¶ 47. Even if the condition of the total loss vehicle is rated "Dealer Retail" by State Farm on the CCC One Report, State Farm still reduces the retail cost of comparable vehicles to what it calls "Average Private," thereby reducing the total loss claim by hundreds or thousands of dollars. Here, State Fram breached the insurance contract and breached the duty of good faith and fair dealing implied under North Carolina law.

## III. Plaintiff Stated Valid Chapter 75 Claims

### A. Plaintiff's Chapter 75 Claim is Not a Breach of Contract Claim in Disguise

Plaintiff's Chapter 75 claim is not merely a disguised contract claim as alleged by the Defendant, but stands independently based on State Farm's unfair business practices that violate North Carolina's total loss regulation. The systematic application of condition adjustments to comparable vehicles constitutes an unfair practice that goes beyond a simple breach of contract. North Carolina courts have recognized that when a defendant's conduct has broader marketplace ramifications and affects consumers beyond the immediate contractual relationship, Chapter 75 claims are appropriate. Here, State Farm's practices

11

affect all total loss claimants in North Carolina, making this precisely the type of marketplace conduct Chapter 75 was designed to address.

First, there is no authority for the argument that a party cannot state a claim under Chapter 75 when a contract exists. To the contrary, North Carolina state courts have consistently rejected the argument that contractual relationships preclude Chapter 75 claims. Recently, the North Carolina Court of Appeals emphasized that "an action for unfair or deceptive practices is a creation of statute, and therefore *sui generis*, so the cause of action exists independently, regardless of whether a contract was breached." *Warren v. Cielo Ventures, Inc*., 293 N.C.App. 784, 789 (2024) (quoting *Nelson v. Hartford Underwriters Ins*., 177 N.C. App. 595, 608, (2006)). The court grounded this holding in the legislative purpose of Chapter 75 "[t]o provide civil legal means to maintain ethical standards of dealings between persons engaged in business and ... the consuming public within this State." *Id*. at 789-790.

Second, both *Birtha v. Stonemor, North Carolina, LLC*, 727 S.E.2d 1 (N.C. Ct. App. 2012) and *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331 (4th Cir. 1998) cited by the Defendant are inapposite. In *Birtha*, the North Carolina Court of Appeals found the plaintiffs failed to establish the existence of a contract between the parties and thus failed to show a breach of contract. In *Broussar*d, the Fourth Circuit reversed the class certification under Federal Rule of Civil Procedure 23(a), finding fatal defects in both adequacy of representation and commonality/typicality requirements. Neither of these cases addresses Chapter 75 claims based on violations of North Carolina statutes or regulations.

### B. Plaintiff has Stated an Independent Chapter 75 Claim

Plaintiff's independent Chapter 75 violation is based on his allegation that State Farm's common business practice of reducing the retail cost of comparable vehicles when calculating and paying vehicle total loss claims constitutes an **unfair practice <u>and</u> violates** 11 N.C. Admin. Code 4.0418.  Doc. 1 ¶¶ 81- 92.

As summarized by the Western District of North Carolina: " 'Unfair or deceptive conduct' fairly may be categorized into five types: 1) general 'unfair' conduct that 'offends public policy ... [or] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers;' 2) 'deceptive' misrepresentations that have the capacity or tendency to deceive the average person; 3) per se violations of § 75–1.1 established upon proof of a statutory or regulatory violation or the commission of certain torts; 4) a breach of contract accompanied by aggravating circumstances; and 5) anti-competitive conduct." *Sparks v. Oxy-Health, LLC*, 134 F.Supp.3d 961, 997 (2015) (citations and quotations omitted).  Mr. Brewer has stated a Chapter 75 claims under categories 1 and 3.

