IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CRAIG BREWER, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:25-CV-904 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

     Craig Brewer alleges that State Farm Mutual Automobile Insurance breached its insurance contract with him and violated North Carolina law when it did not pay him the pre-accident actual cash value of his totaled car. Mr. Brewer has brought his claims on behalf of himself and, as to his unfair trade practice claims, on behalf of a putative class. State Farm moves to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. In the alternative, State Farm seeks to strike the class allegations from the complaint, compel an appraisal of Mr. Brewer's vehicle, and stay this case until the appraisal is completed.

     The plain language of the insurance policy permits either party to request an appraisal when there is a dispute over the actual cash value of a totaled car, so State Farm's motion to compel appraisal will be granted. But Mr. Brewer has alleged sufficient

facts to establish standing and to state plausible claims, class certification is better assessed on a more developed factual record, and there is no reason litigation cannot continue during the appraisal process, so State Farm's motion will otherwise be denied.

I.  **Alleged Facts and Claims**

Mr. Brewer alleges that in April 2023, his car was damaged in a traffic accident. Doc. 1 at p. 5 ¶ 21. He filed a claim under his car insurance policy with State Farm, and State Farm deemed the car a total loss. *Id.* at p. 6 ¶¶ 22–24. Under his policy, State Farm had to pay Mr. Brewer the full pre-accident actual cash value of his car. *Id.* at p. 5 ¶ 18; Doc. 11-2 at 15.[1]

To determine the actual cash value of Mr. Brewer's car, State Farm used a third-party data platform, CCC One, to generate a report assessing the retail cost of comparable cars in Mr. Brewer's area. Doc. 1 at p. 2 ¶ 3, pp. 4–5 ¶¶ 13–15, p. 6 ¶¶ 24–26, pp. 26–44. As customized by State Farm, *id.* at p. 5 ¶ 16, the CCC One platform located sales listings for comparable cars and then applied a "condition adjustment" to the cars' retail price based on an assumption of "Average Private condition." *Id.* at p. 8 ¶ 38, p. 35. Application of that adjustment reduced the value of the comparable cars by $3,328. *Id.* at p. 8 ¶ 40. As a result, State Farm applied a $3,328 deduction to the value of Mr. Brewer's car, *id.* at p. 9 ¶ 42, and underpaid his claim. *Id.* at p. 9 ¶ 45.

---

[1] Mr. Brewer did not attach a copy of his insurance policy to the complaint, but State Farm included a copy with its motion to dismiss. Mr. Brewer has not challenged its authenticity. Since the terms of the policy are integral to the complaint, they can properly be considered at this stage. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that courts may consider documents attached to the motion to dismiss if "they are integral to the complaint and authentic.").

Mr. Brewer also alleges that all State Farm automobile insurance policies require State Farm to pay insureds the actual cash value of totaled cars, *id.* at p. 5 ¶ 18, that State Farm uses the CCC One reports to apply the condition adjustment in a systemic way to all claims related to vehicles that are a total loss, *id.* at p. 10 ¶¶ 48–49, p. 11 ¶ 55, and that the valuation methodology used is arbitrary and results in a systemic undervaluation of 4% to 9% across the claims of State Farm insureds in North Carolina. *Id.* at p.12 ¶ 60.[2] He identifies numerous provisions in applicable regulations that he contends prohibit this approach. *See, e.g., id.* at p. 7 ¶¶ 30–34. He also contends that State Farm does not comply with applicable disclosure regulations governing how such adjustments must be shared with its insureds. *See, e.g., id.* at pp. 7–8 ¶ 35.

Based on these allegations, Mr. Brewer has brought a breach of contract claim on an individual basis, *id.* at pp. 21–23 ¶¶ 93–106, and two claims for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 on behalf of a proposed class. *Id.* at pp. 18–21 ¶¶ 81–92. He is seeking money damages, attorneys' fees and costs, and a declaratory judgment. *Id.* at p. 24 ¶¶ 3–6.

## II.      Motion to Dismiss

State Farm has moved to dismiss Mr. Brewer's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). It also moves to dismiss his claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

---

[2] In other words, and perhaps somewhat oversimplified, State Farm begins with actual sales prices of other comparable used cars and then deducts an additional amount from those comparable vehicles because they are used, thus discounting twice for the used condition of the comparable cars.

3

### A. Lack of Standing

State Farm contends that this Court is without subject matter jurisdiction. It asserts that Mr. Brewer lacks standing to sue because he did not dispute State Farm's valuation of his car through a contractual appraisal process.

