IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CRAIG BREWER, STACIE SMITH, and REGINA BARRIER, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Case No. 1:25-cv-00904-CCE-JLW<br><br>Jury Trial Demanded |

Plaintiffs Craig Brewer, Stacie Smith and Regina Barrier, each individually and on behalf of a class of similarly situated persons, entities, and businesses ("Plaintiffs"), through undersigned counsel, file this First Amended Class Action Complaint against the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") and allege as follows:

**INTRODUCTION**

1. Plaintiffs file this class action requesting relief for themselves and all other similarly situated North Carolina automobile insurance customers or former customers of State Farm, whose vehicle total loss claims were paid by State Farm using a CCC One Market Valuation Report ("CCC One Report").

2. Plaintiffs seek declaratory relief, as well as compensatory damages and other appropriate remedies, resulting from State Farm's systematic and uniform practice of applying a computer software-generated deduction to the retail cost of comparable vehicles

used in the calculation of total loss claim payments in violation of North Carolina's motor vehicle total loss regulation, 11 N.C. Admin. Code § 4.0418 (2020), which has resulted in and continues to result in State Farm avoiding paying the required amount for vehicle total loss claims under North Carolina law.

3. State Farm utilizes a customizable software program licensed by CCC Information Services, Inc.,[1] to apply a systematic and uniform reduction of the retail cost of comparable vehicles in calculating total loss claims in North Carolina.

4. Plaintiffs, Craig Brewer, Stacie Smith and Regina Barrier file this class action on behalf of themselves and all other similarly situated persons, businesses, or entities insured under a North Carolina State Farm automobile policy who were subjected to this total loss underpayment scheme against the Defendant for violations of North Carolina's Unfair Trade Practices Act, and declaratory relief. Plaintiffs also assert individual claims for breach of contract.

5. Plaintiffs further assert a claim for declaratory and injunctive relief against State Farm on behalf of a proposed prospective class of State Farm insureds that will be harmed on future claims if State Farm's practice continues without challenge.

## PARTIES

6. Plaintiff, Craig Brewer, is a citizen and resident of Mecklenburg County, North Carolina and at all relevant times herein was insured under a policy of insurance issued by the Defendant, State Farm Mutual Automobile Insurance Company. He brings

[1] The CCC One Market Valuation Reports presented to Plaintiffs are attached here as Exhibit A, B and C.

this action individually and on behalf of other similarly situated persons and businesses as defined herein who are citizens and residents of the State of North Carolina or were citizens and residents at the time they made a vehicle total loss claim with State Farm.

7. Plaintiff, Stacie Smith, is a citizen and resident of Mecklenburg County, North Carolina and at all relevant times herein was insured under a policy of insurance issued by the Defendant, State Farm Mutual Automobile Insurance Company. She brings this action individually and on behalf of other similarly situated persons and businesses as defined herein who are citizens and residents of the State of North Carolina or were citizens and residents at the time they made a vehicle total loss claim with State Farm.

8. Plaintiff, Regina Barrier, is a citizen and resident of Caldwell County, North Carolina and at all relevant times herein was insured under a policy of insurance issued by the Defendant, State Farm Mutual Automobile Insurance Company. She brings this action individually and on behalf of other similarly situated persons and businesses as defined herein who are citizens and residents of the State of North Carolina or were citizens and residents at the time they made a vehicle total loss claim with State Farm.

9. Defendant, State Farm Mutual Automobile Insurance Company, is a foreign corporation doing business in the State of North Carolina and licensed with the North Carolina Department of Insurance. Defendant, State Farm Mutual Automobile Insurance Company, is domiciled in Illinois with its principal statutory and administrative office located at One State Farm Plaza, Bloomington, IL 61710.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over State Farm because State Farm is an insurance company authorized to do business in the State of North Carolina, and, at all relevant times hereto, was engaged in the marketing, sale, and issuance of automobile insurance policies to consumers in the State of North Carolina. Further, this Court has personal jurisdiction over State Farm because Defendant's conduct upon which the claims are based occurred in substantial part within this District and because Defendant committed the same wrongful acts to other class members in this Judicial District.

11. This Court has jurisdiction over the subject matter of this class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because at least one member of the putative class, including the Plaintiffs, is a citizen of North Carolina and the Defendant is a citizen of Illinois, thus meeting CAFA's minimal diversity requirement. Additionally, the proposed Class consists of 100 or more members and the amount in controversy, when aggregated among a proposed class of thousands, exceeds $5,000,000.00, exclusive of costs, interest and fees that might be awarded. Additionally, the Court has supplemental jurisdiction over the Plaintiffs' individual breach of contract claims pursuant to 28 U.S.C. § 1367(a) as the claims are part of the same case and controversy as the claim over which this Court has original jurisdiction.

12. Venue in this case is proper in this District pursuant to 28 U.S.C. § 1391(b), (c ) and (d) because the Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. State Farm has sufficient business and contacts for jurisdiction in this District.

## FACTUAL ALLEGATIONS

13. State Farm is the largest automobile insurance carrier in the United States and in North Carolina. Upon information and belief, State Farm insures approximately 94 million customers nationwide.

