**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| CRAIG BREWER, STACIE SMITH, and REGINA BARRIER, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:25-cv-00904-CCE-JGM |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................ 3

A. The Relevant Policy Provisions and Total Loss Settlements. ....................... 3

1. Brewer's Total Loss Settlement. ....................................................... 4

2. Smith's Total Loss Settlement. ......................................................... 4

3. Barrier's Total Loss Settlement. ....................................................... 5

B. CCC's Valuation Reports and the Condition Adjustment. ........................... 5

C. This Lawsuit and the Filing of the Amended Complaint. ............................ 9

ISSUES PRESENTED ............................................................................... 10

ARGUMENT .............................................................................................. 11

A. Plaintiffs Fail to State Plausible Claims Under the UDTPA (Count I) and the UCSPA (Count II). ........................................................................ 11

B. Plaintiffs Lack Standing to Seek a Declaratory Judgment Against State Farm and Cannot Represent the Proposed Declaratory Judgment Class. ........................................................................................ 17

C. As a Lessee, Brewer Must Be Dismissed Because He Lacks Article III Injury. ........................................................................................ 19

CONCLUSION .......................................................................................... 22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Am. Whitewater v. Tidwell*,
770 F.3d 1108 (4th Cir. 2014) .......... 17

*Auto-Owners Ins. Co. v. Madison at Park W. Prop. Owners Ass'n*,
495 F. App'x 383 (4th Cir. 2012) .......... 17

*AvePoint, Inc. v. Knickerbocker*,
475 F. Supp. 3d 483 (E.D. Va. 2020) .......... 18

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020) .......... 22

*Bagley v. Wells Fargo Bank, N.A.*,
2013 U.S. Dist. LEXIS 11880 (E.D. Va. Jan. 29, 2013) .......... 19

*Brown Goldstein Levy LLP v. Fed. Ins. Co.*,
68 F.4th 169 (4th Cir. 2023) .......... 3

*Clippinger v. State Farm Automobile Insurance Co.*,
173 F.4th 817 (6th Cir. 2026) .......... 14

*Cole v. N.C. Dep't of Pub. Safety*,
253 N.C. App. 270 (2017) .......... 12

*Dinicola-Ortiz v. GEICO Indem. Co.*,
2026 U.S. Dist. LEXIS 194540 (D.N.J. Aug. 28, 2026) .......... 14

*Drummond v. Progressive Specialty Insurance Co.*,
142 F.4th 149 (3d Cir. 2025) .......... 14

*Ellis v. State Farm Mut. Auto. Ins. Co.*,
2026 U.S. Dist. LEXIS 150639 (M.D. Fla. July 8, 2026) .......... 22

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
987 F.3d 102 (4th Cir. 2021) .......... 21

*Fortson v. Garrison Prop. & Cas. Ins. Co.*,
2022 U.S. Dist. LEXIS 14520 (M.D.N.C. Jan. 13, 2022) .......... 16

*Freeman v. Progressive Direct Ins. Co.*,
149 F.4th 461 (4th Cir. 2025) .......... 14, 20, 22

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) .................................................................... 3, 20

*Lara v. First National Ins. Co. of America*,
25 F.4th 1134 (9th Cir. 2022) ........................................................................ 14

*Lemons v. Old Hickory Council*,
322 N.C. 271 (1988) ........................................................................................ 12

*Midrex Techs. v. N.C. Dep't of Revenue*,
369 N.C. 250 (2016) ........................................................................................ 13

*Norem v. Lincoln Benefit Life Ins. Co.*,
737 F.3d 1145 (7th Cir. 2013) ........................................................................ 13

*Port City Logistics, Inc. v. Chasewater Logistics, LLC*,
2024 U.S. Dist. LEXIS 146366 (W.D.N.C. July 17, 2024)........................................ 18

*Richardson v. Progressive,*
2022 U.S. Dist. LEXIS 8783 (M.D. Fla. Jan. 18, 2022)....................................... 18, 19

*SAS Inst., Inc. v. World Programming Ltd.*,
874 F.3d 370 (4th Cir. 2017) .......................................................................... 21

*Signor v. Safeco Ins. Co. of Ill.*,
72 F.4th 1223 (11th Cir. 2023) ........................................................... 13, 15, 16

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
386 F.3d 581 (4th Cir. 2004) .......................................................................... 17

**STATUTES AND REGULATIONS**

Fla. Stat. § 626.9743 ........................................................................................ 15

11 N.C. Admin. Code § 4.0418 ................................................................... *passim*

**OTHER AUTHORITIES**

*Base*, Black's Law Dictionary (12th Ed. 2024)................................................. 13

*Base*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/base
(last visited Sept. 2, 2026)................................................................................ 13

# **INTRODUCTION**

In a futile attempt to salvage this lawsuit, Plaintiff Craig Brewer filed the Amended Complaint to add two new named Plaintiffs (and putative class representatives), Regina Barrier and Stacie Smith. Essentially, Brewer is trying to avoid the effect of a Fourth Circuit opinion that forecloses his standing. Beyond Brewer's lack of standing, however, the Amended Complaint is fatally flawed because it relies on a reading of North Carolina's total loss regulation that the regulation itself does not support and which the Eleventh Circuit has rejected in a case involving the CCC condition adjustment and a similarly phrased Florida statute.

