**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| CRAIG BREWER, STACIE SMITH, and REGINA BARRIER, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:25-cv-904 -CCE-JLW |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiffs hereby respond to State Farm's Partial Motion to Dismiss and Memorandum in Support. Docs. 30-32.

## INTRODUCTION

Plaintiff, Craig Brewer, originally filed this class action on behalf of himself and a putative class on October 3, 2025, alleging that State Farm violates North Carolina's total loss regulation by a software-generated reduction to the cost of comparable vehicles when paying motor vehicle total loss claims. Doc. 1. The Complaint also alleged an individual breach of contract claim. *Id.* On November 25, 2025, State Farm filed a motion to dismiss for lack of standing, for failure to state a claim under Rule 12(b)(6), to dismiss requested declaratory relief and to strike the class allegations. Doc. 10. The Defendant also requested

appraisal. *Id*. On February 22, 2026, the Court granted appraisal, but otherwise denied the motion, finding the Complaint stated a claim for breach of contract, Unfair and Deceptive Trade Practices ("UDTPA") and declaratory relief. The Court also found the Plaintiff, Craig Brewer, had standing. Doc. 18.

By consent, an Amended Complaint was filed on August 20, 2026, adding Stacie Smith and Regina Barrier as additional class representatives. Doc. 28. The substantive portions of the Amended Complaint and the causes of action were largely unchanged. On September 3, 2026, State Farm filed another Partial Motion to Dismiss, again asking the Court to dismiss the class claims under the UDTPA and the claim for declaratory relief. Doc. 30. State Farm also moved to dismiss Craig Brewer's claims, alleging again that he has no standing. The only claims the Defendant has not moved to dismiss are the individual breach of contract claims for the new parties, Ms. Stacie Smith and Ms. Regina Barrier. *Id*.

The Plaintiffs contend that State Farm's renewed arguments have been overruled by the Court's prior Order. Doc. 18.

## STATEMENT OF FACTS

### A. State Farm's Factual Assertions Narrow the Issues Rather Than Establish a Basis for Dismissal

Here, State Farm's description of the process it uses to arrive at a valuation of a total loss vehicle confirms Plaintiffs' factual allegations regarding the application of condition adjustments to comparable vehicles. State Farm's reduction of the cost of comparable vehicles in adjusting total loss claims is the disputed narrow issue.

Plaintiffs allege "[a]lthough State Farm calls the reduction a 'condition adjustment,' it is not tied to the condition of the comparable vehicles or the total loss vehicle at all. It is a software-generated deduction from the retail cost of comparable vehicles." Doc. 28 at p. 11 ¶57.

State Farm acknowledges it applies a condition adjustment twice, once to comparable vehicles located in the market and once to the total loss vehicle. Doc. 31 at p. 7. State Farm asserts "[a]fter determining the Base Vehicle Value—which, again, is calculated based on the substantially similar vehicles located by CCC—CCC then turns to the total loss vehicle itself. This second assessment, which is distinct from the condition adjustment applied to the comparable vehicles, adjusts for individual components of the total loss vehicle." Doc. 31 at p. 7. This is the very distinction Plaintiffs allege is the central issue of this case. The challenged software-generated reduction of comparable vehicles is separate and is, as State Farm says, "distinct" from evaluating the actual total loss vehicle. *Id*. Only after this challenged reduction is applied to determine the Base Value, State Farm "then turns to the total loss vehicle itself" to make further adjustments. *Id*. Those adjustments "depends entirely on the individual components of the total loss vehicle." *Id*. at p. 8. The parties' agreement on these facts is important for several reasons.

First, the dispute narrows to whether State Farm's software-generated reduction of the cost of comparable vehicles is, as the Plaintiffs allege, (a) prohibited by the total loss regulation, (b) an unfair practice under the UDTPA, or (c) violates the Unfair Claims Settlement Practices Act ("UCSPA") and thus violates the UDTPA (Doc. 28 at p. 16 ¶78),

or is instead, as State Farm asserts, "[t]o help accurately determine ACV" and "perfectly lawful." Doc. 31 at pp. 7, 16-17.