Chapter 75 states that "[u]nfair methods of competition in or affecting commerce, and unfair ... practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).  Faced with a similar argument by an insurer in a pending case, this Court succinctly summarized the laws supporting Chapter 75 claims based on regulatory violations:

> Some violations of statutes and regulations are *per se* unfair trade
> practices.  *See, e.g.*, *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C.
> App. 649, 659, 670 S.E.2d 321, 329 (2009).   Furher, "an unfair trade
> practice can also arise out of specific acts or a course of conduct. *See, e.g.*,
> *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 318, 665 S.E.2d 767, 780
> (2008) (holding that a violation of N.C. Gen. Stat. § 24-1.1 is not a per se

13

violation, but it may be considered in combination with other evidence that the defendants committed unfair and deceptive acts). A practice is unfair if it "offends established public policy [or] ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007) (quoting *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)). For a Chapter 75 claim, the jury determines the facts. *Id*. at 71. Then, the court determines as a matter of law whether those facts are an unfair practice in or affecting commerce. *Id*.

*Franco v. Progressive Casualty Ins. Co.*, LLC, No. 24-CV-225, Doc. 34, 2024 WL 4785154, at *3 (M.D.N.C. Oct. 4, 2024).

Mr. Brewer's Chapter 75 claims are based on State Farm's systemic reduction of the retail cost of comparable vehicles when calculating the actual cash value of a totaled vehicle in violation of 11 N.C. Admin. Code 4.0418 as well as the UCPA, causing claimants to receive less than the actual cash value of their vehicles. State Farm's argument that Mr. Brewer cannot base his claims on alleged violation of the total loss regulation or the UCPA misapprehends the law. This argument should be overruled.

### C. Rule 9(b) Does Not Apply to Plaintiff's Chapter 75 Claims

Chapter 75 prohibits certain "unfair **or** deceptive" conduct. N.C.G.S. § 75–1.1. (emphasis added). Mr. Brewer has stated no cause of action for "misrepresentations" in his Complaint and states no factual allegations at all to infer that he is proceeding under a claim for any misrepresentations. Plaintiff's Chapter 75 claims are based on unfair practices and regulatory violations, rather than fraud or deception. Therefore, the heightened pleading standard under Rule 9(b) does not apply. Chapter 75 claims based on unfair practices are "broader and [do] not require the same essential elements of intent, reliance, and subjectiveness; thus, the historical rationales for requiring particularity for claims of fraud

14

do not apply to deceptive trade practices." *CBP Res., Inc. v. SGS Control Servs.*, 394 F. Supp. 2d 733, 739 (M.D.N.C. 2005). Even if Rule 9(b) did apply, the Complaint sufficiently identifies the specific practice at issue (condition adjustments to comparable vehicles), when it occurred (during the valuation of Plaintiff's total loss claim in April 2023), and how it was implemented (through the CCC One valuation report). These allegations provide State Farm with adequate notice of the claims against it.

## IV. Plaintiff Stated a Valid UDTPA Claim Under the UCPA

State Farm's argument that Mr. Brewer failed to allege sufficient facts to support his claim under the North Carolina Unfair Claims Practices Act, N.C. Gen. Stat. § 58-63-15(11), sections (d), (f), (g), and (h) is inaccurate. In general, successfully pleading claims under the UCPA includes allegations that: (1) liability had become reasonably clear, (2) the insurer failed to attempt good faith settlement after that point, and (3) specific facts support the unreasonableness of the insurer's conduct. *Elliott v. American States Insurance Company*, 883 F.3d 384, 396-397 (2018).

First, there's no dispute that liability was established; State Farm accepted and paid the total loss claim. Further, Mr. Brewer's Complaint outlines the fact that State Farm acknowledged the total loss valuation methodology required under 11 N.C. Admin. Code 4.0418. Doc. 1 ¶¶ 20, 48, 97.[4] Second, the Complaint provides specific allegations as to why State Farm failed to fairly pay Mr. Brewer's total loss claim in good faith. After acknowledging the required valuation methodology, State Farm applied an impermissible,

---

[4] Complaint paragraph 97 includes a typographical error. The reference to "Ex. A at 11" should have been "Ex. A at 14" where State Farm acknowledged the valuation methodology requirements under 11 N.C. Admin. Code 4.0418.

systematic and arbitrary deduction to each comparable vehicle, incorrectly referring to it as a "condition adjustment" that resulted in the reduction of his claim by $3,328.00. Doc. 1 ¶¶ 38 – 57. State Farm failed to itemize this "deviation" from the required methodology and failed to share the information used to calculate the deduction or maintain it in the claim file as required under 11 N.C. Admin. Code 4.0418. (h). Doc. 1 at ¶¶ 35, 50-54.