The United States Constitution limits federal courts to deciding "cases" or "controversies." U.S. Const. art. III, § 2; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–23 (2021). This limitation requires, in part, that plaintiffs establish their standing to sue. *See California v. Texas*, 593 U.S. 659, 668–69 (2021). Standing under Article III has three elements: a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion*, 594 U.S. at 423; *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 899 (4th Cir. 2022).

The terms of Mr. Brewer's policy required State Farm to pay the pre-accident actual cash value of his car if it was deemed a total loss. Doc. 11-2 at 15. He alleges that State Farm paid him $3,328 less than the actual cash value and that State Farm did not pay him the correct amount because it used an illegal valuation methodology. Doc. 1 at pp. 18–23 ¶¶ 81–106. "That sort of pocketbook injury is a prototypical form of injury in fact." *Collins v. Yellen*, 594 U.S. 220, 243 (2021) (cleaned up).

State Farm asserts that Mr. Brewer does not have an injury because he has not gone through the appraisal process required in the policy. The appraisal provision states that if the parties do not:

> agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Doc. 11-2 at 15. The policy further provides that "[n]o legal action may be brought against [State Farm] until there has been full compliance with all the terms of this policy." *Id.* at 16. State Farm contends that the appraisal provision is a mandatory precondition to suit and unless Mr. Brewer's car is appraised for less than the value he alleges, he cannot establish any concrete harm arising from State Farm's alleged breach of contract or unfair and deceptive trade practices.

State Farm's argument is unpersuasive. The policy's appraisal provision is not mandatory; it explicitly provides that either party "may demand an appraisal." *Id.* at 15. "May" indicates a permissive condition. *See, e.g.*, *Silver v. Halifax Cnty. Bd. of Comm'rs*, 371 N.C. 855, 863–64, 821 S.E.2d 755, 761 (2018). Since the plain language of the appraisal provision is permissive, appraisal is not a precondition to filing suit. *See Cato Corp. v. Zurich Am. Ins. Co.*, 386 N.C. 667, 672, 909 S.E.2d 144, 148 (2024) ("When interpreting a contract for insurance, the plain language and ordinary meaning of the policy control unless the contract specifically defines terms or the context suggests otherwise." (cleaned up)).

*Patel v. Scottsdale Insurance Co.*, relied upon by State Farm, is distinguishable. 221 N.C. App. 476, 728 S.E.2d 394 (2012). The policy at issue in *Patel* required payment for a covered loss only once the parties reached an agreement about the value of the loss or an appraisal was completed. *Id.* at 482–84. Here, State Farm has pointed to

5

nothing in Mr. Brewer's policy placing such a condition on payment.  State Farm had a contractual duty to pay actual cash value before the appraisal, not just after.³

Mr. Brewer has alleged sufficient facts to establish standing at the motion to dismiss stage.

B.  Failure to State a Claim

State Farm also contends that Mr. Brewer has not alleged sufficient facts to state a claim for breach of contract or for unfair trade practices.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  *Id.*  A plaintiff is not required to prove her case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, 20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), but the complaint's allegations should "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up).

---

³ State Farm also contends that if the appraisal process results in Mr. Brewer receiving what he alleges to be the full pre-accident actual cash value of his car, then he will no longer have standing to bring his Chapter 75 claim.  First, the possibility of future mootness is irrelevant to standing, since "standing is established by the facts alleged in the complaint."  *Netro v. Greater Balt. Med. Ctr., Inc.*, 891 F.3d 522, 526 (4th Cir. 2018).  Second, this assumes that payment of that amount would moot both the breach of contract claim and the Chapter 75 claims, which may or may not be so.  *See id.* (noting that payment of an outstanding contractual obligation does not moot a claim when double damages remain available).  This mootness argument is speculative and premature.

6

All of Mr. Brewer's claims clear the plausibility bar.

### 1. Breach of Contract

Mr. Brewer alleges that his insurance policy required State Farm to pay him the actual cash value of his pre-accident car and that State Farm did not do that. Doc. 1 at pp. 21–23 ¶¶ 93–106. The policy requires State Farm to pay that amount, even before an appraisal. *See supra* at 4–6. Mr. Brewer alleges that State Farm did not pay him that actual cash value because it uses a valuation process that deducts an amount attributable to the used condition of the car twice. This plausibly alleges a claim for breach of contract. *See Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 348, 623 S.E.2d 334, 341 (2006) (stating the elements of breach of contract).