14. Upon information and belief, approximately 1.2 million of those customers reside in North Carolina. Upon information and belief, State Farm pays more than ten thousand vehicle total loss claims per year in North Carolina.

15. State Farm has partnered with CCC Information Services, Inc.[2] ("CCC") to process automobile damage, repair, and total loss claims. CCC is a technology company that provides software, data, and claims handling services to the automotive, insurance, and collision repair industries. Their flagship platform is CCC One, a cloud-based software suite used by State Farm in processing automotive damage, repair and total loss claims.

16. In 2020, State Farm announced it would begin using CCC One Market Value Reports exclusively to value vehicle total loss claims.

17. State Farm uses the CCC One platform to create its CCC One Market Valuation Reports when presenting customers with the valuation of a total loss vehicle.

18. The CCC One platform is customizable, allowing State Farm to choose the deductions it applies to arrive at a valuation for a total loss vehicle.

19. The CCC One reports indicate the value stated is "based on information provided to CCC by STATE FARM INSURANCE COMPANIES." *E.g.*, Ex. A at 11.

---

[2] Also known as CCC Intelligent Solutions Inc.

20. Under its uniform automobile insurance policy terms, once a customer's vehicle is declared a total loss, State Farm is required to pay the customer the pre-accident value of the loss.

21. As this is a ubiquitous industry standard, it's no surprise that North Carolina's total loss statute requires the same. 11 N.C. Admin. Code § 4.0418 (2020).

22. State Farm recognizes its duty to comply with North Carolina's vehicle total loss regulation, 11 N.C. Admin. Code § 4.0418 (2020). *E.g.*, Ex. A at 14.

**Plaintiff Craig Brewer's Total Loss Claim**

23. On April 24, 2023, while driving his 2021 Genesis GV80 AWD motor vehicle, Plaintiff Craig Brewer was involved in a traffic accident in Charlotte, North Carolina.

24. At the time of the accident, the Plaintiff Craig Brewer and the 2021 Genesis were insured under an auto policy underwritten by State Farm (Policy # 4737-883-33).

25. On May 8, 2023, Plaintiff Craig Brewer filed a claim with State Farm for damage to the 2021 Genesis resulting from the April 24, 2023, accident.

26. Subsequently, State Farm determined the 2021 Genesis was a total loss and used its customized CCC One platform to calculate the pre-accident value of Mr. Brewer's 2021 Genesis.

27. State Farm presented Mr. Brewer with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. A.

28. The report stated the pre-accident "Base Vehicle Value" was $56,772.00 and State Farm paid Mr. Brewer's claim based on the CCC One Market Valuation Report.

29. Unbeknownst to Mr. Brewer, in calculating the amount it was required to pay, State Farm applied a software-generated deduction to the retail cost of comparable vehicles used in the calculation of his total loss claim. The deduction violates North Carolina's total loss regulation and resulted in the ultimate reduction of his total loss payment in the amount of $3,328.00.

**Plaintiff Stacie Smith's Total Loss Claim**

30. On September 26, 2022, while driving her 2004 Mitsubishi Outlander LS AWD motor vehicle, Plaintiff Stacie Smith was involved in a traffic accident in Charlotte, North Carolina.

31. At the time of the accident, the Plaintiff Stacie Smith and her 2004 Mitsubishi were insured under an auto policy underwritten by State Farm (Policy #032 4954-B01-33I).

32. On October 5, 2022, Plaintiff Stacie Smith filed a claim with State Farm for damage to the 2004 Mitsubishi resulting from the September 26, 2022, accident.

33. Subsequently, State Farm determined the 2004 Mitsubishi was a total loss and used its customized CCC One platform to calculate the pre-accident value of Ms. Smith's 2004 Mitsubishi.

34. State Farm presented Ms. Smith with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. B.

35. The report stated the pre-accident "Base Vehicle Value" was $2,882.00 and State Farm paid Ms. Smith's claim based on the CCC One Market Valuation Report.

36. Unbeknownst to Ms. Smith, in calculating the amount it was required to pay, State Farm applied a software-generated deduction to the retail cost of comparable vehicles used in the calculation of her total loss claim. The deduction violates North Carolina's total loss regulation and resulted in the ultimate reduction of her total loss payment in the amount of $556.00.

**Plaintiff Regina Barrier's Total Loss Claim**

37. On June 16, 2025, while driving her 2018 Jeep Wrangler JK Unlimited motor vehicle, Plaintiff Regina Barrier was involved in a traffic accident in Granite Falls, North Carolina.

38. At the time of the accident, the Plaintiff Regina Barrier and her 2018 Jeep Wrangler were insured under an auto policy underwritten by State Farm (Policy # 158 1169-B08-33C).

39. On August 26, 2025, Plaintiff Regina Barrier filed a claim with State Farm for damage to the 2018 Jeep Wrangler resulting from the June 16, 2026, accident.

40. Subsequently, State Farm determined the 2018 Jeep Wrangler was a total loss and used its customized CCC One platform to calculate the pre-accident value of Ms. Barrier's 2018 Jeep Wrangler.