As explained below, the plain language of the relevant North Carolina total loss regulation that forms the basis of Plaintiffs' Unfair and Deceptive Trade Practices Act ("UDTPA") and Unfair Claim Settlement Practices Act ("UCSPA") claims, 11 N.C. Admin. Code § 4.0418, does not mandate any specific methodology or process for calculating the actual cash value ("ACV") of a total loss vehicle. Instead, the regulation says only that the total loss settlement must be "***based upon***" comparable vehicles—that is, the settlement valuation must originate from, or be derived from, comparable vehicles. Nothing in the regulation forbids a condition adjustment after those comparable vehicles have been identified. To the contrary, the regulation expressly contemplates that adjustments, including adjustments for condition, may be made during the valuation process. In short, the Amended Complaint's premise that the CCC condition adjustment is

unlawful cannot stand. This means that dismissal of the principal counts in the Amended Complaint is warranted.

The Amended Complaint is defective for additional reasons. First, Plaintiffs seek declaratory relief on both an individual and a class-wide basis, yet they allege only past harm arising from completed total loss settlements. Because Plaintiffs' total loss settlements arise from past conduct and because any claim for future (alleged) injury (i.e., a future accident that results in a total loss and State Farm's use of the CCC condition adjustment as part of the determination of ACV) is unduly speculative, Plaintiffs thus lack Article III standing to pursue declaratory relief on behalf of themselves or any putative class.

Second, Brewer lacks standing based on his undisputed status as a lessee of the total loss vehicle and Fourth Circuit precedent. Given Brewer's lessee status, State Farm paid ACV to the lessor (Genesis Finance) pursuant to the terms of the lease agreement and State Farm's practices. The same thing happened when State Farm later issued an additional total loss payment following the Court-ordered appraisal: under both the lease agreement and the settlement documents governing the total loss claim, State Farm made that payment to Genesis Finance, not Brewer. Because Brewer was never himself entitled to receive ACV and would not receive any recovery now, he lacks an injury-in-fact for Article III standing purposes.

## FACTUAL BACKGROUND

### A. The Relevant Policy Provisions and Total Loss Settlements.

Brewer, Smith, and Barrier insured their vehicles with State Farm. Ex. A ("Diffley Decl.") ¶¶ 4–6, Exs. 1 (Brewer Policy Booklet); 2 (Smith Policy Booklet); 3 (Barrier Policy Booklet). In each of Plaintiffs' Policies, State Farm's liability is limited to "the lesser of" either "[a]ctual cash value of the [] damaged property; or [the] [a]mount necessary to repair or replace the property with other property of like kind and quality."[1] Brewer Policy Booklet, at 15–16; *see also* Smith Policy Booklet, at 15–16; Barrier Policy Booklet, at 15–16. The Policies also contemplate "[a]n adjustment for depreciation and physical condition [that] will be made in determining actual cash value at the time of loss." Brewer Policy Booklet, at 16; Smith Policy Booklet, at 16; Barrier Policy Booklet, at 16.

During the term of their Policies with State Farm, each named Plaintiff was in an accident that resulted in his or her vehicle being declared a total loss. Dkt. 28 (Am. Compl.) ¶¶ 24–27; 30–34; 37–41. They each thereafter received and accepted a settlement payment

---

[1] Plaintiffs did not attach their Policies or related records from their total loss settlements to the Amended Complaint. The Court may nonetheless consider these documents on a motion to dismiss without converting the motion to one for summary judgment. *Brown Goldstein Levy LLP v. Fed. Ins. Co.*, 68 F.4th 169, 174 (4th Cir. 2023). As further discussed below, given State Farm's factual challenge to Brewer's Article III standing, for purposes of evaluating the Court's jurisdiction over Brewer's claims, documents and facts outside the pleadings may be considered without converting this motion to a motion for summary judgment. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see also* note 10.

for their total loss vehicles. *Id.* ¶¶ 28, 35, 42; Dkts. 28-1 (Brewer CCC Report); 28-2 (Smith CCC Report); 28-3 (Barrier CCC Report).

**1. Brewer's Total Loss Settlement.**

Brewer insured his leased 2021 Genesis with State Farm. On April 24, 2023, the vehicle was damaged and later deemed a total loss. Am. Compl. ¶¶ 23–26. Ultimately, State Farm valued Brewer's vehicle at $56,772. *Id.* ¶ 28. Because Brewer was a lessee, State Farm settled the total loss claim with Genesis Finance, the lessor. Diffley Decl. ¶ 7, Ex. 4. Under Brewer's lease agreement, Genesis Finance was entitled to "all insurance proceeds for the physical damage to or loss of the Vehicle." Ex. 4, § 20(C). Genesis Finance agreed to settle the total loss claim for the vehicle with State Farm for $56,272, representing ACV minus the deductible, and retained its "entitle[ment] [to] the proceeds of any other insurance with respect to the vehicle." Diffley Decl. ¶ 8, Ex. 5.