Second, the "Plaintiffs do not contest State Farm's representations of the original stated retail price of comparable vehicles before the impermissible reductions." Doc. 28 at p. 15 ¶ 74. "The Plaintiffs also do not contest the value assigned for options, mileage, equipment, or preexisting damages for their vehicle or the comparable vehicles stated in the CCC One Reports" (Doc. 28 at p. 15 ¶ 75), which State Farm confirms "are made on an individualized basis" and "distinct from the condition adjustment applied to the comparable vehicles." Doc. 31 at p. 7.

Accordingly, the singular disputed issue is whether State Farm's application of the software-generated reduction of comparable vehicles for condition is unfair under the UDTPA or impermissible under the total loss regulation. Therefore, the issues for class certification under Rule 23 are somewhat narrowed to whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The central disputed issue is whether State Farm's uniform software-generated reduction of comparable vehicle values is impermissible under North Carolina law. State Farm's factual assertions therefore substantially narrow the issues relevant to class certification because the legality of the challenged practice presents a question common to the proposed class. Whether the remaining requirements of Rule 23 are satisfied is appropriately addressed on a developed record at class certification.

**B. The Remaining Disputed Factual Issues Are Limited**

Aside from the common merits question of whether State Farm's application of the software-generated condition reduction of comparable vehicles is lawful in North Carolina, there are several common factual questions to be resolved on the merits. Those questions include, but are not limited to the following:

First, as justification for its business practice, State Farm asserts the systematic CCC One software-generated reduction of the cost of comparable vehicles is applied "[t]o help accurately determine ACV….the condition adjustment is applied to compare these dealer-listed vehicles with the privately-owned total loss vehicle" and that it "logically reflects the difference between a dealer-ready vehicle for sale versus a privately-owned vehicle." Doc. 31 at p. 7. Plaintiffs contend this is simply not true; that it is always a reduction and only benefits State Farm. Doc. 28 at pp. 12, 14, 15 ¶¶ 63, 69, 75.

Aside from violating the total loss regulation, Plaintiffs also assert that the practice is unfair because "[a]lthough State Farm calls the reduction a 'condition adjustment,' it is not tied to the condition of the comparable vehicles or the total loss vehicle at all." Doc. 28 at p. 11 ¶ 57. Plaintiffs assert that "[r]egardless of whether State Farm makes any adjustments to a claimant's total loss vehicle for condition, the Defendant still applies a software-generated deduction to the retail cost of the comparable vehicles to short total loss claims." Doc. 28 at p. 12 ¶ 63. Plaintiffs' Amended Complaint asserts "State Farm evaluated the condition of the Plaintiffs' total loss vehicles for condition adjustments but went one step further and made additional impermissible condition adjustments to comparable vehicles for sale in the market, thus 'double counting' for condition of the Plaintiffs' vehicles." Doc. 28 at p. 10 ¶ 53.

For Plaintiffs, there is nothing "logical" at all in State Farm's application of the software-generated reduction of comparable vehicles except that it is done "to short total loss claims." Doc. 28 at p. 12 ¶ 63. To illustrate this point, Plaintiffs submit the Declaration of Greg Crews here as Exhibit A. In calculating the value of Mr. Crews' total loss vehicle, State Farm rated his vehicle as "Dealer Retail" for every category, resulting in an upward adjustment of $937.00 for the condition of the vehicle. Ex. A at p. 7. However, despite the fact the vehicle was considered in "Dealer Retail" condition, State Farm applied its software-generated reduction of the cost of comparable vehicles, reducing the starting "Base Value" of the comparable vehicles in the amount of $937.00, thus negating the upward adjustment for the "Dealer Retail" condition of the total loss vehicle. Ex. A at pp. 1, 9.[1]

Stated simply, State Farm's stated justification for reducing the cost of comparable vehicles and that it "logically reflects the difference between a dealer-ready vehicle for sale versus a privately-owned vehicle" is inaccurate. Doc. 31 at p. 7. Plaintiffs allege State Farm's business practice is for the purpose of shorting total loss claims and has nothing to do with the pre-loss condition of any total loss vehicle. Plaintiffs contend it is double counting, unfair and violates North Carolina's total loss regulation, consumer protection statute, insurance claims statutes and public policy. Plaintiffs assert the practice cannot logically fit within the boundaries of 11 N.C. Admin. Code § 4.0418.

[1] Although Mr. Crews' total loss claim was made as a third-party claim, North Carolina's Total Loss Regulation applies to both "first-party [and] third-party" claims. 11 N.C. Admin. Code § 4.0425(2). He was entitled to the same protection against State Farm's unfair practice as those insured by State Farm.