### A. Plaintiff alleges sufficient facts to state a claim under section (d)

Section (d) prohibits "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." Plaintiff alleges the so-called "condition adjustment" deduction of the retail cost of comparable vehicles is arbitrary and unsupported because it "applies the same amount to each comparable vehicle regardless of the differences in mileage, options, or equipment among the comparable vehicles" and, as a result, is "unscrupulous and oppressive." Doc 1 at ¶¶ 54, 84. The Plaintiff asserts these facts support a finding that State Farm violated section (d) in that these facts illustrate State Farm's systematic knowledge of the correct retail cost of comparable vehicles, but ignored and refused to properly use the information to calculate the total loss claim.

### B. Plaintiff alleges sufficient facts to state a claim under section (f)

Section (f) prohibits "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Plaintiff alleges so-called "condition adjustment" deduction of the retail cost of comparable vehicles is unfair, unscrupulous and oppressive, as it has no connection with the condition of the total loss vehicle and is applied regardless of whether the comparable vehicles are in the same condition as the total loss vehicle. Doc 1 at ¶¶ 45, 47, 54, 83, 84. The Plaintiff

16

asserts these facts support a finding that State Farm violated section (f) in that these facts illustrate State Farm's systematic refusal to effectuate fair and equitable vehicle total loss settlements.

### C.    Plaintiff alleges sufficient facts to state a claim under section (g)

Section (g) prohibits "[c]ompelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured." Plaintiff alleges he was paid substantially less than he was owed for his total loss claim. Doc 1 at ¶¶ 27, 40, 42, 44,45, 49, 104, 106.  Plaintiff points to State Farm's brief supporting its motion to dismiss this case that establishes he was forced to file this lawsuit to request State Farm's practice of systematically applying a so-called "condition adjustment" deduction of the retail cost of comparable vehicles be decalred illegal under North Carolina law in order to "recover amounts due under [his] insurance policy" as State Farm says it "complied with the actual text of the total loss regulation" and, if not, refers to it as only a "bare procedural violation." Doc. 11 at 8, 14.   The Plaintiff asserts these facts support a finding that State Farm violated section (g) in that they illustrate he was forced to file this lawsuit to recover the amount due under his insurance policy.  They are sufficient to support his claim under section (g).

### D.    Plaintiff alleges sufficient facts to state a claim under section (h)

Section (h) prohibits "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled." State Farm's policy provides it "will pay for direct and accidental loss to your covered auto." Doc. 1 at 18, Doc. 11-2 at 15. State Farm promised to pay the actual cash value or the amount necessary to repair or

replace the property. *Id*. at 15. As State Farm asserts, "[t]he Policy also contemplates '[a]n adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.' " Doc. 11 at 9. State Farm misses the point. The policy's provision allowing condition adjustments refers to the condition of Mr. Brewer's vehicle, not to any arbitrary hypothetical adjustments to comparable vehicles. State Farm's practice of effectively double-counting condition adjustments violates any reasonable person's expectations under the policy. The Plaintiff asserts these facts support a violation of section (h) in that these facts support a finding that State Farm paid less than the amount to which a reasonable man would have believed he was entitled for his total loss claim.

### E. Defendant's argument that "other states have endorsed" CCC One Reports is Inapposite

State Farm argues "[i]n recent years, regulators in a number of other states have explicitly approved or endorsed the use of CCC Information Services to value total loss claims." Tellingly, State Farm doesn't list North Carolina as one of the states. Further, this statement is incomplete and misleading. First, the CCC One platform is customizable. Doc. 1 ¶¶ 24, 39, 101. Each insurance company that purchases the right to use the software is free to include deduction functions like State Farm's so-called "condition adjustment" or not include it. Second, as State Farm's CCC One Report indicates, the report's values of total loss vehicles generated by State Farm "is based on information provided to CCC by STATE FARM INSURANCE COMPANIES." Doc. 1 at 26. Third, State Farm listed no state that approved any CCC One Report generated by State Farm with this so-called "condition adjustment." This argument should be disregarded.