State Farm contends that its contract with Mr. Brewer did not specify any particular valuation method, so its reliance on the CCC One report to determine actual cash value could not constitute breach. But State Farm acknowledges that the policy required it to pay Mr. Brewer the pre-accident actual cash value of his car, and this argument is little more than a disagreement over what the actual cash value is. That sort of garden variety factual dispute cannot be resolved at the motion to dismiss stage. *See Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009). Mr. Brewer has stated a plausible claim for breach of contract.

### 2. Unfair and Deceptive Trade Practices

Mr. Brewer alleges that State Farm's valuation methodology violates North Carolina insurance regulations and that its use of that methodology constitutes an unfair and deceptive trade practice both *per se* and as a violation of the state's public policy.

7

Doc. 1 at pp. 18–21 ¶¶ 81–92. State Farm contends that these claims are breach of contract claims in disguise and that, in any event, its alleged actions are not cognizable violations of N.C. Gen. Stat. § 75-1.1.

State Farm is correct that a mere breach of contract does not constitute an unfair trade practice under Chapter 75. *See, e.g., Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). But Mr. Brewer claims that State Farm's acts are well more than a breach of contract; he contends they are illegal. *See* Doc. 1 at p. 19 ¶ 83, p. 20 ¶ 90.

Taking the factual allegations of the complaint as true, it is plausible that State Farm is committing an unfair trade practice by systemically underpaying claims. Mr. Brewer identifies a number of potential problems with the alleged double-deduction used by State Farm and a number of ways State Farm's practices violate applicable insurance regulations.[4] *See id.* at pp. 6–11 ¶¶ 28–54.

---

[4] 11 N.C. Admin. Code § 4.0418 provides the procedures insurance companies must follow when settling total loss motor vehicle claims. It requires that "[w]hen a motor vehicle is damaged in an amount which . . . equals or exceeds 75 percent of the pre-accident actual cash value . . . an insurance company shall designate the motor vehicle as a 'total loss' and pay the claimant the pre-accident value." § 4.0418(c). If the parties are unable to agree on the pre-accident value, insurers are only permitted to estimate it using "published regional average values of substantially similar motor vehicles" and either the "retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area" or "quotations obtained from two or more licensed motor vehicle dealers located within the local market area." § 4.0418(d). If the insurer adjusts the offer to account for "condition, options, equipment, and mileage, less the cost of unrepaired damage that pre-existed the accident," § 4.0418(e), it must provide the insured with "a written statement listing" those items "and the source of these values," if requested. § 4.0418(i). Amont other things, Mr. Brewer alleges that State Farm essentially deducted twice for the same condition in calculating actual cash value, that the "condition" deduction could only be applied to the insured car, not the

8

Case 1:25-cv-00904-CCE-JGM    Document 18    Filed 02/25/26    Page 8 of 12

Violations of North Carolina administrative rules can constitute violations of § 75-1.1. *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 70–71, 653 S.E.2d 393, 398–99 (2007) (explaining that "a regulatory violation may offend § 75-1.1." (cleaned up)); *see generally* Noel Allen, 1 North Carolina Unfair Business Practice § 3.08 (Matthew Bender 2025).

The regulation at issue here, 11 N.C. Admin. Code § 4.0418, was promulgated under N.C. Gen. Stat. § 58-53-65, which authorizes the insurance commissioner to define additional unfair and deceptive insurance practices, tending to indicate that a violation is or can be an unfair trade practice. The regulation itself also provides that the state insurance commissioner "shall consider as prima facie violative of G.S. 58-63-15(11) the failure by an insurance company to adhere to the procedures" set forth in the rule. 11 N.C. Admin. Code § 4.0418(a). Violations under that statute have been held to be unfair and deceptive trade practices. *See, e.g.*, *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000) (finding a *per se* violation); *Durham Wood Fired Pizza Co. v. Cincinnati Ins. Co.*, No. 25-CV-492, 2025 WL 3485571, at *3 (M.D.N.C. Dec. 4, 2025) (same).

With that context in mind, it is plausible that violations of 11 N.C. Admin. Code § 4.0418 may constitute unfair and deceptive trade practices, depending on the evidence.

Whether State Farm's valuation methodology violated North Carolina regulations and statutes involves questions of fact, *see First Union Nat. Bank v. Brown*, 166 N.C.