41. State Farm presented Ms. Barrier with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. C.

42. The report stated that the pre-accident "Base Vehicle Value" was $14,995.00 and State Farm paid Ms. Barrier's claim based on the CCC One Market Valuation Report.

43. Unbeknownst to Ms. Barrier, in calculating the amount it was required to pay, State Farm applied a software-generated deduction to the retail cost of comparable vehicles used in the calculation of her total loss claim. The deduction violates North Carolina's total loss regulation and resulted in the ultimate reduction of her total loss payment in the amount of $1,533.00.

**Violation of North Carolina's Motor Vehicle Total Loss Regulation**
**11 N.C. Admin. Code § 4.0418 (2020)**

44. When a North Carolina insured experiences an event resulting in damage to a covered vehicle of at least 75% of the pre-accident cash value, North Carolina regulations require the insurer to "designate the motor vehicle as a 'total loss' and pay the claimant the *pre-accident value*." 11 N.C. Admin. Code § 4.0418(c). (emphasis added)

45. Under paragraph (c) of the regulation, the pre-accident value must be "determined in accordance with [p]aragraph (d) of this Rule." *Id*.

46. Paragraph (d), requires the pre-accident value "shall be based on the following values: (1) [t]he published regional average values of substantially similar motor vehicles; and (2) [t]he *retail cost* of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area." 11 N.C. Admin. Code § 4.0418(d) (emphasis added).

47. Sections (b)(1) and (b)(2) both require State Farm to use the "retail cost" of comparable vehicles, as State Farm is required to use "published regional average values"

of substantially similar motor vehicles under (b)(1), "to reach an average *retail value* of the motor vehicle." 11 N.C. Admin. Code § 4.0418(b)(3) (emphasis added).

48. State Farm does not comply with either section.

49. After calculating the pre-accident value under paragraph (d), the pre-accident value of the total loss vehicle "may be adjusted for condition, options, equipment, and mileage, less the cost of unrepaired damage that pre-existed the accident." 11 N.C. Admin. Code § 4.0418(e).

50. The regulation does not authorize other adjustments or mention reducing the value of comparable vehicles for "condition."

51. If an insurer attempts to pay its customer for the total loss "on a basis that deviates from this Rule, the deviation must be supported by documentation within the claim file detailing the total loss motor vehicle's condition and the reason for the deviation[,] ... [and] [t]he documentation ... shall be shared with the claimant." 11 N.C. Admin. Code § 4.0418(h).

52. Simply stated, under North Carolina's total loss regulation, State Farm is permitted to apply an adjustment for the condition of the total loss vehicle, but is not permitted to adjust the retail price of the comparable vehicles in calculating the value of the total loss claim.

53. Here, State Farm evaluated the condition of the Plaintiffs' total loss vehicles for condition adjustments, but went one step further and made additional impermissible condition adjustments to comparable vehicles for sale in the market, thus "double counting" for condition of the Plaintiffs' vehicles.

54. This function of State Farm's total loss valuation practice using its customized CCC One platform is automated and results in a software-generated blanket reduction of the retail price of each comparable vehicle by the same amount in each Plaintiff's vehicle valuation report.

55. State Farm reduced each comparable vehicle used to value Plaintiff Craig Brewer's claim by $3,328.00, reduced each comparable vehicle used to value Plaintiff Stacie Smith's claim by $556.00, and reduced each comparable vehicle used to value Plaintiff Regina Barrier's claim by $1,533.00, ostensibly calling these reductions a "condition adjustment." Ex. A at 10-11.

56. When using multiple comparable vehicles not listed in the report, State Farm explains the "[a]dditional [c]omparable [v]ehicles are in summary format, but are adjusted the same as those on the previous page," essentially taking this same reduction on every single comparable vehicle. *E.g.*, Ex. A at 12, and Ex. C at 12.

57. Although State Farm calls the reduction a "condition adjustment," it is not tied to the condition of the comparable vehicles or the total loss vehicle at all. It is a software-generated deduction from the retail cost of comparable vehicles.

58. Before arriving at a "Base Vehicle Valuation"[3] for the Plaintiff, Craig Brewer's claim, State Farm systematically and uniformly reduced the retail cost of each comparable vehicle by $3,328.00. Ex. A at 1, 11.

---

[3] Ex. A at 1.

59. Before arriving at a "Base Value Valuation"[4] for the Plaintiff, Stacie Smith's claim, State Farm systemically and uniformly reduced the retail cost of each comparable vehicle by $556.00. Ex. B at 1, 9.

60. Before arriving at a "Base Value Valuation"[5] for the Plaintiff, Regina Barrier, State Farm systemically and uniformly reduced the retail cost of each comparable vehicle by $1,533.00. Ex. C at 1, 11.

61. By reducing the amount of the comparable vehicles by deducting an amount for an unexplained "[c]ondition," State Farm started with an incorrect "Base Vehicle Value" amount used to pay the claims and as a result, Plaintiffs' total loss claims were illegally reduced by these condition adjustments regardless of any other adjustments.