**2. Smith's Total Loss Settlement.**

Smith insured her 2004 Mitsubishi Outlander LS with State Farm. Am. Compl. ¶ 30. State Farm declared her vehicle a total loss and, using CCC, determined the ACV of her vehicle was $2,761. *See* Smith CCC Report. State Farm sent Smith a settlement letter on December 9, 2022, where it offered to settle Plaintiff Smith's total loss claim for $2,688.58, which was calculated based upon the $2,761 ACV amount, plus taxes ($82.83)

and title transfer fees ($94.75), and minus the deductible ($250). Diffley Decl. ¶ 9, Ex. 6. Smith agreed to the settlement, and State Farm paid her that amount.

### 3. Barrier's Total Loss Settlement.

Barrier insured a 2018 Jeep Wrangler JK Unlimited with State Farm. Am. Compl. ¶¶ 37–38. The vehicle was declared a total loss after an accident and State Farm, using CCC, determined the ACV of her vehicle to be $16,885. *See* Barrier CCC Report. This amount exceeded the amount of the lien on Barrier's vehicle, and State Farm sent Barrier a letter, which outlined the different payout options available to her and the lienholder if she decided to retain the vehicle or surrender it. Diffley Decl. ¶ 10, Ex. 7. With permission from the lienholder, Barrier decided to retain her vehicle as salvage. *Id.* ¶ 11, Ex. 8. State Farm then sent Barrier a final settlement letter on October 2, 2025, which contained the details of the settlement. After adding taxes ($506.55) to the ACV amount ($16,885) and subtracting the amount for owner retained salvage ($8,000) and the deductible ($100), State Farm paid Barrier's lienholder $9,291.55. *Id.* ¶ 12, Ex. 9. Barrier accepted the settlement offer and State Farm issued payments consistent with the lien terms and Barrier's decision to retain the salvage vehicle.

## B. CCC's Valuation Reports and the Condition Adjustment.

As part of the valuation process for each of Plaintiffs' total loss settlements, State Farm relied on CCC One Market Valuation Reports as part of determining ACV. *See* Brewer CCC Report; Smith CCC Report; Barrier CCC Report. CCC is a leading

independent vehicle valuation company that provides valuation services to State Farm for total loss claims.

State Farm provided CCC with information about each of Plaintiffs' total loss vehicles. CCC then, *using comparable vehicles*, established a "Base Vehicle Value" that would reflect the value of a comparable vehicle to the insured's vehicle immediately before it was declared a total loss. Brewer CCC Report, at 1; Smith CCC Report, at 1; Barrier CCC Report, at 1. To do so, CCC reviews its "extensive database of vehicles" to identify comparable vehicles "similar to the loss vehicle based on relevant factors."[2] Brewer CCC Report, at 2; Smith CCC Report, at 2; Barrier CCC Report, at 2. Because no dealer-listed vehicle is perfectly comparable to the total loss vehicle in terms of attributes, mileage, options, or condition, to reach a proper Base Vehicle Value, the comparable vehicles are adjusted. One adjustment made to arrive at the Base Vehicle Value is the condition adjustment, which accounts for the difference in condition between the comparable vehicles (which are often listed for sale on dealers' lots) and the pre-loss condition of a vehicle driven by a private party (i.e., the insured). Brewer CCC Report, at 10 (explaining that the condition adjustment "sets that comparable vehicle to Average Private condition,

---

[2] The resulting CCC reports reflect a detailed description of each comparable vehicle, the location of the dealership, and the advertised price of the vehicle. Brewer CCC Report, at 9–11; Smith CCC Report, at 8–9; Barrier CCC Report, at 8–10. It also lists dozens of options (e.g., automatic transmission, 4-wheel drive, power steering, etc.) to assess the difference in features between the comparable vehicles and the total loss vehicle. *Id*.

which the loss vehicle is also compared to in the Vehicle Condition section"); Smith CCC Report, at 8 (same); Barrier CCC Report, at 10 (similar).

As noted above, dealer-listed vehicles will often be in better condition—because dealers have obvious incentives to make improvements to them before listing them for sale—than a privately owned (i.e., the average insured's) vehicle, which is often subject to normal wear-and-tear from personal use. To help accurately determine ACV (i.e., the pre-loss fair market value of the insured's vehicle), the condition adjustment is applied to compare these dealer-listed vehicles with the privately-owned total loss vehicle. Put differently, the condition adjustment logically reflects the difference between a dealer-ready vehicle for sale versus a privately-owned vehicle. CCC then takes the comparable vehicles and creates a weighted average to arrive at the Base Vehicle Value. Brewer CCC Report, at 2; Smith CCC Report, at 2; Barrier CCC Report, at 2.