Second, Paragraph (d) requires the pre-accident value "shall be based on the following values: (1) [t]he published regional average values of substantially similar motor vehicles; and (2) [t]he *retail cost* of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area." 11 N.C. Admin. Code § 4.0418(d) (emphasis added).[2] Sections (b)(1) and (b)(2) both require State Farm to use the "retail cost" of comparable vehicles, as State Farm is required to use "published regional average values" of substantially similar motor vehicles under (b)(1), "to reach an average retail value of the motor vehicle." 11 N.C. Admin. Code § 4.0418(b)(3) (emphasis added).[3]

State Farm does not factually address any effort to comply with section (d)(1), requiring the use of published regional retail average values of substantially similar motor vehicles in calculating total loss claims. Further, regarding the claim file documentation required by section (h) for any "deviation" "from this Rule," State Farm states no facts of any effort to comply or justify non-compliance. Data used to create these deductions are not disclosed or contained in the CCC reports and there's no way for insureds to verify their accuracy because there's no publicly available information. Doc. 28 at p. 13 ¶¶ 66-67.

The Plaintiffs allege the comparable vehicle deduction is sourced from a third party or proprietary data collected by CCC Intelligent Solutions Inc., itself, and not within State

---

[2] Doc. 28 at p. 9 ¶ 46.
[3] Doc. 28 at p. 9 ¶ 47.

Farm's possession (Doc. 28 at p. 13 ¶¶ 65-67), which Plaintiffs contend is a basis for non-compliance with section (h) of the total loss regulation. *Id*.

## ARGUMENT

### A. State Farm's "Based Upon" Argument Repackages the Same Argument Previously Rejected by the Court

State Farm again moves under Rule 12(b)(6) to dismiss Plaintiffs' UDTPA and UCSPA claims. Docs. 30, 31. The arguments are not new. State Farm now focuses on three words in 11 N.C. Admin. Code § 4.0418(d), asserting the pre-accident value must "be based upon" substantially similar motor vehicles. According to State Farm, "based upon" means the retail cost of those vehicles is merely a starting point that State Farm may thereafter reduce through CCC's condition adjustment. Doc. 31 at pp. 12–16.

But State Farm made the substance of this argument in its first motion to dismiss. State Farm argued then that § 4.0418 permits an adjustment for condition, "says nothing about prohibiting a condition adjustment for comparable vehicles," and that "the Complaint demonstrates that State Farm complied with the actual text of the total loss regulation." Doc. 11 at p. 14. State Farm's "based upon" argument simply offers a new textual rationale for the same requested ruling: that § 4.0418 permits State Farm to reduce the retail cost of comparable vehicles before calculating the Base Vehicle Value.

Denying the first motion to dismiss, the Court already considered the language of § 4.0418(d) and (e), and recognized the language that a condition deduction could be applied to the insured's vehicle but "not the comparable cars," and held that "[w]hether State Farm's valuation methodology violated North Carolina regulations and statutes involves

questions of fact . . . that cannot be decided at the motion to dismiss stage." Doc. 18 at pp. 8–10. The Court concluded that Mr. Brewer had "sufficiently stated his UDTPA claims." *Id*. at 10.

The First Amended Complaint did not change the cause of action or change that statutory issue; it only more precisely identifies the challenged practice and added two new parties.

Rule 12(g)(2) provides that a party making a Rule 12 motion "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Although Rule 12(h)(2) preserves a failure-to-state-a-claim defense, it specifies how that defense may thereafter be raised: in a Rule 7(a) pleading, by a Rule 12(c) motion, or at trial. Fed. R. Civ. P. 12(h)(2).

Here, State Farm's statutory defense was not merely available when it filed its first motion to dismiss; State Farm asserted it. While State Farm did not emphasize the phrase "based upon," the substance of the argument was the same and those words were equally available in § 4.0418(d) when State Farm filed its first motion. "Under the plain meaning of the rules, Defendants must now answer and then bring a 12(c) motion if they see fit." *Zloop, Inc. v. E Recycling Systems, LLC*, No. 5:14-CV-87, 2014 WL 6977791, at *4 (W.D.N.C. Dec. 9, 2014). The same applies here and the renewed motion to dismiss Counts I and II should be denied.