## V. Plaintiff Adequately Pleads a Claim for Declaratory Relief

Federal courts apply federal standards to the propriety of declaratory relief even when a case is under the court's diversity jurisdiction. *White v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 913 F.2d 165 (1990). Federal courts have consistently treated declaratory relief as a remedy rather than a separate cause of action. S*ee, e.g.*, *Johnson v. D & D Home Loans Corp.*, No. 2:07-cv-204, 2007 WL 4355278, (E.D.Va., December 6, 2007); *Birara v. Kelel*, No. TDC-17-3241, 2019 WL 3208685 (D.Md. July 16, 2019). This aligns with Supreme Court precedent in a case where the court reviewed with a single claim, but multiple prayers for relief, including for declaratory relief. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742-743 (1976). Further, in the similar case of *Wiggins* involving complaints of a "typical negotiation adjustment" used by State Farm, the court held that the Plaintiffs alleged facts showing a substantial controversy between the parties pursuant to 28 U.S.C.A. § 2201 (a) and denied dismissal of a declaratory action claim. *Wiggins v. State Farm Automobile Insurance Company*, 684 F. Supp. 452, 458 (2023). State Farm's arguments that Plaintiff's declaratory action claim should be dismissed and that Plaintiff failed to set such a claim in a separate cause of action is without merit.

## VI. *Freeman* Does Not Apply and Plaintiff's Class Claims Should Not Be Stricken

State Farm asserts "[t]he holding in *Freeman* applies here" in support of its argument that the Plaintiff's class allegations should be stricken. Doc. 11 at 26. However, this case does not involve the same issues as *Freeman*, as State Farm suggests. *Freeman* decided the issue of whether the insurer breached the insurance contract under South Carolina law by applying a projected sold adjustment to reduce total loss claims and

whether such a breach of contract claim could satisfy the requirements of Rule 23 for class certification. Quite differently, the class claim in this case concerns a regulation enacted to protect insurance consumers in North Carolina, not breach of the insurance contract. Further, the Fourth Circuit has not yet addressed the appropriateness of class certification in *Franco v. Progressive Cas. Ins. Co.,* No. 25-1703 (1:24-cv-225) (4th Cir.) (Doc. 29 briefing order issued Dec. 3, 2025) based on violations of state regulations, but many courts have already determined the distinction, finding that this type of case is appropriate for class treatment.

Here, Mr. Brewer's Chapter 75 class claim is based on State Farm's systemic reduction of the retail cost of comparable vehicles when calculating the actual cash value of a totaled vehicle; Mr. Brewer alleges that by reducing the retail cost of comparable vehicles, State Farm violates 11 N.C. Admin. Code 4.0418 and causes claimants to receive less than the actual cash value of their vehicles.

In a similar case, where the plaintiff based her claims on the same theory against Progressive as Mr. Brewer asserts here against State Farm, denying a motion to stay, this Court correctly ruled "[t]he issues before the Fourth Circuit in *Freeman* do not closely align with the issues here; claims for breach of contract under South Carolina law are not the same as Chapter 75 claims under North Carolina law." *Franco v. Progressive Casualty Ins. Co.*, LLC, No. 24-CV-225, Doc. 34, 2024 WL 4785154, at *2 (M.D.N.C. Oct. 4, 2024).

In *Freeman*, the Fourth Circuit noted that "the policies involved included no contractual obligation to use or not to use any method of determining actual cash value, including Projected Sold Adjustments. It therefore follows that if Progressive paid the actual cash

20

value, regardless of how it computed it, there could be no breach." *Freeman v. Progressive Direct Insurance Company*, 149 F.4th 461, 468 (2025).[5] Regardless of whether the Fourth Circuit's ruling in *Freeman* was correct or as the dissent asserted, "erroneous" and "out of step with the text of the contract and this court's precedent"[6] the court believed that because there was no specified methodology for calculating actual cash value, in the contract or under South Carolina law, the insurer was free to calculate the total loss claim in any manner it chose. This is not the case in North Carolina.