---

comparable cars, and that it did not disclose this double-counting or disallowed deduction to insureds as required.

9

App. 519, 533, 603 S.E.2d 808, 818 (2004), that cannot be decided at the motion to dismiss stage. Once the facts are clearer, the Court will be in a better position to evaluate whether State Farm's actions constitute a *per se* unfair trade practice, an unfair trade practice in light of all the circumstances, or no violation at all. *See Walker*, 362 N.C. at 70–71; *see also Country Vintner of N.C., LLC v. E & J Gallo Winery, Inc.*, 461 F. App'x. 302, 305 (4th Cir. 2012) (noting that "the violation of a North Carolina regulatory statute governing business activities may constitute an unfair or deceptive trade practice as a matter of law or may be evidence of an unfair or deceptive trade practice, even if it is not a *per se* violation of the UDTPA." (cleaned up)).

Whether *per se* or otherwise, violations of those insurance regulations may well be unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. So accepting Mr. Brewer's well pled allegations as true, he has sufficiently stated his UDTPA claims.

### 3. Declaratory Judgment

In the complaint, Mr. Brewer seeks various forms of relief, including "an order declaring State Farm violated North Carolina law by reducing the retail cost of comparable vehicles in the calculation of the total loss claims of the Plaintiff and proposed class." Doc. 1 at p. 24 ¶ 6. State Farm contends that the request for declaratory relief should be dismissed because it is inadequately pled and duplicative.

A declaratory judgment is not a cause of action; it "is simply the remedial procedural vehicle by which a court can declare the rights of the parties as to an underlying legal dispute over which jurisdiction is otherwise proper." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d 834, 843 (W.D. Va. 2018). So "a motion to

10

Case 1:25-cv-00904-CCE-JGM    Document 18    Filed 02/25/26    Page 10 of 12

dismiss is rarely appropriate in a declaratory judgment action." *Brown-Thomas v. Hynie*, 412 F. Supp. 3d 600, 606 (D.S.C. 2019) (cleaned up). Without a developed record, it cannot be said with certainty that a declaratory judgment will serve no purpose for Mr. Brewer or a putative class beyond the other relief sought. State Farm's motion will be denied.

III. Motion to Strike

State Farm's motion to strike class allegations will be denied. "[I]n deciding whether to deny class certification at the pleading stage—a district court may consider only the face of the complaint and ask whether its allegations make a prima facie showing that satisfies Rule 23(a) and (b)'s requirements." *Oliver v. Navy Fed. Credit Union*, __ F.4th __, 2026 WL 346144, at *4 (4th Cir. Feb. 9, 2026). And "district courts retain substantial discretion about whether to entertain requests to decide class certification at the pleading stage in the first place." *Id.* at *5 n.3. *Freeman v. Progressive Direct Insurance Co.* may make class certification challenging for the plaintiffs, but this case is not identical to *Freeman*. 149 F.4th 461 (4th Cir. 2025).

At this stage State Farm has not demonstrated that the "class action allegations show non-compliance with Rule 23 as a matter of law." *Oliver*, 2026 WL 346144, at *5 (cleaned up). There are enough differences between the claims asserted in *Freeman* and those asserted here to follow the usual path.

IV. Motion to Compel Appraisal

State Farm's motion in the alternative to compel appraisal will be granted. Mr. Brewer contends that State Farm breached their contract when it did not pay the actual

11

cash value of his totaled car as required by the policy. Doc. 1 at p. 23 ¶¶ 104–05. The same policy allows either party the option to "demand an appraisal" when the parties do not agree on the amount of the loss. Doc. 11-2 at 15. State Farm has demanded an appraisal, and it is entitled to one in connection with Mr. Brewer's individual breach of contract claim. Assuming without deciding that the appraisal will ultimately resolve his breach of contract claim, his Chapter 75 claims will go forward. *See supra* at note 3. So there is no good reason to stay the action while the appraisal is obtained.

It is **ORDERED** that:

1. The defendant's motion to dismiss or stay, Doc. 10, is **DENIED**.

2. The defendant's motion in the alternative to compel an appraisal, Doc. 10, is **GRANTED** and the plaintiff **SHALL** promptly cooperate with State Farm's appraisal demand.

3. The defendant **SHALL** file an answer within the time provided by the Rules of Civil Procedure and the matter is referred to the Magistrate Judge for an initial pretrial conference.

This the 25th day of February, 2026.

_____
UNITED STATES DISTRICT JUDGE