62. Applying this mislabeled deduction to total loss claims is State Farm's routine business practice, and Plaintiffs contest this software-generated deduction on behalf of themselves and the class members.

63. Regardless of whether State Farm makes any adjustments to a claimant's total loss vehicle for condition, the Defendant still applies a software-generated deduction to the retail cost of the comparable vehicles to short total loss claims. *E.g.*, Ex. B at 6, 9.

64. Under 11 N.C. Admin. Code § 4.0418(d), insurers are required to use the retail cost of comparable vehicles to calculate vehicle total loss claims. State Farm's practice of reducing the retail cost of the comparable vehicles violates North Carolina's

---

[4] Ex. B at 1.
[5] Ex. C at 1.

total loss regulation and, under paragraph (h), therefore "deviates from this Rule." 11 N.C. Admin. Code § 4.0418 (h).

65. Accordingly, in addition to violating paragraph (d), State Farm further violates the total loss regulation by failing to state "the reason for the deviation" as required under paragraph (h).

66. Upon information and belief, State Farm does not comply with paragraph (h), which requires documentation of the basis for the reduction or the data used to arrive at a condition adjustment of comparable vehicles to be maintained "within the claim file."

67. Upon information and belief, the data used to calculate the software-generated comparable vehicle deduction is sourced from a third-party or proprietary data collected by CCC Intelligent Solutions Inc. itself. Neither the source of the data nor its parameters is disclosed to State Farm's total loss claimants. The data is unverifiable by a total loss claimant and, upon information and belief, is not maintained in State Farm's claim files.

68. State Farm's software-generated condition deduction from the retail cost of comparable vehicles is unsupported and arbitrary, as it applies the same amount to each comparable vehicle[6] regardless of the differences in mileage, options, or equipment among the comparable vehicles. *E.g.*, Ex. A at 11.

---

[6] In Plaintiff, Craig Brewer's case, State Farm applied a $3,328.00 reduction in the retail cost of each of the comparable vehicles used in calculating the toal loss claim value. Ex. A at 11. In Plaintiff, Stacie Smith's case, State Farm applied a $556.00 reduction in the retail cost of each of the comparable vehicles used in calculating the total loss claim value. Ex. B at 9. In Plaintiff Regina Barrier's case State Farm applied a $1,533.00 reduction in the retail costs of each of the comparable vehicles used in calculating the total loss claim value. Ex. C at 11.

69. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina is uniform and common business practice across all of the class members' total loss claims.

70. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina also contravenes automobile appraisal industry standards, in addition to violating total loss regulations of this State.

71. Upon information and belief, State Farm applies the same software-generated deduction to the retail cost of comparable vehicles to all of the more than ten thousand vehicle total loss claims per year in North Carolina.

72. Although the class members are likely to be owed different amounts for the impermissible comparable vehicle retail cost reduction, those amounts can be easily and precisely determined from the CCC One Reports maintained in State Farm's business records. *E.g.*, Ex. A at 11.

73. In Plaintiff Craig Brewer's case, the impermissible reduction of the retail cost of comparable vehicles reduced the amount paid by State Farm to the Plaintiff Craig Brewer by 5.5% of the correct pre-accident value of his 2021 Genesis. In Plaintiff Stacie Smith's case, the impermissible reduction of the retail costs of comparable vehicles reduced the amount paid by State Farm to the Plaintiff, Stacie Smith by 16% of the correct pre-accident value of her 2004 Mitsubishi. In Plaintiff Regina Barrier's case, the impermissible reduction of the retail costs of comparable vehicles reduced the amount paid by State Farm by 9% of the correct pre-accident value of her 2018 Jeep Wrangler. Upon

information and belief, the class-wide amounts owed equal 4% to 17% of each class member's total loss claim.

74. On behalf of themselves and on behalf of the proposed class, Plaintiffs do not contest State Farm's representations of the original stated retail price of comparable vehicles before the impermissible reductions.

75. The Plaintiffs also do not contest the value assigned for options, mileage, equipment, or preexisting damages for their vehicle or the comparable vehicles stated in the CCC One Reports provided to them and the proposed class. Rather, the Plaintiffs only contest State Farm's blanket reduction of the retail cost of comparable vehicles on behalf of themselves and the class in the manner aforementioned. Therefore, none of the total loss vehicles have to be revalued. The Plaintiffs are only seeking on behalf of themselves and others the return of the line item impermissible deduction from the retail cost of comparable vehicles, which violates North Carolina law.

76. Plaintiffs request that State Farm be required to pay the amount of the illegal reduction of the retail price of comparable vehicles stated in the CCC One Reports provided to them and the class members.

77. In short, by reducing the retail cost of the comparable vehicles used to arrive at a pre-accident value of total loss vehicles, State Farm determines the pre-accident value not by actual verifiable information in compliance with North Carolina's total loss regulation and industry standards, but by an artificial, downwardly skewed, and deflated market of its own invention.