After determining the Base Vehicle Value—which, again, is calculated based on the substantially similar vehicles located by CCC—CCC then turns to the total loss vehicle itself. This assessment, which is distinct from the condition adjustment applied to the comparable vehicles, adjusts for individual components of the total loss vehicle. For example, CCC accounts for the total loss vehicle's interior components (seats, carpets, dashboard, headliner), exterior components (sheet metal, trim, paint, and glass), mechanical components (engine and transmission), and tires (front and rear). Brewer CCC Report, at 7–8; Smith CCC Report, at 6–7; Barrier CCC Report, at 6–7. These assessments are made on an individualized basis, with determinations as to the condition of each

component (i.e., "Good," "Very Good"; "Fair," "Average Private," etc.). Dollar adjustments, which can be positive or negative, are applied where the total loss vehicle's components differ from the common condition baseline (which is set to "Good" or "Average Private"). This can (and does) often yield an upward adjustment, but it can also yield a downward adjustment. Whether the adjustment is upward or downward, however, depends entirely on the individual components of the total loss vehicle.

Here, for Brewer's total loss claim, CCC applied a $3,328 condition adjustment to the comparable vehicles to put them in "Average Private" (as opposed to "Dealer Ready") condition and arrive at the Base Vehicle Value. After the Base Vehicle Value was determined, CCC then turned to the individual components of Brewer's vehicle and determined each component was in "Average Private" condition, so no additional adjustment was needed. Brewer CCC Report, at 7–11. In Smith's valuation, CCC applied a $556 condition adjustment to the comparable vehicles to put them in "Average Private" condition and reach the Base Vehicle Value. After the Base Vehicle Value was determined, CCC looked at the individual components of Smith's vehicle and determined a $121 downward adjustment was needed because Smith's vehicle's seats and trim were in only "Fair" (as opposed to "Good") condition. Smith CCC Report, at 6–9. For Barrier's valuation, CCC applied a $1,533 condition adjustment to the comparable vehicles to put them in "Good" (which is equivalent to "Average Private") condition for purposes of the Base Vehicle Value. After the Base Vehicle Value was determined, CCC looked at the individual components of Barrier's vehicle and determined that all components of Barrier's

vehicle were otherwise in "Good" condition, so no additional adjustment was needed. Barrier CCC Report, at 6–11.

### C. This Lawsuit and the Filing of the Amended Complaint.

On October 3, 2025, Brewer filed this suit. *See* Dkt. 1. On November 25, 2025, State Farm moved to dismiss and to compel appraisal under Brewer's Policy. Dkt. 10. On February 25, 2026, the Court denied State Farm's motion to dismiss but compelled appraisal.[3] Dkt. 18. Brewer and State Farm then selected an appraiser and, on May 6, 2026, the appraisers agreed on an award, thereby (and per the terms of the Policy) setting ACV at $62,000. Diffley Decl. ¶ 13, Ex. 10; Brewer Policy Booklet, at 16.

State Farm informed Brewer about its intent to send the additional payment to Genesis Finance following the appraisal award, and encouraged Brewer to dismiss this suit based on his lack of standing as a lessee. Diffley Decl. ¶ 14. Brewer, however, refused to acknowledge his lack of standing and instead filed the Amended Complaint.

The Amended Complaint adds two new named Plaintiffs (Smith and Barrier) and asserts a new putative class consisting of "All North Carolina Insureds" requesting

---

[3] Smith's and Barrier's Policies also include an appraisal clause, which "allows either party the option to 'demand an appraisal' when the parties do not agree on the amount of the loss." Dkt. 18, 12; *compare* Brewer Policy Booklet, at 16 *with* Smith Policy Booklet, at 16; Barrier Policy Booklet, at 16. In light of the Court's prior ruling on State Farm's demand for appraisal, Plaintiffs have agreed to appraisal as to Smith's and Barrier's total loss vehicles. Once appraisal has been completed, the individual breach of contract claims brought by Smith and Barrier—which are not subject to this motion to dismiss—will be moot and subject to dismissal, like Brewer's is now. *See* Section C, at 21–22.

declaratory relief ("Declaratory Judgment Class"). Am. Compl. ¶¶ 7–8, 86. Plaintiffs now seek certification of two classes: (1) an alleged Unfair Trade Practices class, which includes North Carolina State Farm insureds "who received compensation on a claim for the total loss of their vehicles from [State Farm] based on a total loss valuation generated using a CCC One Market Valuation Report, wherein the retail cost of comparable vehicles was reduced"; and (2) a Declaratory Judgment Class, which includes all State Farm insureds in North Carolina "with coverage for physical damage and total loss of their covered vehicles." *Id*. ¶ 86.

In addition to these asserted classes, the Amended Complaint contains causes of action under the UDTPA, the UCSPA, and (on an individual basis only) for breach of contract. Am. Compl. ¶¶ 99–142. Plaintiffs also request declaratory relief "to prevent State Farm from violating North Carolina's total loss regulation" through the condition adjustment, "and to prevent the continued unfair practice in the payment of total loss claims in North Carolina." *Id*. ¶ 80.

## **ISSUES PRESENTED**

I. Do Plaintiffs state plausible claims for relief under the UDTPA or the UCSPA?

II. Do Plaintiffs have standing to bring their claims for declaratory relief or assert these claims on behalf of the Declaratory Judgment Class?