**B. Plaintiffs Have Standing to Request Declaratory Relief Under Rule 23(b)(2)**

Though the Court already ruled the Plaintiff stated a claim for declaratory relief at this juncture (Doc. 18 at pp. 10-11), State Farm again requests dismissal.

State Farm now argues "to the extent Plaintiffs have any claims for declaratory relief, they can relate only to the past settlements of their total loss claims." Doc. 31 at p. 18. State Farm insists "Plaintiffs' claims for declaratory relief are necessarily based on future claims divorced from a real and immediate injury" and the possibility they will be in "another accident" leading to another total loss claim is "inherently speculative and conjectural." *Id.* This argument ignores the facts and Plaintiffs' requested relief.

First, the threshold Article III inquiry asks whether at least one named Plaintiff has standing to seek the requested prospective relief. Article III and Rule 23(b)(2) certification are separate inquiries. If one named Plaintiff satisfies that requirement, whether the proposed class independently meets Rules 23(a) and 23(b)(2) is a later certification question. *Carolina Youth Action Project; D.S. ex rel. Ford v. Wilson*, 60 F.4th 770, 778–79 (4th Cir. 2023). Once a named plaintiff establishes Article III standing to seek the requested equitable relief, "there is no further, separate 'class action standing' requirement"; whether the action may proceed on behalf of a class is instead governed by Rule 23. *Id.* The Fourth Circuit expressly rejects an attempt to "import standing concepts into the class certification analysis." *Id.* at 778.

Second, Plaintiffs do not seek prospective relief merely because they were subjected to State Farm's past wrongful business practice. While the Plaintiffs assert claims under the UDTPA for damages resulting from State Farm's wrongful business practice for themselves and a putative class and under Rule 23(b)(3) (Doc. 28 at p. 18 ¶ 86), their request for declaratory and injunctive relief under Rule 23(b)(2) is for a separate class of State Farm insureds in North Carolina who have not yet suffered an injury. Doc. 28 at p.18

¶ 86. The distinction between the two proposed classes is important. For the UDTPA claims, the Plaintiffs request damages for themselves and other North Carolina residents who received total loss payments from State Farm after the challenged reduction. Doc. 28 at p. 16 ¶ 78. For the Declaratory Judgment Class, the Plaintiffs request a judgment declaring State Farm's practice does not comply with the total loss regulation and violates the UDTPA. Doc. 28 at p. 16 ¶¶ 79-80. The proposed Declaratory Judgment Class includes "[a]ll persons" insured by State Farm with vehicle total loss coverage. Doc. 28 at p.18 ¶ 86.

Third, Rule 23(b)(2), moreover, expressly contemplates class-wide declaratory relief where a defendant "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The "[a]ction or inaction [to be addressed] may be directed toward the class *even when it affects or threatens only a few class members*, provided that it rests on grounds generally applicable to the class." *Id*. Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment. (emphasis added). The United States Supreme Court has long held that federal courts have jurisdiction to grant declaratory and injunctive relief when a plaintiff demonstrates that the threatened injury is both "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983), *Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019).

Fourth, here, Regina Barrier satisfies that requirement. Ms. Barrier has been insured by State Farm since 1992, suffered injury from the challenged total-loss practice in 2025, and remains insured by State Farm for total-loss coverage. Ex. B. Because at least one

named plaintiff has Article III standing to seek the requested equitable relief, "[n]othing more is required on that score." *Carolina Youth*, 60 F.4th at 779.

When at least one class representative has Article III standing to seek the requested equitable relief, "[n]othing more is required on that score*." Id.* "Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court and there is no further, separate class action standing requirement." *Id*. (internal quotations and citations omitted).

**1. The legality of State Farm's practice can be resolved for the Declaratory Judgment Class as a whole**

Despite the Court's prior ruling that "[w]hether State Farm's valuation methodology violated North Carolina regulations and statutes involves questions of fact, [] that cannot be decided at the motion to dismiss stage,"[4] State Farm continues to assert it is "perfectly lawful." Doc. 31 at pp. 9, 17. This issue requires judicial review, and the resolution of this issue will apply to the Declaratory Judgment Class uniformly. On behalf of the declaratory judgment class, Plaintiffs seek "to prevent the continued unfair practice in the payment of total loss claims in North Carolina." Doc. 28 at p. 16 ¶ 80.