North Carolina regulates the methodology under which insurers must calculate motor vehicle total loss claims. 11 N.C. Admin. Code 4.0418 (2020) was promulgated by the North Carolina Department of Insurance under authority granted by N.C. Gen. Stat. § 58-63-65 to implement unfair claim settlement practice provisions in N.C. Gen. Stat. § 58-63-15(11). The current version became effective October 1, 2020, representing an amendment from a previous version that existed as early as 2016. The most significant change in the 2020 amendment was the addition of itemization requirements for deductions from actual cash value under subsection (h), which was not present in the earlier version. The regulation standardizes valuation procedures for motor vehicle insurance claims.

Simply stated, the Fourth Circuit's ruling in *Freeman* doesn't apply here. The Plaintiff has properly stated his class allegations.

---

[5] Rejecting *Freeman*, the Sixth Circuit ruled, "[w]e are not convinced by the holdings of those of our sister circuits that follow *Lara* to its fullest. Rather, we adhere to our methodology and reasoning in *Hicks*, and are more persuaded by the Ninth Circuit's post-*Lara* decision in *Jama v. State Farm Mutual Automobile Insurance Co*., 113 F.4th 924 (9th Cir. 2024), *cert. denied*, —— U.S. ——, 145 S.Ct. 2793, —— L.Ed.2d —— (June 16, 2025).
[6] *Freeman* at 471, 473.

## VII.    A Stay is Not Appropriate; Appraisal is Not Required and Will Not Resolve Claims

State Farm cites *Wiggins v. State Farm Mut. Auto. Ins. Co.*, 2022 U.S. Dist. LEXIS 112081, at *10–11 (D.S.C. June 23, 2022) as support for its argument, this case should be stayed pending appraisal.  However, *Wiggins* highlights the reason this case should not be stayed.  After the appraisal, the court ruled that challenges to insurer's valuation methodologies fall outside the scope of appraisal and require judicial resolution. The court held that challenges to State Farm's use of "Typical Negotiation Adjustments" constitute breach claims that survive completion of the appraisal process. The court found that "the appraisal process did not answer the question of breach with respect to the propriety of Defendants' use of the adjustment in the process of settling total loss claims under the insurance policies." *Wiggins v. State Farm Mutual Automobile Insurance Company*, 684 F.Supp.3d 452 (2023).  The same is true in this case.  Mr. Brewer requests that this Court declare State Farm's practice of reducing the retail cost of comparable vehicles is in violation of North Carolina law.

The appraisal process cannot resolve the Plaintiff's legal claims on behalf of a proposed class under Chapter 75, nor can appraisers resolve Mr. Brewer's individual claim for breach of contract.  A stay in this case will achieve only a delay in this litigation.

## CONCLUSION

For all the foregoing reasons, the Court should deny State Farm's motion dismiss this case, deny the motion to strike the class allegations and deny the motion to compel appraisal and stay this action pending appraisal.

22

December 16, 2025

HEMMINGS & STEVENS, P.L.L.C.

*/s/ Aaron C. Hemmings*

Aaron C. Hemmings, NC Bar No.: 29810
Kelly A. Stevens, NC Bar No. 27066
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com

*Attorneys for the Plaintiff*

CERTIFICATE OF COMPLIANCE

I certify that the foregoing Plaintiff's Memorandum in Opposition to State Farm's Motion to Dismiss and Strike Class Allegations or, in the Alternative, to Compel Appraisal and Stay complies with the word limitations of 6,250 words pursuant to Local Rule 7.3 (d)(1).

/s/ Aaron C. Hemmings
Aaron C. Hemmings


CERTIFICATE OF SERVICE

I, Aaron C. Hemmings, attorney for the Plaintiff herein, hereby certify that the foregoing Plaintiff's Memorandum in Opposition to State Farm's Motion to Dismiss and Strike Class Allegations or, in the Alternative, to Compel Appraisal and Stay was filed on December 16, 2025, using the Court's ECM/ECF electronic filing system, which will provide service to all attorneys of record.

/s/ Aaron C. Hemmings
Aaron C. Hemmings