## SUMMARY OF PLAINTIFFS' CLAIMS

78. Violations of North Carolina's Unfair Trade Practices Act. Plaintiffs assert State Farm has engaged in an unfair business practice by applying a software-generated deduction to comparable vehicles when calculating total loss claims. Plaintiffs assert the practice (a) is an unfair business practice as defined under the Act, (b) violates North Carolina's Total Loss 11 N.C. Admin. Code § 4.0418 and therefore constitutes a violation of the Act, and (c) violates North Carolina's Unfair Claims Practices Act N.C. Gen. Stat. § 58-53-65, which constitutes a violation of North Carolina's Unfair Trade Practices Act. Plaintiffs assert an Unfair Trade Practices Act claim on behalf of themselves and the class members and seek treble damages and attorney fees.

79. Declaratory Relief. On behalf of themselves and the Class Members, Plaintiffs challenge a uniform software-generated reduction of the retail cost of comparable vehicles implemented by State Farm in adjusting vehicle total loss claims and seek prospective declaratory relief prohibiting its continued use for all North Carolina residents insured by State Farm.

80. Plaintiffs assert that declaratory relief is required to prevent State Farm from violating North Carolina's total loss regulation by reducing the price of comparable vehicles as described in this First Amended Complaint and to prevent the continued unfair practice in the payment of total loss claims in North Carolina.

81. Breach of Contract. Plaintiffs each assert individual breach of contract claims and assert State Farm breached its contracts with them by applying a software-generated condition deduction to comparable vehicles when calculating their total loss claims,

resulting in underpaying their total loss claims by the amount of the condition deduction to comparable vehicles.

## CLASS ACTION ALLEGATIONS

82. The causes of action for unfair claims practices and unfair trade practices asserted herein are brought as a class action under the Federal Rules of Civil Procedure, Rules 23(a)(1)-(4) and Rules 23(b)(3) as more specifically set forth below. State Farm's conduct has been systemic and continuous, affecting a large number of State Farm automobile policyholders in North Carolina.

83. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because State Farm has acted on grounds that apply generally to the class, so that the final declaratory relief Plaintiffs seek is appropriate with respect to the class as a whole.

84. This action seeks to recover damages suffered by the Plaintiffs, and the members of the proposed class (collectively "class members"), all insureds of State Farm whose vehicle total loss claims were calculated and paid by State Farm using a CCC One Report, where the retail cost of comparable vehicles was reduced to arrive at a pre-accident value.

85. All proposed class members have fully complied with all pertinent policy provisions to receive payment under their uniform insurance policies with State Farm, and State Farm determined that coverage existed for the loss and determined the claim to be a total loss. No further performance is required by any proposed class members to secure all available benefits provided by State Farm's policies.

Class Certification Definition

86. Plaintiffs seek certification of the following class:

**Unfair Trade Practices – All North Carolina Insureds who have Received Total Loss Payments Calculated by a CCC One Report**

All persons, businesses, and entities insured by State Farm Mutual Automobile Insurance Company on an automobile policy issued in the State of North Carolina who received compensation on a claim for the total loss of their vehicles from the Defendant based on a total loss valuation generated using a CCC One Market Valuation Report, wherein the retail cost of comparable vehicles was reduced.

**Declaratory Judgment – All North Carolina Insureds**

All persons, businesses and entities insured under automobile insurance policies issued in the State of North Carolina by State Farm Mutual Automobile Insurance Company with coverage for physical damage and total loss of their covered vehicles.

87. Excluded from the Class are (a) the assigned Judge, the Judge's staff and family, and State Farm's employees, (b) claims where the insured submitted written evidence supporting a different valuation and the amount of that different valuation submitted by the insured was paid by State Farm to settle the total loss, and (c) claims where the insured executed a settlement agreement for a value agreed on between the insured and State Farm.

88. Plaintiffs reserve the right to amend the class definition as necessitated by subsequent discovery or evidence in this matter or as ordered or recommended by the Court.

Numerosity

89. Pursuant to Rule 23(a)(1), membership in the class is so numerous as to make it impractical to bring all class members before the Court. Upon information and belief,

State Farm pays more than ten thousand vehicle total loss claims to its insureds annually. Therefore, the proposed class consists of 100 or more members. The exact number of class members is unknown, but can be determined from the records maintained by the Defendant, which will allow the members of the proposed class, as well as those who are then excluded, to be easily identified.

Typicality

90. Plaintiffs, Craig Brewer, Stacie Smith and Regina Barrier are typical of members of the proposed class pursuant to Rule 23(a)(3). Plaintiffs purchased a State Farm automobile policy, paid premiums, and made a claim for loss when their insured automobiles were damaged. They each filed a claim with State Farm and made their vehicles available for a valuation and payment of the loss. State Farm then elected to declare the vehicles a total loss, but underpaid the loss based upon a valuation State Farm generated using the CCC One Market Valuation Report program by reducing the retail cost of comparable vehicles in violation of North Carolina law and in breach of State Farm's contractual obligations. Plaintiffs' interest in obtaining compensation for each of their losses (the underpayment of each of their claims compared to the amount each would have received, but for the illegal reduction of the retail cost of comparable vehicles) is identical to those of other unnamed members of the class.