III. Should Brewer's claims be dismissed because he leased his vehicle and because his claims are moot following the Court-ordered appraisal?

## ARGUMENT

### A. Plaintiffs Fail to State Plausible Claims Under the UDTPA (Count I) and the UCSPA (Count II).[4]

All three Plaintiffs assert claims under the UDTPA and the UCSPA based on alleged violations of North Carolina's total loss regulation, 11 N.C. Admin. Code § 4.0418.[5] Am. Compl. ¶¶ 101, 108. But, as a matter of ordinary statutory interpretation, their claims fail. Moreover, at least one appellate court—the Eleventh Circuit in a published decision involving an insurer's use of the CCC condition adjustment and a similarly phrased Florida statute—has expressly rejected Plaintiffs' theory.

Acknowledging that the valuation of a total loss vehicle may be adjusted for its condition, Plaintiffs allege that State Farm still violates the total loss regulation by using the condition adjustment to "reduc[e] the value of comparable vehicles." Am. Compl. ¶ 50; *see also id.* at ¶¶ 52–53. But the total loss regulation does not prohibit such adjustments.

It is well-established that, when the plain language of a statute is clear and unambiguous, "there is no room for judicial construction," and courts must give the statute

---

[4] Recognizing the Court's prior rulings, State Farm does not reassert the arguments that the Court has already rejected at this stage of the proceedings. *See generally* Dkt. 18. State Farm does not waive any right to assert those arguments—as the Court contemplated (*id.* at 10)—in subsequent stages, if any.

[5] The Court has noted that this regulation is "consider[ed] prima facie violative of [the UCSPA]" and that violations of the UCSPA "have been held to be unfair and deceptive trade practices." Dkt. 18, 9.

(or regulation) its plain and ordinary meaning.[6] *Cole v. N.C. Dep't of Pub. Safety*, 253 N.C. App. 270, 278 (2017) (quoting *Lemons v. Old Hickory Council*, 322 N.C. 271, 276 (1988)). Under the plain language and ordinary meaning of the regulation, the condition adjustment (as it is alleged by Plaintiffs in the Amended Complaint) does not violate the total loss regulation.

In relevant part, the total loss regulation states:

> If the insurance company and the claimant are unable to reach an agreement as to the actual cash value of the total loss motor vehicle, ***the settlement offer shall be based upon the following values***: (1) The published regional average values of substantially similar motor vehicles; and (2) The retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area.

11 N.C. Admin. Code § 4.0418(d) (emphasis added).

This regulation says that an insurer, if it is "unable to reach an agreement" with an insured, must pay ACV for total loss claims "based upon" certain values. *Id*. Nothing in the regulation, however, dictates every detail of the methodology for, or the process of, determining ACV. Instead, it provides only that any settlement offer must "***be based upon***" "substantially similar motor vehicles." *Id*. (emphasis added).

---

[6] *Cole* itself interprets an administrative regulation, and the North Carolina Supreme Court "has applied the rules of statutory construction to administrative regulations as well as statutes." 253 N.C. App. at 278.

Though the phrase "based upon" is undefined in the regulation, the ordinary meaning of the phrase is easily discerned. *Midrex Techs. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258 (2016) ("In determining the plain meaning of undefined terms, this Court has used standard, nonlegal dictionaries as a guide.") (citation modified). To be "based upon" something is "to find a foundation or basis for" and "[t]o make, form, or serve as a base for" an object or subject. *Base*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/base (last visited Sept. 2, 2026); *Base*, Black's Law Dictionary (12th Ed. 2024) ("[To] serve as a foundation for" and "[t]o use (something) as the thing from which something else is developed").

In view of the above-quoted definitions, and using well-established principles of statutory interpretation, the total loss regulation thus speaks to where insurers must ***begin*** their valuation analysis for a settlement offer. Insurers, per the regulation's plain language and ordinary meaning, must use "substantially similar motor vehicles" as the foundation or starting point. *See generally Signor v. Safeco Ins. Co. of Ill.*, 72 F.4th 1223 (11th Cir. 2023); *accord Norem v. Lincoln Benefit Life Ins. Co.*, 737 F.3d 1145, 1149-50 (7th Cir. 2013) (construing the phrase "based on" and explaining that "no one would suppose that a cake recipe 'based on' flour, sugar, and eggs must be limited *only* to those ingredients").

Plaintiffs' own allegations in the Amended Complaint support the conclusion that, consistent with the above, State Farm's use of the CCC Market Valuation Reports and the methodology used to calculate ACV comport with the plain language and ordinary meaning of the relevant regulation. Indeed, the CCC reports provided to Plaintiffs start by

identifying comparable vehicles (i.e., "substantially similar motor vehicles"). *See* Brewer CCC Report; Smith CCC Report; Barrier CCC Report. Because a dealer-listed vehicle will typically be in at least somewhat better condition than a private party's vehicle, CCC applies the condition adjustment as one step in the process. But this condition adjustment as applied to comparable vehicles does not change the fact that the "foundation" or "basis" of the ACV determination consists of those comparable vehicles identified by CCC, which is completely consistent with the regulation. Put differently, the use of a condition adjustment (or the application of some other adjustment, such as mileage or options) does not alter the fact that the total loss settlements offered to Plaintiffs are indisputably "based upon" comparable, "substantially similar" vehicles.