**2. The threatened injury is both real and immediate, not conjectural or hypothetical.**

Plaintiffs allege that State Farm pays more than 10,000 total-loss claims each year in North Carolina using the challenged practice. Doc. 28 at p. 5 ¶¶ 13-16 . State Farm admits the practice continues and maintains that it is "perfectly lawful." Doc. 31 at 17. Ms.

[4] Doc. 18 at pp. 9-10.

Barrier remains insured by State Farm under the same coverage pursuant to which State Farm previously applied the challenged practice to her. These facts plausibly establish a continuing risk of recurrence rather than a merely conjectural possibility. See *Kenny v. Wilson*, 885 F.3d 280, 287–89 (4th Cir. 2018); *Wells v. Johnson*, 150 F.4th 289, 300 (4th Cir. 2025).

Here, each named Plaintiff has been subjected to State Farm's uniform practice. Proposed members of the Declaratory Judgment Class are having their total loss claims reduced by State Farm's practice each day. Ms. Barrier, who continues to be insured by State Farm,[5] is just as likely to be subjected to the practice as any other State Farm insured going forward.

**3. State Farm's cited case authority does not apply**

State Farm cites *Richardson v. Progressive Am. Ins. Co*., No. 18-cv-715, 2022 WL 154426 (M.D. Fla. Jan. 18, 2022) for its assertion that declaratory relief is "simply too speculative" to support standing. Doc. 31 at p. 19. But the *Richardson* plaintiffs in Florida were not insured by Progressive when the lawsuit was filed and the complaint did not separately set out a prospective class of current policyholders. *Id* at *18-19.[6] The case focused instead on the plaintiffs who had already been subjected to the alleged wrongful total loss calculation but were no longer insured with the defendant, Progressive, which the court determined was "too speculative." *Richardson* at *20. That's not the case here.

---

[5] Ex. B, Declaration of Regina Barrier.

[6] Here, Plaintiffs, Brewer and Barrier, were insured by State Farm at the time this lawsuit was filed on October 3, 2025. Doc. 32-11, Ex. B.

First, the Plaintiffs have set out a separate and distinct prospective class of State Farm insureds. Doc. 28 at p. 18 ¶ 86.

Second, Plaintiff, Regina Barrier, has been and continues to be insured by State Farm under the same insurance policy under which her total loss claim was improperly paid. Ex. B. Therefore, *Richardson* is not applicable. As to any argument on the necessity of a current contractual relationship between the Plaintiffs and State Farm to have standing for the requested declaratory relief, the issue is moot. "Nothing more is required on that score." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023). Plaintiff, Regina Barrier, currently insured by State Farm, serves as the "anchor" for the Court's Article III jurisdiction. *Spurlock v. Wexford Health Sources, Inc*., 175 F.4th 232 (4th Cir. 2026). *See also Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (allowing the case to proceed without requiring every named plaintiff to independently establish standing for future injury under Rule 23(b)(2)); *Jonathan R. by Next Friend Dixon v. Morrisey*, 178 F.4th 139, 161 (4th Cir. 2026)("at least some of the named plaintiff" in a class action sufficiently pleading injury is sufficient under Rule 23(b)(2)).

State Farm complains that because Plaintiff, Craig Brewer, is no longer insured by State Farm "there is no present possibility that Brewer can obtain relief against State Farm for future conduct to be prevented." Doc. 31 at p. 19. Although this argument was available when the Defendant filed its first motion to dismiss, this issue is moot due to the filing of the Amended Complaint, adding Regina Barrier as a party.

**4. Plaintiffs may request declaratory judgment under Rule 23(b)(2) and damages under 23(b)(3) simultaneously**

Rule 23 likewise permits Plaintiffs to pursue a prospective class under Rule 23(b)(2) and a damages class under Rule 23(b)(3), with each evaluated under its respective requirements. *Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 242–46, 253 (4th Cir. 2026). *Spurlock* separately analyzed classes seeking prospective and monetary relief arising from the same challenged conduct. *Id*.