Commonality

91. Pursuant to Rule 23(a)(2), there are questions of law and fact common to all members of the proposed class which predominate over any individual issues. Common questions of law and fact include, but are not limited to:

a. Whether State Farm's business practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violated North Carolina's total loss regulation, 11 N.C. Admin. Code § 4.0418.

b. If State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violated North Carolina's total loss regulation, 11 N.C. Admin. Code § 4.0418, whether this violation is a *per se* violation of the North Carolina Unfair Trade Practices Act (Chapter 75).

c. Whether paying an amount for total loss claims after calculating the amount by reducing the retail cost of comparable vehicles is a violation of the North Carolina Unfair Claim Settlement Practices Act, N.C. Gen. Stat. § 58-63-15 (11).

d. Whether State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in North Carolina contravenes automobile appraisal industry standards.

e. Whether by violating the North Carolina Unfair Claim Settlement Practices Act, State Farm violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

f. Whether State Farm's business practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is an unfair practice under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

g. Whether Plaintiffs and the class are entitled to an award of damages, including treble damages.

h. The amount by which State Farm underpaid the total loss claims of the members of the class by reducing the retail cost of comparable vehicles in calculating the pre-accident value of the total loss vehicle.

i. Whether the Plaintiffs and the class are entitled to declaratory relief.

j. Whether the Plaintiffs and the class are entitled to an award of attorney fees and costs.

<u>Adequacy Of Representation</u>

92. Plaintiffs have no interest adverse to the interests of other members of the proposed class and will fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4).

93. Plaintiffs have retained the undersigned counsel, who have been appointed as class counsel in other class actions by other federal district courts, including in the State of North Carolina, and are experienced and competent in the prosecution of class actions and complex litigation, and have the experience necessary to prosecute this case and adequate resources to prosecute this claim.

<u>Superiority</u>

94. Pursuant to Rule 23(b)(3), the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Absent a class action, State Farm's practice of paying vehicle total loss claims in North Carolina after calculating the amount by reducing the retail cost

of comparable vehicles will continue, and the class members will continue to suffer damage and State Farm's conduct will proceed without an effective remedy.

95. Individual class members of the proposed class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed class and not knowing that State Farm's practices in paying their total loss claims did not comply with regulations and as such, that they were underpaid for their total loss claims.

96. This action will allow for the orderly, fair, and expeditious administration of class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured. A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

97. This action will present no difficulties which would impede its management by this Court as a class action, and a class action is the best available means by which Plaintiffs and the members of the proposed class can seek redress for the harm caused to them by State Farm. An exact list of members of the proposed class can be generated from the business records of State Farm. State Farm's business records will show the amounts its insureds were underpaid for their total loss claims, including the line item reduction of the retail cost of comparable vehicles.

98. Accordingly, both liability and damages can be presented and proven on a class-wide basis with common evidence, and then allow a recovery to be efficiently distributed to the members of the class.

## FIRST CAUSE OF ACTION
**Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.***
**(Plaintiffs and Class)**

99. Plaintiffs and the proposed Unfair Trade Practices class members bring this cause of action against the Defendant and reallege the allegations contained in the previous paragraphs as if fully set forth herein.

100. State Farm's actions in marketing insurance, the sale of insurance, adjusting insurance claims in North Carolina, and the violation of state insurance regulations as described herein constitute business activities in and affecting commerce as defined by Chapter 75 of the North Carolina General Statutes.

101. State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is unfair as it violates North Carolina's total loss regulation, 11 N.C. Admin. Code § 4.0418 and therefore violates established public policy, is unethical, unscrupulous, and oppressive.

102. State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is unfair as it is arbitrary, self-serving and contravenes automobile appraisal industry standards and therefore violates established public policy, is unethical, unscrupulous, and oppressive.

103. State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles is unfair, as it is substantially injurious to the proposed class of North Carolina insurance consumers who received less than they would have from their total loss claim if State Farm had followed the total loss regulations of this State and followed appraisal industry standards by using the retail cost

of comparable vehicles in calculating the total loss claims of the Plaintiff and class members.

104. As a direct and proximate result of State Farm's calculation of vehicle total loss claims by reducing the retail cost of comparable vehicles used in calculating the pre-accident value of total loss vehicles, the Plaintiffs and the members of the proposed Unfair Trade Practices Class have been damaged because they received less than they would have if State Farm had followed the law and/or industry standards.

105. By virtue of its unlawful acts and/or omissions, State Farm is liable to and owes Plaintiffs and the class members the amount their vehicle total loss was reduced by the Defendant's reduction of the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles, treble damages, attorney fees and costs, together with all other damages Plaintiffs may prove as allowed by law.

**SECOND CAUSE OF ACTION**
**Unfair Claims Settlement Practices, N.C. Gen. Stat. § 58-63-15 (11) and N.C. Gen. Stat. 75-1.1, *et seq.***
**(Plaintiffs and Unfair Trade Practices Class)**

106. Plaintiffs and the proposed Unfair Trade Practices class members bring this cause of action against the Defendant and reallege the allegations contained in the previous paragraphs as if fully set forth herein.