In an Eleventh Circuit case[7] involving another insurer's use of CCC, the plaintiff argued that the insurer had breached the policy by violating a Florida total-loss statute.

---

[7] As the Court is well-aware, there have been numerous putative class actions across the country challenging insurers' total loss settlement practices. The great majority of federal appellate courts, including the Fourth Circuit, have rejected class certification in these cases, holding that (regardless of the particular methodology at issue) the determination of ACV (i.e., fair market value) is an inherently individualized issue and thus inappropriate for potential class-wide resolution. Notably, the District of New Jersey recently dismissed a putative class action involving CCC and the condition adjustment. *See Dinicola-Ortiz v. GEICO Indem. Co.*, No. 22-CV-6228 (RMB) (MJS), 2026 U.S. Dist. LEXIS 194540 (D.N.J. Aug. 28, 2026). The *Dinicola-Ortiz* court applied the reasoning from *Drummond v. Progressive Specialty Insurance Co.*, 142 F.4th 149 (3d Cir. 2025), *Clippinger v. State Farm Automobile Insurance Co.*, 173 F.4th 817 (6th Cir. 2026), *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461 (4th Cir. 2025), and *Lara v. First National Ins. Co. of America*, 25 F.4th 1134 (9th Cir. 2022) and concluded that it was "nearly identical to [the CCC condition adjustment] claims here," which meant that "[t]he

*Signor*, 72 F.4th at 1226. Like the North Carolina total loss regulation at issue here, the Florida statute at issue in *Signor* required that "[c]laim settlement practices relating to motor vehicle insurance" be "***based upon*** the actual cost to purchase a comparable." Fla. Stat. § 626.9743(5)(a); *compare* 11 N.C.A.C. § 4.0418(d) ("[T]he settlement offer [for the total loss vehicle] shall be ***based upon*** [] substantially similar motor vehicles."). In relevant part, the plaintiff in *Signor* argued that the insurer had violated the Florida statute through the application of condition adjustments to comparable vehicles. 72 F.4th at 1228.

The Eleventh Circuit rejected the plaintiff's argument. *Id.* at 1229–30. In interpreting the phrase "based upon," the Eleventh Circuit explained the Florida statute required only that "the insurer calculate[] actual cost from one of the three authorized methods[.]" 72 F.4th at 1229–30. The Eleventh Circuit went on to hold that while an insurance settlement must "*originate* from one of the three enumerated methods," the Florida statute permitted "adjust[ments] [to] that value to determine the cash settlement amount." *Id.* at 1229–30 (emphasis added). "The statute does not require that a settlement based upon the vehicle's actual cost be equal to the actual cost to purchase a comparable vehicle." *Id.* at 1230. Thus, the Eleventh Circuit held that the use of "the [] Condition Adjustment . . . is not prohibited by the [Florida] statute." *Id.*

---

exact same individualized inquiries prohibiting class treatment in *Drummond* prohibit class treatment here." *Id.* at *11–12. The *Dinicola-Ortiz* court also rejected the plaintiff's statutory arguments because "[w]ithout resulting damages—that is, a payment below ACV—the breach is not actionable." *Id.* at *15.

Likewise here, under the similarly phrased North Carolina regulation, ACV for a total loss claim is "based upon" substantially similar comparable vehicles. CCC, as explained above, conducts a "Search for Comparables" and chooses "[c]omparable vehicles [that] are similar to the loss vehicle based on relevant factors." Brewer CCC Report, at 2; Smith CCC Report, at 2; Barrier CCC Report, at 2. Consistent with the total loss regulation, these "substantially similar motor vehicles" are the beginning (and thus form part of the foundation) of the methodology to help determine ACV. "[A]djust[ments] [to] that value" made on account of differences between the typical condition of dealer-ready vehicles and that of privately owned vehicles do not violate the total loss regulation. *Signor*, 72 F.4th at 1229–30. Indeed, without any limitation, the regulation expressly contemplates that there may be "adjust[ments] for condition, options, equipment, and mileage, less the cost of unrepaired damage that pre-existed the accident."[8] 11 N.C. Admin. Code § 4.0418(e).

Thus, because Plaintiffs' total loss settlements are "based upon" the comparable vehicles, the condition adjustment subsequently made does not violate the total loss regulation. The condition adjustment applied to comparables, as the theory and alleged

---

[8] In fact, this Court has recognized that the use of CCC reports in total loss settlements is consistent with North Carolina law, and that regulators in several other states have expressly approved or endorsed the use of CCC reports under those states' insurance laws. *Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19-CV-294, 2022 U.S. Dist. LEXIS 14520, at *14–15 (M.D.N.C. Jan. 13, 2022) (Eagles, J.) (noting that "regulators in a number of other states have explicitly approved or endorsed the use of CCC Information Services to value total loss claims").

facts are asserted by Plaintiffs in the Amended Complaint, is perfectly lawful. Plaintiffs have failed to state a claim for relief under the UDTPA or the UCSPA.