**5. Plaintiffs' request for declaratory relief is not a new legal concept**

A claim for declaratory and injunctive relief is not a new concept in terms of a challenged insurance claims practice. For example, in *Estate of Gardner v. Continental Casualty Co*., 316 F.R.D. 57 (D. Conn. 2016), the defendant took the position that its long-term care "policies do not cover stays at any assisted living facilities in the State." *Id.* at 68. The plaintiffs alleged breach of contract arising from the insurer's business practice and requested prospective declaratory relief defining a class Rule 23(b)(2) class of all current policyholders. *Id*. The defendant argued that a class consisting of all current policyholders was overbroad because many had never submitted a claim and might never do so. *Id*. The court rejected this argument, finding the prospective class to be "realistically threatened" with recurrence of the alleged wrong (*Id*. at 74) and "therefore, have standing to challenge Defendant's interpretation of their policies." *Id*. at 69. In certifying a Rule 23(b)(2) class, the court held:

> Any adequate remedy would have to ensure that they could obtain coverage for claims prospectively. For that, an injunction is required. Moreover, Plaintiffs leave no ambiguity about the content of the injunction they seek: an end to Defendant's alleged policy of denying claims for assisted-living facilities across the board. This is exactly the type of relief Rule 23(b)(2) was designed to facilitate. *Id*. at 75.

The Plaintiffs here make the same request. And the Fourth Circuit's decision in *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311 (4th Cir. 2006) confirms that Plaintiffs' prospective class is properly analyzed separately from their damages class. The Fourth Circuit explained why: unlike monetary relief, which may require individualized determinations of each class member's loss, declaratory or injunctive relief addresses "the defendant's actions affecting the class as a whole," without the need for individual hearings. *Id*. at 330. In *Thorn*, the insurer had already declared the affected policies "paid up" and was no longer collecting the challenged premiums. *Id*. at 331. Here, there's no dispute the contested practice is ongoing.

That distinction fits this case. Plaintiffs' damages class concerns State Farm insureds whose completed total-loss settlements allegedly were reduced by the challenged CCC condition adjustment. The prospective Rule 23(b)(2) class asks a different question: whether State Farm may continue using that allegedly uniform methodology in future North Carolina total-loss claims. Resolution of that question does not require the Court to determine the amount of any insured's past loss. It requires a determination of the legality of State Farm's challenged practice. If the Plaintiff prevails, class-wide prospective relief directed to that practice is appropriate for the Declaratory Relief Class as a whole.

### C. Craig Brewer has Article III Standing

State Farm contends that Plaintiff, Craig Brewer, lacks Article III standing because he leased his vehicle and therefore "never had any ownership interest in the total loss vehicle." Doc. 31 at p. 20. This argument contradicts the North Carolina Supreme Court's ruling in *Hartsell v. Integon Indemnity Corp.*, 347 N.C. 385, 493 S.E.2d 740 (1997). State

Farm's argument also directly contradicts the express language of Mr. Brewer's auto insurance policy with State Farm.

1. ***Hartsell* establishes that payment to a lessor does not eliminate the insured lessee's interest.**

In *Hartsell*, the plaintiff was the named insured of a leased vehicle. After the vehicle was destroyed, the insurer paid the actual cash value to the lessor and argued that payment satisfied its contractual obligation to the insured. The Court of Appeals majority accepted that argument, but the North Carolina Supreme Court reversed "for the reasons stated in the dissenting opinion" of Judge Greene. *Hartsell*, 347 N.C. at 385, 493 S.E.2d at 740. Judge Greene rejected the proposition that payment to the lessor extinguished the insured lessee's interest. The policy required payment according to the respective interests of the insured and loss payee, and "the plaintiff is entitled to insurance proceeds to the extent of his interest in the vehicle." *Hartsell v. Integon Indem. Corp.*, 126 N.C. App. 511, 513–14, 485 S.E.2d 893, 895 (1997) (Greene, J., dissenting), *rev'd for reasons stated in dissent*, 347 N.C. 385, 493 S.E.2d 740.

The *Hartsell* policy treated a vehicle leased for the requisite period as "owned" by the insured for purposes of the insurance contract. Judge Greene therefore recognized that *Hartsell* possessed both a leasehold interest under the lease and an ownership interest under the policy. State Farm's policy does the same. Brewer's State Farm policy expressly states that vehicles leased for a term of six months or more are considered "owned" by the

insured. Doc. 32-1 at 12 (Policy at 2).[7] State Farm's position is even more difficult to reconcile with *Hartsell* because the lessor there was expressly identified as the loss payee. Genesis Finance is not identified as a loss payee or insured on Brewer's State Farm policy. Doc. 32-1 at 18. State Farm instead says that it paid Genesis pursuant to "State Farm's practices." Doc. 31 at 2.