107. State Farm's actions in marketing insurance, the sale of insurance, adjusting insurance claims in North Carolina, and the violation of state insurance regulations as described herein constitute business activities in and affecting commerce as defined by Chapter 75 of the North Carolina General Statutes.

108. State Farm's practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violates North Carolina's Unfair Claims Practices Act and North Carolina's Total Loss Regulation on Motor Vehicles, including, N.C. Gen. Stat. § 58-63-15(11)(d)(f)(g) and (h). Under North Carolina law, these violations constitute a *per se* violation of the Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

109. As a direct and proximate result of State Farm's calculation of vehicle total loss claims by reducing the retail cost of comparable vehicles used in calculating the pre-accident value of total loss vehicles, the Plaintiffs and the members of the proposed Unfair Trade Practices class have been damaged because they received less than they would have if State Farm had followed the law and industry standards.

110. By virtue of its unlawful acts and/or omissions, State Farm is liable to and owes Plaintiffs and the class members the amount their vehicle total loss was reduced by the Defendant's reduction of the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles, treble damages, attorney fees and costs, together with all other damages Plaintiffs may prove as allowed by law.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT
## (Individual Plaintiffs)

111. Plaintiffs, each individually, bring this third cause of action in their individual capacity only against the Defendant and reallege the allegations contained in the previous paragraphs as if fully set forth herein.

112. Plaintiffs each entered into a contract for automobile insurance with State Farm. Each paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.

113. State Farm's policy, at all relevant times herein, provided insurance coverage to Plaintiffs for physical damage and the total loss of their motor vehicles and provided for the payment of the pre-accident value of their vehicles in the event of a total loss.

114. The insurance contract also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in fulfilling the contract.

115. Further, State Farm was required to follow North Carolina law for the adjustment of a total loss claim of the Plaintiffs' vehicles pursuant to 11 N.C. Admin. Code § 4.0418, which was an implicit term of the contract and expressly recognized by State Farm. *E.g.*, Ex. A at 11.

116. On April 24, 2023, while driving his 2021 Genesis motor vehicle, Plaintiff, Craig Brewer, was involved in a traffic accident in Charlotte, North Carolina.

117. At the time of the accident, the Plaintiff, Craig Brewer, and the 2021 Genesis were insured under an auto policy underwritten by Defendant, State Farm (Policy # 4737-883-33).

118. On May 8, 2023, Plaintiff, Craig Brewer, filed a claim with State Farm for damage to the 2021 Genesis resulting from the April 24, 2023, accident.

119. Subsequently, State Farm determined the 2021 Genesis was a total loss and used its customized CCC One platform to calculate the pre-accident value of Mr. Brewer's 2021 Genesis.

120. State Farm presented Mr. Brewer with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. A.

121. The report stated the "Base Vehicle Value" was $56,772.00 and State Farm paid Mr. Brewer's claim based on the CCC One Market Valuation Report.

122. Unbeknownst to Mr. Brewer, in calculating the amount it was required to pay, State Farm reduced the retail cost of comparable vehicles used in the calculation, in violation of North Carolina's total loss regulation, which resulted in an impermissible reduction of the claim payment in the amount of $3,328.00.

123. Despite having received a claim in compliance with the insurance policy terms, State Farm materially breached its contract with the Plaintiff, Craig Brewer, in the adjustment of his vehicle total loss claim, in the following respects:

a. State Farm failed or refused to pay the pre-accident value of the Plaintiff, Craig Brewer's vehicle and underpaid the claim;

b. State Farm failed to follow the required valuation criteria set forth in 11 N.C. Admin. Code § 4.0418 when adjusting the claim, including but not limited to reducing the retail cost of comparable vehicles in the calculation of the total loss claim valuation;

c. Applying a software-generated deduction to the retail cost of comparable to determine the amount to pay his total loss claim;

d. Failing to pay the correct amount for his damaged total loss vehicle and diverting funds to an unauthorized loss payee; and

e. In other respects, to be discovered at trial.

124. As the direct and proximate result of the foregoing material breaches by State Farm, the Plaintiff, Craig Brewer, has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $3,328.00 and in other amounts to be determined at a trial of this matter.

125. On September 26, 2022, while driving her 2004 Mitsubishi motor vehicle, Plaintiff, Stacie Smith, was involved in a traffic accident in Charlotte, North Carolina.

126. At the time of the accident, the Plaintiff, Stacie Smith, and the 2004 Mitsubishi were insured under an auto policy underwritten by Defendant, State Farm (Policy # 032 4954-B01-33I).

127. On October 5, 2022, Plaintiff, Stacie Smith, filed a claim with State Farm for damage to the 2004 Mitsubishi resulting from the September 26, 2022, accident.

128. Subsequently, State Farm determined the 2004 Mitsubishi was a total loss and used its customized CCC One platform to calculate the pre-accident value of Ms. Smith's 2004 Mitsubishi.

129. State Farm presented Ms. Smith with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. B.

130. The report stated the "Base Vehicle Value" was $2,882.00 and State Farm paid Ms. Smith's claim based on the CCC One Market Valuation Report.