### B. Plaintiffs Lack Standing to Seek a Declaratory Judgment Against State Farm and Cannot Represent the Proposed Declaratory Judgment Class.

Plaintiffs also seek declaratory relief "on behalf of a proposed prospective class of State Farm insureds that will be harmed on future claims if State Farm's practice continues without challenge." Am. Compl. ¶ 5, *see also id*. ¶ 79–80, 86. But Plaintiffs lack Article III standing to assert such a claim.

One of the "essentials" for jurisdiction in a declaratory judgment proceeding is that "an actual controversy [must] exist[] between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment[.]" *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc*., 386 F.3d 581, 592 (4th Cir. 2004); *see also Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1119 (4th Cir. 2014) (requiring the "controversy [be] of sufficient immediacy and reality as to warrant the issuance of a declaratory judgment") (citation modified). Otherwise, resolution of the declaratory relief claim is an advisory opinion "addressing a question that is not in actual dispute." *Am. Whitewater*, 770 F.3d at 1120; *see also Auto-Owners Ins. Co. v. Madison at Park W. Prop. Owners Ass'n*, 495 F. App'x 383, 388 (4th Cir. 2012) (requiring "a real and substantial controversy admitting of specific relief" instead of a mere "opinion advising what the law would be upon a hypothetical state of facts").

Here, Plaintiffs' declaratory judgment claim is not based on State Farm's past use of CCC and the application or use of the condition adjustment in their total loss claims.

Instead, they seek declaratory relief for the exact type of "hypothetical" injury that is prohibited. Plaintiffs' claims for declaratory relief are necessarily based on "***future*** claims" divorced from a real and immediate injury. Am. Compl. ¶ 5 (emphasis added). Indeed, to plausibly allege a claim involving future injury, Plaintiffs would need to assert: (1) they will be in another automobile accident and will be a State Farm insured at that time, (2) the vehicle will be declared a total loss, and (3) under the terms of the then-effective State Farm policy, they will be paid ACV based on a CCC report that uses the condition adjustment. These allegations are inherently speculative and conjectural.

Put differently, to the extent Plaintiffs have any claims for declaratory relief, they can relate only to the past settlements of their total loss claims. But alleged past wrongdoing is not proper grounds for a declaratory judgment claim. *See AvePoint, Inc. v. Knickerbocker*, 475 F. Supp. 3d 483, 488 (E.D. Va. 2020) (indicating dismissal is proper when the complaint alleges "a breach of contract has already occurred and damages have already accrued" because the declaratory relief cannot "steer conduct" in the future outside of the contract); *Port City Logistics, Inc. v. Chasewater Logistics, LLC*, No. 3:23-CV-541-RJC-DCK, 2024 U.S. Dist. LEXIS 146366, at *15 (W.D.N.C. July 17, 2024), *R & R adopted*, 2024 U.S. Dist. LEXIS 145964 (W.D.N.C. Aug. 14, 2024) (dismissing declaratory judgment claim as "especially inappropriate" when it "will be resolved by one of the claimant's other claims, and all of the relevant conduct has occurred in the past").

*Richardson v. Progressive*, another total loss case, is illustrative. No. 2:18-cv-715, 2022 U.S. Dist. LEXIS 8783 (M.D. Fla. Jan. 18, 2022). There, the district court denied

class certification as to the plaintiffs' proposed classes, including a class for injunctive and declaratory relief under Rule 23(b)(2). For the proposed injunctive relief class, the *Richardson* court held that the plaintiffs lacked standing and could not assert these claims on behalf of the putative class because the requested relief was hypothetical and too conjectural, stating: "[t]he possibility that someday [the plaintiffs] may be in another motor vehicle accident, resulting in total losses, where Progressive provides a settlement value produced by [the methodology challenged], is simply too speculative." *Id.* at *56. *Richardson*'s reasoning applies with equal force to Plaintiffs' declaratory judgment claims and proposed class in the Amended Complaint.

All three Plaintiffs assert only hypothetical, future harm in the declaratory judgment claim.[9] Thus, Plaintiffs lack standing to seek injunctive or declaratory relief and none of them can "satisfy Rule 23(b)(2)" to represent the proposed class. *Richardson*, 2022 U.S. Dist. LEXIS 8783, at *55. The declaratory judgment claim and proposed class should be dismissed.