State Farm's argument that Mr. Brewer "never had any ownership interest in the total loss vehicle" contradicts the policy language and the controlling North Carolina law established in *Hartsell*.

**2. Mr. Brewer had a substantial economic interest in the insured vehicle**

The terms of Brewer's lease agreement likewise confirm his interest in the vehicle. Mr. Brewer made a $25,000.00 down payment on the lease, reducing the adjusted capitalized cost in the vehicle from $70,499.00 to $45,499.00. Doc. 32-4 at 2–3. Not only was there an option to buy the vehicle, but the lease granted Mr. Brewer a direct financial interest in the vehicle upon a total loss. Paragraph 22 establishes the early-termination formula, and Paragraph 25 provides that a total loss terminates the lease and requires Mr. Brewer to satisfy the applicable early-termination liability. Doc. 32-4 at 7–8. At the time of the loss, Mr. Brewer's remaining obligation to Genesis was approximately $38,705.27, plus the $400 early-termination fee. Under the lease, Brewer could satisfy Genesis's remaining interest in the vehicle and acquire title.

[7] This term is uniform in all State Farm North Carolina Policies. Doc. 32-2 at 44, (Policy at 2), Doc. 32-3 at 30, (Policy at 2). State Farm says, regardless, they pay lessors pursuant to "State Farm's practices." Doc. 31 at 2.

Instead, over Mr. Brewer's objection, State Farm paid the entire amount of the total loss payment of $56,272.00 to Genesis Finance pursuant to "State Farm's practices." Doc. 31 at p. 2.

The numbers demonstrate the significance of Mr. Brewer's interest. State Farm initially valued the vehicle at $56,272.00. Mr. Brewer's $39,105.27 obligation to Genesis was approximately $17,166.73 less than State Farm's own valuation. The subsequent appraisal valued the vehicle at $62,000.00, increasing that difference to approximately $22,894.73. Thus, the value of the vehicle was not economically irrelevant to Mr. Brewer. He had invested $25,000.00 at inception and, at the time of the loss, had a substantial economic interest in the difference between Genesis's remaining interest and the value of the vehicle.

State Farm's own policy reinforces the point. It treated Brewer's leased vehicle as "owned" by him for purposes of the insurance coverage. Under *Hartsell*, the fact that Genesis held legal title and was entitled to some insurance proceeds does not erase Brewer's separate interest in the vehicle.

**3. The Court has already held that Brewer alleged a concrete injury, and the appraisal confirmed undervaluation**

Mr. Brewer alleged that State Farm shorted his total loss claim through the challenged valuation practice. The Court held that "[t]hat sort of pocketbook injury is a prototypical form of injury in fact" and concluded that "Mr. Brewer has alleged sufficient facts to establish standing at the motion to dismiss stage." Doc. 18 at pp. 4, 6.

The subsequent appraisal did not eliminate that injury; it confirmed the alleged undervaluation. State Farm determined an ACV of $56,772.00 and, after application of the $500 deductible, issued a total-loss payment of $56,272.00 after reducing the retail cost of the comparable vehicles by $3,328.00. The appraisers subsequently determined that the vehicle's pre-accident value was $62,000.00; $5,728.00 more than State Farm's original valuation. Thus, the alleged underpayment upon which the Court's original standing determination rested is no longer merely an allegation concerning the vehicle's value.

**4. *Freeman* is materially different.**

*Freeman v. Progressive Direct Insurance Co.*, 149 F.4th 461 (4th Cir. 2025) is different than the facts of this case. In *Freeman*, the plaintiff financed the purchase of her vehicle; the total loss payment was applied to the outstanding loan, and gap insurance covered the remaining deficiency. As State Farm itself describes the holding, an increased total loss payment therefore would not have put additional money in Freeman's pocket. Doc. 31 at p. 21.

Brewer's financial position was materially different. He had already contributed $25,000.00 toward the vehicle. At the time of the total loss, he could have satisfied Genesis's remaining interest for approximately $38,705.27 plus the $400 early-termination fee and obtained title. Yet even State Farm's original valuation of the vehicle was $56,272.00, and the contractual appraisal subsequently established a pre-accident ACV of $62,000.00.