131. Unbeknownst to Ms. Smith, in calculating the amount it was required to pay, State Farm reduced the retail cost of comparable vehicles used in the calculation in violation of North Carolina's total loss regulation, which resulted in an impermissible reduction of the claim payment in the amount of $556.00.

132. Despite having received a claim in compliance with the insurance policy terms, State Farm materially breached its contract with the Plaintiff, Stacie Smith, in the adjustment of her vehicle total loss claim, in the following respects:

a. State Farm failed or refused to pay the pre-accident value of the Plaintiff, Stacie Smith's vehicle and underpaid the claim;

b. State Farm failed to follow the required valuation criteria set forth in 11 N.C. Admin. Code § 4.0418 when adjusting the claim, including but not limited to reducing the retail cost of comparable vehicles in the calculation of the total loss claim valuation;

c. Applying a software-generated deduction to the retail cost of comparable vehicles to determine the amount to pay her total loss claim; and

d. In other respects, to be discovered at trial.

133. As the direct and proximate result of the foregoing material breaches by State Farm, the Plaintiff, Stacie Smith, has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $556.00 and in other amounts to be determined at a trial of this matter.

134. On June 16, 2025, while driving her 2018 Jeep Wrangler motor vehicle, Plaintiff, Regina Barrier, was involved in a traffic accident in Granite Falls, North Carolina.

135. At the time of the accident, the Plaintiff, Regina Barrier, and the 2018 Jeep Wrangler were insured under an auto policy underwritten by Defendant, State Farm (Policy # 158 1169-B08-33C).

136. On August 26, 2025, Plaintiff, Regina Barrier, filed a claim with State Farm for damage to the 2018 Jeep Wrangler resulting from the June 16, 2025, accident.

137. Subsequently, State Farm determined the 2018 Jeep Wrangler was a total loss and used its customized CCC One platform to calculate the pre-accident value of Ms. Barrier's 2018 Jeep Wrangler.

138. State Farm presented Ms. Barrier with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. C.

139. The report stated the "Base Vehicle Value" was $14,995.00 and State Farm paid Ms. Barrier's claim based on the CCC One Market Valuation Report.

140. Unbeknownst to Ms. Barrier, in calculating the amount it was required to pay, in violation of North Carolina's total loss regulation, State Farm reduced the retail cost of comparable vehicles used in the calculation, which resulted in an impermissible reduction of the claim payment in the amount of $1,533.00.

141. Despite having received a claim in compliance with the insurance policy terms, State Farm materially breached its contract with the Plaintiff, Regina Barrier, in the adjustment of her vehicle total loss claim, in the following respects:

a. State Farm failed or refused to pay the pre-accident value of the Plaintiff, Regina Barrier's vehicle and underpaid the claim;

b. State Farm failed to follow the required valuation criteria set forth in 11 N.C. Admin. Code § 4.0418 when adjusting the claim, including but not limited to reducing the retail cost of comparable vehicles in the calculation of the total loss claim valuation; and

c. In other respects, to be discovered at trial.

142. As the direct and proximate result of the foregoing material breaches by State Farm, the Plaintiff, Regina Barrier, has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $1,533.00 and in other amounts to be determined at a trial of this matter.

**WHEREFORE**, Plaintiffs and the proposed class members respectfully pray that the Court:

1. Enter an order certifying this action as a class action as to the first and second causes of action made herein, including certifying the causes of action under the appropriate subsection of Fed. R. Civ. P.23;

2. Enter an order appointing Plaintiffs, Craig Brewer, Stacie Smith and Regina Barrier, as class representatives and appointing the undersigned counsel to represent the class;

3. Enter judgment in favor of Plaintiffs and the class members against State Farm for unfair trade practices in an amount to be determined at trial, including treble damages;

4. Enter judgment in favor of Plaintiffs individually for compensatory damages resulting from State Farm's breach of contract in the amount of underpayment to Plaintiffs as measured by the amount the payment was reduced by the impermissible reduction of the

retail cost of comparable vehicles in calculating the value of his total loss claim and other damages to be determined at trial;

5. Enter an order for declaratory judgment and injunctive relief as requested under 28 U.S.C. §§ 2201–2202, Fed. R. Civ. P. 57, and Fed.R.Civ.P.23(b)(2) prohibiting State Farm from using the software-generated condition adjustments to comparable vehicles in the payment of total loss claims in North Carolina;

6. Enter an award of attorney's fees and costs, as provided by law and/or as would be reasonable from a recovery of monies recovered for or benefits to the Plaintiffs and class;

7. Tax the cost of this action against State Farm;

8. Grant such other and further relief as the Court may deem just and proper; and

9. Grant the Plaintiffs and class members a jury trial.

August 20, 2026.

HEMMINGS & STEVENS, PLLC

*/s/ Aaron C. Hemmings*

Aaron C. Hemmings, NC Bar No.: 29810
Kelly A. Stevens, NC Bar No.: 27066
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
Fax: (919) 277-0162
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on August 20, 2026, I electronically filed the foregoing First Amended Class Action Complaint with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and notification of such filing to the CM/ECF participants registered to receive service in this case.

*/s/ Aaron C. Hemmings*
*Attorney for the Plaintiffs*