**C. As a Lessee, Brewer Must Be Dismissed Because He Lacks Article III Injury.**

As referenced above, Brewer leased the vehicle that he insured with State Farm—a fact that State Farm called to the attention of Plaintiffs' counsel and was nonetheless

[9] In the course of investigating Brewer's claim in discovery, State Farm learned that Brewer is not even a current State Farm insured. Diffley Decl. ¶ 15, Ex. 11. Thus, there is no present possibility that Brewer can obtain relief against State Farm for "future conduct to be prevented or mandated." *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12-CV-617, 2013 U.S. Dist. LEXIS 11880, at *22 (E.D. Va. Jan. 29, 2013).

omitted from the Amended Complaint. Because Brewer never had any ownership interest in the total loss vehicle, the lessor, Genesis Finance, retained the right to any ACV payments in the event of a total loss. Indeed, Brewer's lease agreement[10] with Genesis Finance expressly indicates that the lessor is "entitled to all insurance proceeds for . . . loss of the Vehicle, even if the amount of the proceeds exceeds the Adjusted Lease Balance or other amounts you owe under the Lease . . . You also assign to us any other insurance proceeds related to this Lease or our interest in the Vehicle." Ex. 4, § 20(c). Thus, the premise of Brewer's alleged harm—that he personally suffered a financial loss allegedly resulting from State Farm's ACV methodology (*see, e.g.*, Am. Compl. ¶¶ 29, 58, 61, 104, 109, 123–24)—is illusory and he lacks Article III standing.

The Fourth Circuit addressed similar circumstances in another total loss putative class action, *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461 (4th Cir. 2025). In *Freeman*, the plaintiff had an outstanding purchase loan on her total loss vehicle. Although the insurer's total loss settlement did not cover the full amount of the remaining loan, the plaintiff had purchased gap insurance to cover that balance.

---

[10] The Court can consider these materials in this factual challenge to Brewer's standing. When a defendant argues that "the jurisdictional allegations of the complaint are not true," then the Court can "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Kerns*, 585 F.3d at 192 (citation modified). In such cases, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*.

The Fourth Circuit held that the plaintiff had not suffered any Article III injury because, regardless of the ACV amount determined by the insurer, no ACV payment would have gone to the plaintiff. Instead, the insurer's entire ACV payment would have gone toward paying off the outstanding loan on the total loss vehicle, and the gap insurance would have covered the remaining portion of the outstanding purchase loan. *Id*. at 467. *Freeman* relied on Fourth Circuit precedent holding that merely being a party to a contract, coupled with a claim that a plaintiff did not receive the benefit of the bargain, is insufficient to establish Article III standing. *Id*. (citing *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021)).

The same result applies here. The Amended Complaint alleges that Brewer was "subjected to [a] total loss underpayment scheme" by State Farm, which "has resulted in and continues to result in State Farm avoiding paying the required amount for vehicle total loss claims[.]" Am. Compl. ¶¶ 2, 4. But, as a lessee, Brewer had (and has) no cognizable claim to receive any ACV payment from State Farm.

And, even if Brewer did have a claim to additional payments, the appraisers have determined ACV and the appraisal award has been paid in full. Thus, "there is no effective relief available in federal court that [Brewer] has not already received." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017). As another district court in a total loss case recently concluded on a plaintiff's breach of contract claim following payment of an appraisal award, "[n]o case or controversy remains where a plaintiff already received the plan benefits in full," such as "where a defendant fully satisfies an appraisal

award." *Ellis v. State Farm Mut. Auto. Ins. Co.*, No. 6:22-cv-1005-RBD-DCI, 2026 U.S. Dist. LEXIS 150639, at *6 (M.D. Fla. July 8, 2026).

Brewer thus lacks an injury-in-fact as a lessee and his breach of contract claim is moot in any event. His statutory claims cannot save his case because "a bare procedural violation, divorced from any concrete harm" is insufficient to satisfy Article III's injury-in-fact requirement. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 258 (4th Cir. 2020). And "without standing, [Brewer's] claim cannot be typical of the class members' claims," so his proposed class claims should be dismissed. *Freeman*, 149 F.4th at 467–68.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiffs' statutory claims (Counts I and II), both individually and on behalf of the proposed class for failure to state a claim. The Court should also dismiss Plaintiffs' claims for declaratory relief, both individually and on behalf of the proposed class, and all claims asserted by Brewer for lack of jurisdiction on account of a failure to allege Article III standing.

Date: September 3, 2026

Respectfully submitted,

**ALSTON & BIRD LLP**

*<u>/s/ Matthew P. McGuire</u>*
Matthew P. McGuire
N.C. State Bar No. 20048
555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2279
matt.mcguire@alston.com

Daniel F. Diffley
Blake M. Simon
Melissa G. Quintana
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
dan.diffley@alston.com
blake.simon@alston.com
melissa.quintana@alston.com

***Counsel for State Farm Mutual Automobile Insurance Company***

## CERTIFICATE OF COMPLIANCE: WORD COUNT

I hereby certify, pursuant to Local Rule 7.3(d)(1), as counsel for State Farm Mutual Automobile Insurance Company, that the foregoing brief does not contain more than 6,250 words. The word count feature of word processing software was relied on to make this certification.

Date: September 3, 2026

Respectfully submitted,

/s/ *Matthew P. McGuire*
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2279
matt.mcguire@alston.com

***Counsel for State Farm Mutual Automobile Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court by using the CM/ECF system, which will send a copy to all counsel of record at the email addresses on record.

Date: September 3, 2026

Respectfully submitted,

/s/ *Matthew P. McGuire*
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2279
matt.mcguire@alston.com

***Counsel for State Farm Mutual Automobile Insurance Company***