Unlike *Freeman*, therefore, an increase in the value of Brewer's vehicle was not economically irrelevant to him. Brewer had a direct economic interest in the difference

between Genesis's remaining interest and the value of the vehicle. State Farm's alleged undervaluation directly reduced the value of that economic position. And unlike *Freeman*, *Hartsell* directly addresses the interests of an insured lessee under North Carolina law and establishes that the analysis does not end simply because the lessor held title or received the insurance proceeds.

**5. The appraisal payment did not negate Mr. Brewer's Breach of Contract or Chapter 75 claims**

State Farm contends that payment of the appraisal award leaves "no effective relief available" to Brewer. Doc. 31 at pp. 21–22. But the Court has already rejected the premise that payment following appraisal necessarily extinguishes Brewer's Chapter 75 claims. The Court explained "standing is established by the facts alleged in the complaint" and that payment of an outstanding contractual obligation does not necessarily moot a claim when additional statutory damages remain available. Doc. 18 at p. 6. (citing *Netro v. Greater Balt. Med. Ctr., Inc.*, 891 F.3d 522, 526 (4th Cir. 2018)).

Here, however, there are more damages after the appraisal. On November 10, 2025, State Farm demanded appraisal. Doc. 11-3. On February 25, 2026, the Court allowed appraisal on Mr. Brewer's "individual breach of contract claim." Doc. 18 at p. 12. The Court noted: "[a]ssuming without deciding that the appraisal will ultimately resolve his breach of contract claim, his Chapter 75 claims will go forward." Doc. 18 at p. 12. This appraisal process demanded by State Farm required Mr. Brewer to spend $500.00 to pay his portion of appraiser fees. Ex. C. On May 6, 2026, an appraisal award was issued in the amount of $62,000.00. Doc. 32-10.

Once the award was issued, with no notice to Mr. Brewer and over his objection,[8] State Farm paid the additional $5,728.00 award to Genesis Finance. Doc. 31 at p. 2, Ex. D.

State Farm paid the additional $5,728.00 to Genesis even though Genesis had already received $56,272.00 in 2023; approximately $17,166.73 more than Mr. Brewer's remaining lease obligation and $400 early-termination fee, and Genesis had already released title to the vehicle to State Farm three years earlier.

Also, on August 4, 2026, State Farm paid Mr. Brewer $156.84; the tax and registration fee amount on the excess appraisal award. Ex. E.[9] He was entitled to those funds as well in 2023, not three years later.

Mr. Brewer had and continues to have a concrete economic interest in this dispute in that he had a financial and contractual interest in the leased vehicle; he had an economic interest in the vehicle, he incurred appraisal fees in obtaining the appraisal State Farm demanded, and was shorted taxes and fees in the payment of his claim. He has also made a claim under the NC UDTPA, which was not a claim made in *Freeman*. Therefore, *Freeman* is not applicable, and State Farm's second motion to dismiss Brewer for lack of Article III standing should again be denied.

## CONCLUSION

For the foregoing reasons and based on the prior rulings of the Court (Doc. 18), the Plaintiffs request the Partial Motion to Dismiss be denied.

---

[8] During a June 22, 2025, meet-and-confer between counsel, the Defendant was informed of the holding in *Hartsell* and requested the appraisal award be paid to Mr. Brewer.

[9] $1,797.91 was paid to Mr. Brewer in 2023 for taxes and fees related to the initial $56,272.00 paid to Genesis Finance. Ex. F.

September 24, 2026

HEMMINGS & STEVENS, P.L.L.C.

*/s/ Aaron C. Hemmings*

Aaron C. Hemmings, NC Bar No.: 29810
Kelly A. Stevens, NC Bar No. 27066
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com

*Attorneys for the Plaintiffs*

CERTIFICATE OF COMPLIANCE

I certify that the foregoing Plaintiffs' Memorandum in Opposition to State Farm's Partial Motion to Dismiss complies with the limitation of 6,250 words pursuant to Local Rule 7.3 (d)(1).

*/s/ Aaron C. Hemmings*
Aaron C. Hemmings

CERTIFICATE OF SERVICE

I, Aaron C. Hemmings, attorney for the Plaintiff herein, certify that the foregoing Plaintiffs' Memorandum in Opposition to State Farm's Motion to Dismiss was filed on September 24, 2026, using the Court's ECM/ECF electronic filing system, which will provide service to all attorneys of record.

*/s/ Aaron C. Hemmings*
Aaron C. Hemmings